## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

Prinell Paul,

                                        Plaintiff,

          v.                                              5:25-CV-967
                                                          (ECC/MJK)

Onondaga County Criminal Courthouse *et. al.*,

                                        Defendant.

---

Prinell Paul, *Pro Se*

Mitchell J. Katz, U.S. Magistrate Judge

To the Honorable Elizabeth C. Coombe, U.S. District Judge:

## ORDER & REPORT- RECOMMENDATION

Paul began this action on July 21, 2025, by filing a Complaint, and moving for leave to proceed *in forma pauperis* ("*IFP*") (Dkts. 1, 3). The Clerk sent Paul's Complaint and *IFP* application to this Court for review. (Dkts. 1, 3).

## I.    BACKGROUND

On June 2, 2023, Syracuse Police arrested Paul for first-degree reckless endangerment and second-degree criminal possession of a weapon. (Complaint, Dkt. 1, at pg. 4). After the arrest, a Syracuse Police detective interrogated Paul about the incident. (*Id.*). Paul claims

he "was under the influence of synthetic hardcore drugs and" he was rushed to Upstate hospital, where he was given an IV. (*Id.*). The hospital released him to the Syracuse Police, and he was later moved to the Onondaga County Justice Center. (*Id.*). While there, Paul saw Lieutenant Jason Jarvis, who he feared, so he jumped down a flight of stairs, hoping to escape. (*Id.*). The jump caused Paul to break his ankle, and this allowed Deputy Martinez to handcuff Paul. (*Id.*). After this, Seargent Eric Johnson, Lieutenant Jarvis, Deputy Hanaver, Deputy Apples, Deputy Nhitmon, Deputy Lee, Deputy Sanderson, Deputy Bryant, and Deputy Burns gang assaulted Paul, splitting his eyebrow, knocking out a tooth, and chipping another tooth. (*Id.*).

Paul claims the prosecution of his case was no easier. Although the Onondaga District Attorney's office announced that it was ready for trial in September 2023, Paul alleges that neither District Attorney William Fitzpatrick nor Assistant District Attorney ("ADA") Sara Fitzpatrick certified the certificate of compliance.(*Id.* at pg. 5).[1] Worse still, ADA Fitzpatrick admitted to Paul that her investigator listened to

---

[1] A Certificate of Compliance is document that affirms that the prosecution has turned over all of the discovery within the prosecution's control to the defendant and their lawyer.

phone calls between Paul and his defense lawyer. (*Id.* at pg. 6).

Ultimately, Paul filed a speedy trial motion, which County Court Judge

Matthew Doran denied. (*Id.* at pg. 6). At some point, Judge Doran also

set Paul's bail at $200,000 cash, $400,000 bond, or $600,000 partially

secured security bond. (*Id.* at pg. 7). Paul never made bail. (*Id.*).

While incarcerated, Paul has written letters to the New York

State Commission on Judicial Conduct. (*Id.* at 9). In these letters, Paul

"has explained to [the Commission] the injustice of the Judge, Doran."

(*Id.*). But the Commission, has told Paul that it cannot do anything to

help him. (*Id.*). Paul claims that the Committee's chairperson, Joe

Bellock, "doesn't want to do his job at all" and the Committee's vice

chairperson, Taa Grays, has not responded. (*Id.*).

Paul now sues Defendants New York State, Onondaga County,

Onondaga County Criminal Courthouse, Onondaga County District

Attorney's Office, the New York State Commission on Judicial Conduct,

Onondaga County's Sheriff's Office, Onondaga County Justice Center,

Onondaga County District Attorney Willliam Fitzpatrick, ADA Sara

Fitzpatrick, County Court Judge Matthew Doran, Joe Bellock, in his

official and unofficial capacity, Taa Grays, in his official and unofficial

capacity, and Sheriff Tobias Shelly. (*Id.* at pg. 1-4). Paul brings this action under 42 U.S.C. § 1983 and alleges several constitutional violations. (*Id.* at 1); *see generally* (Complaint, Dkt. 1). Paul demands a jury trial and seeks a declaratory judgment, a preliminary and permanent injunction, $2,000,000 compensatory damages, $2,000,000 nominal damages, $2,000,000 punitive damages, and any other relief the Court deems proper.

## II.    IFP APPLICATION

Paul declares in his *IFP* applications that he is unable to pay the filing fee. (Dkt. 3). And after reviewing his application, this Court finds that Paul is financially eligible for *IFP* status.

## III.   STANDARD OF REVIEW

In addition to determining whether a plaintiff meets the financial criteria to proceed *IFP*, courts must also review the sufficiency of the allegations in the complaint under 28 U.S.C. § 1915. That statute requires a court to dismiss a case—at any time—if it determines that the action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

When determining whether an action is frivolous, courts must consider whether the complaint lacks an arguable basis in law or in fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974).

To be sure, courts have a duty to show liberality toward *pro se* litigants and must use extreme caution when *sua sponte* dismissing *pro se* complaints before adverse parties have been served and had an opportunity to respond. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee). But courts *still* have a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See id.*

## IV.   DISCUSSION

The Court recommends dismissing Paul's entire Complaint for three reasons. First, Defendants New York State, Onondaga County, Onondaga County Criminal Courthouse, Onondaga County District Attorney's Office, the New York State Commission on Judicial Conduct, Onondaga County District Attorney Willliam Fitzpatrick, ADA Sara Fitzpatrick, County Court Judge Matthew Doran, Joe Bellock, in his official capacity, and Taa Grays, in his official capacity, are all immune from suit. Second, Paul's Complaint fails to state a claim against Sheriff Shelley, Bellock, in his personal capacity, and Grays, in his personal capacity. Third, Paul fails to plead sufficient facts to make out a *Monell* claim.

### A. The District Court should dismiss all the immune parties named in Paul's complaint.

The Court recommends dismissing Paul's claims Defendants New York State, Onondaga County, Onondaga County Criminal Courthouse, Onondaga County District Attorney's Office, the New York State Commission on Judicial Conduct, Onondaga County District Attorney Willliam Fitzpatrick, ADA Sara Fitzpatrick, County Court Judge Matthew Doran, Joe Bellock, in his official capacity, and Taa Grays, in

his official capacity, with prejudice and without leave to amend because they all enjoy a form of immunity.

The Court recommends dismissing Defendants New York State, Onondaga County, Onondaga County Criminal Courthouse, Onondaga County District Attorney's Office, and the New York State Commission on Judicial Conduct, because they are all immune. "State governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or Congress has abrogated the states' Eleventh Amendment immunity." *Williams v. Does*, 24-Civ-4794, 2025 WL 713295 at *4 (S.D.N.Y. Jan 30, 2025) (cleaned up). This immunity extends to "state agents and state instrumentalities that are, effectively, arms of the state. *Id* at *5. For example, the State of New York and the New York State Commission on Judicial Conduct are immune from suit. *McKeown v. N.Y. State Comm'n on Jud. Conduct*, 377 F. App'x 121, 122-23 (2d Cir. 2010) (summary order) (Affirming the district court's dismissal of the plaintiff's complaint against New York state and the New York State Commission on Judicial Conduct). Likewise, District Attorney Offices are also immune from suit. *See Woodward v. Off. of Dist. Atty*., 689 F. Supp. 2d 655, 659 (S.D.N.Y.

2010) (holding that district attorney offices are immune from suit).
Here, Paul has named immune parties—New York State, Onondaga
County Criminal Courthouse, and the New York State Commission on
Judicial Conduct—in his Complaint. (Complaint, Dkt. 1, at pg. 1) And
because the parties are immune, the District Court cannot provide Paul
with relief. As a result, the Court recommends dismissing Paul's claims
against those immune parties with prejudice.

This reasoning also extends to Paul's claim against Bellock and
Grays in their official capacities. "Merely alleging that an official has
the general duty to enforce or execute the law is insufficient to overcome
Eleventh Amendment Immunity." *Chisholm v. Kevins*, No. 23-CV-
5169(JMA)(SIL), 2024 WL 3328592, at *5 (E.D.N.Y. July 8, 2024)
(Dismissing a plaintiff's claim against Bellock in his official capacity).
In consequence, the Court recommends dismissing Paul's claim Bellock
and Grays in their official capacity with prejudice.

The Court also recommends dismissing Defendant Onondaga
County District Attorney Willliam Fitzpatrick and ADA Sara
Fitzpatrick because they enjoy prosecutorial immunity. "Prosecutors
sued under § 1983 enjoy absolute immunity from claims for damages

arising out of prosecutorial duties that are intimately associated with the judicial phase of the criminal process." *Joyner v. Cty. of Cayuga*, No. 5:20-CV-1904088 (MAD/TWD), 2020 WL 1904088, at *9 (N.D.N.Y. Apr. 17, 2020) (cleaned up). Prosecutorial immunity from § 1983 liability covers "virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate." *Anilao v. Spota,* 27 F.4th 855, 864 (2d Cir. 2022) (cleaned up). Naturally, this includes charging defendants, presenting evidence to a grand jury, and evaluating evidence before trial. *Buari v. City of New York,* 530 F. Supp. 3d 356, 378 (S.D.N.Y. 2021). Immunity even extends to falsifying evidence, coercing witnesses, the knowing use of perjured testimony, deliberating withholding exculpatory information, making false or defamatory statements in judicial proceedings, and conspiring to present false evidence at a criminal trial. *Id.* (collecting cases). Here, the upshot of Paul's allegations is that the district attorney's office withheld evidence from him, listened to calls from Paul to his attorney, and violated his speedy trial right. (Complaint, Dkt. 1, at pgs. 3, 4, 5, 6). But those actions are not enough overcome prosecutorial immunity. *See Buari,*

530 F. Supp. 3d at 378. As a result, the Court recommends dismissing Paul's claim against the prosecutors with prejudice.

Finally, the Court recommends dismissing Defendant County Court Judge Matthew Doran. Judges have absolute immunity for their judicial acts performed in their judicial capacities. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991); *see also Shtrauch v. Dowd*, 651 F. App'x 72, 73-74 (2d Cir. 2016) (summary order) ("Generally, acts arising out of, or related to, individual cases before the judge are considered judicial in nature") (cleaned up). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." *Coon v. Merola*, 19-CV-394 (DNH/ATB), 2019 WL 1981416, at *3 (N.D.N.Y. Apr. 8, 2019) (cleaned up). "'The only two circumstances in which judicial immunity does not apply is when'" the judge "'takes action outside'" their "'judicial capacity'" or "'when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.'" *Id*. (quoting *Mireles*, 502 U.S. at 11-12). Here, Paul alleges that Judge Moran set a high bail, which violated the Eighth Amendment. (Complaint, Dkt. 1, at pgs. 4,6). Judge Moran's decision to set bail is unquestionably a judicial act.

Therefore, judicial immunity applies. Thus, the Court recommends dismissing Paul's claims against Judge Moran with prejudice.

## B. The District Court should dismiss Paul's claims against Defendants Bellock, Grays, and Shelley, because the Complaint fails to state a claim against those Defendants.

The Court recommends dismissing Paul's claims against Bellock and Grays, in their personal capacity, and Shelley without prejudice and with leave to amend because Paul's Complaint fails to state a claim against these Defendants.

Pleadings must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief …" Fed. R. Civ. P. 8(a)(2). "The purpose of" Rule 8 "is to give fair notice of the claim being asserted so" adverse parties have "the opportunity to file a responsive answer, prepare an adequate defense, and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (cleaned up). The rule also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought[.]" Fed. R. Civ. P. 8(a)(1), (3). "Although no technical form is required, the Federal Rules make clear that each allegation contained in the pleading 'must

be simple, concise, and direct." *Cole v. Smrtic*, No. 1:24-CV-847, 2024 WL 4870495, at *2 (N.D.N.Y. 2024) (cleaned up). Allegations "so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Indeed, to survive dismissal for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft*, 556 U.S. at 678 (2009) (cleaned up). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* (cleaned up).

Here, Paul's claim against Bellock is that "he does not want to do his job" and Paul's claim against Grays' is that he wrote to him, and it was "to no avail." (Complaint, Dkt. 1, at pg. 5). Even worse, Paul's complaint does not allege Shelley took any actions. *See generally* (*Id.*). In other words, Paul's allegations are "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," which are insufficient to state a claim. *Ashcroft*, 556 U.S. at 678. So, the District Court should dismiss

Paul's claims against Bellock and Grays, in their personal capacity, and Shelley without prejudice and with leave to amend.

### C. The District Court should dismiss Paul's claims against Onondaga County's Sheriff's Office and Onondaga County Justice Center because the Complaint does not make out a *Monell* claim.

The Court recommends dismissing Paul's claims against Onondaga County's Sheriff's Office and the Onondaga County Justice Center without prejudice and with leave to amend because the Complaint does not plausibly allege a *Monell* claim.

A municipality may only be named as a defendant when the municipality, through the execution of its policies, actually deprives an individual of their constitutional rights and is liable for the injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) "The existence of a municipal policy that gives rise to *Monell* liability can be established in four ways: (1) a formal policy endorsed by the municipality; (2) actions directed by the government's authorized decisionmakers' or those who establish governmental policy; (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware; or (4) a constitutional violation resulting from policymakers' failure to train municipal employees." *Deferio v. City of*

*Syracuse*, 770 F. App'x 587, 590 (2d Cir. 2019) (cleaned up). "Once a plaintiff has demonstrated the existence of a municipal policy," they "must then establish a causal connection, or an affirmative link, between the policy and the deprivation of their constitutional rights." *Id.* (cleaned up); *see also Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (holding that plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged").

Paul's Complaint fails to establish a *Monell* claim. In his Complaint, Paul alleges that Seargent Eric Johnson, Lieutenant Jason Jarvis, Deputy Hanaver, Deputy Apples, Deputy Nhitmon, Deputy Lee, Deputy Sanderson, Deputy Bryant, and Deputy Burns gang assaulted him while at Onondaga County Justice Center. (Complaint, Dkt. 1, at pg. 4). The Deputies allegedly split Paul's eyebrow, knocked out one tooth, and chipped another. (*Id.*). Their actions also led to Paul fracturing his own ankle. (*Id.*). This "single incident of unconstitutional activity by" municipal employees is "insufficient to infer a custom, policy or practice as required by *Monell* to impose municipal liability." *Williams v. Cnty. of Onondaga*, No. 522-CV-1367 (TJM/ATB), 2023 WL

2563181 (N.D.N.Y. Feb. 21, 2023) (cleaned up). So Paul's Complaint

fails to establish a *Monell* claim.

* * *

To the extent Paul intended to sue the officers for excessive force,

deliberate indifference to medical need, and/or failure to protect (he

claims they assaulted him), the Complaint fails to comply with Fed. R.

Civ. P. 10's requirement that all Defendants must be named. *See* Fed.

R. Civ. P. 10(a). In consequence, the District Court can dismiss this

unbriefed claim as well.

### D. Opportunity to Amend

Generally, before courts dismiss a *pro se* complaint or any part of

the complaint *sua sponte*, it should afford the plaintiff the opportunity

to amend at least once. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129,

131 (2d Cir. 1993). But leave to re-plead may be denied where any

amendment would be futile. *See id.* Futility is present when the

problem with plaintiff's causes of action is substantive such that better

pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d

Cir. 2000) (citation omitted). Here, the Court recommends dismissing

Paul's claims against Defendants New York State, Onondaga County,

Onondaga County Criminal Courthouse, Onondaga County District Attorney's Office, the New York State Commission on Judicial Conduct, Onondaga County District Attorney Willliam Fitzpatrick,  ADA Sara Fitzpatrick County Court Judge Matthew Doran, Joe Bellock, in his official capacity, and Taa Grays, in his official capacity, with prejudice and without leave to amend because any amendment would be futile. But the Court also recommends dismissing Paul's claims against Onondaga County's Sheriff's Office, Onondaga County Justice Center, Bellock, in his personal capacity, Grays, in his personal capacity, and Shelley without prejudice and with leave to amend because Paul could plead enough facts for his claim to survive §1915 review.

## V.    CONCLUSION

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that Plaintiff's motion to proceed IFP (Dkt. 3) is **GRANTED**,[2] and it is further

**RECOMMENDED,** the District Court dismiss Paul's claims against Defendants New York State, Onondaga County, Onondaga

---

[2] The court notes that although Plaintiff's IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in the future regarding this action, including but not limited to copying and/or witness fees.

County Criminal Courthouse, Onondaga County District Attorney's Office, the New York State Commission on Judicial Conduct, Onondaga County District Attorney Willliam Fitzpatrick, ADA Sara Fitzpatrick County Court Judge Matthew Doran, Joe Bellock, in his official capacity, and Taa Grays, in his official capacity, **WITH PREJUDICE** and **WITHOUT LEAVE TO AMEND**; and it is further;

      **RECOMMENDED,** the District Court dismiss Paul's claims against Onondaga County's Sheriff's Office, Onondaga County Justice Center, Bellock, in his personal capacity, Grays, in his personal capacity, and Shelley **WITHOUT PREJUDICE** but **WITH LEAVE TO AMEND**; and it is further;

      **ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on Plaintiff by regular mail.[3]

      Under 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS**

---

[3] The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) *(per curiam)*.

**WILL PRECLUDE APPELLATE REVIEW**. *See Roldan v. Racette*,

984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and*

*Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed.

R. Civ. P. 6(a), 6(e), 72.


Dated: August 25, 2025

                                                       _____

                                                       Hon. Mitchell J. Katz
                                                       U.S. Magistrate Judge

KeyCite Blue-Striped Flag

Appeal Filed by   Chisholm, II v. Supreme Court Judge, Linda Kevins (N.Y.),   2nd Cir.,   August 21, 2024

2024 WL 3328592
Only the Westlaw citation is currently available.
For Electronic Publication Only
United States District Court, E.D. New York.

Thomas J. CHISHOLM, II, Plaintiff,

v.

Supreme Court Judge, Linda KEVINS (N.Y.); New York State Commission on Judicial Conduct, New York State
Attorney Generals' Office, Joseph W. Belluck, Chair; Letitia James, New York State Attorney General, Defendants.

23-CV-5169(JMA)(SIL)
|
Signed July 8, 2024

**Attorneys and Law Firms**

Thomas J. Chisholm II, Banbridge, NY, Pro Se.

## <u>MEMORANDUM & ORDER</u>

AZRACK, District Judge:

**\*1**  Before the Court is the application to proceed *in forma pauperis* ("IFP") filed by Thomas J. Chisholm, II ("Plaintiff"), proceeding *pro se*, in relation to his complaint brought pursuant to 42 U.S.C. § 1983 ("Section 1983") against New York State Supreme Court Judge Linda Kevins ("Judge Kevins"), the New York State Commission on Judicial Conduct ("NYSCJC"); the New York State Attorney General's Office ("AG's Office"); Joseph W. Belluck, as Chair of the NYSCJC ("Belluck"); and Letitia James, as New York State Attorney General ("James" and collectively, "Defendants"). (See Complaint, ECF No. 1, IFP App., ECF No. 8.)

Upon review of the declaration accompanying Plaintiff's IFP application, the Court finds that Plaintiff's financial status qualifies him to commence this action without prepayment of the filing fee. See 28 U.S.C. § 1915(a)(1). Accordingly, for the reasons that follow, the Court grants Plaintiff's IFP application and *sua sponte* dismisses the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

## I. BACKGROUND

Plaintiff's complaint is submitted on the Court's Section 1983 complaint form with an additional five-page statement of "Underlying Facts" and two pages of exhibits. (Compl., ECF No. 1, in toto.) Plaintiff seeks redress for the alleged deprivation of his First and Fourteenth Amendment rights in relation to the disposition of two cases in the New York State Supreme Court, Suffolk County, under Index Nos. 607585/2021 and 204057/2022. (Id. ¶ II.B; ¶ III.B.)

According to the instant federal complaint, Plaintiff had filed two complaints in the New York State Supreme Court's Riverhead location; both cases concerned "the very same subject matter" and both cases were assigned to Judge Kevins. (ECF 1-1, at 1-2.) Plaintiff alleges that the defendants named in those cases "have business relationships with the [state] court" and, as a result,

Judge Kevins "disposed" of the cases "without a notice of entry in both cases." (Id. at 2.) Plaintiff complains that he "pleaded for due process" to Judge Kevins in "many correspondence[s] ... to no avail." (Id.)

For Index No. 607585/2021, Plaintiff alleges that "no notice of entry" was "given." (ECF No. 1 at 5.) For Index No. 204057/2022, Plaintiff alleges that that the case was "disposed [of]" without any "notice received" by Plaintiff. (Id.) Thus, Plaintiff's complaint appears to allege that he never received a notice of entry in either case. Plaintiff claims both that he could not appeal "without a notice of entry" and that "the time appeal these decisions [ ] expired." (Id.)

State court records for these two cases indicate that notices of entry were filed in both cases and include affidavits of service attesting that the copies of the notices of entry and relevant orders issued by Judge Kevins were mailed to Plaintiff. [1]

**\*2** According to the information maintained by the New York State Office of Court Administration on its public website, in the case under Index No. 607585/2021, Plaintiff signed a stipulation on January 24, 2022 adjourning the defendants' motion to dismiss and extending Plaintiff's time to serve his opposition to that motion until February 8, 2022. (See Stip., NYSECF Doc. No. 22.) Having received no opposition to the motion, the defendants filed the motion on February 15, 2022, and by Short Form Order dated August 24, 2022, Judge Kevins granted the motion. (See NYSECF Doc. No. 23.) Noting that Plaintiff failed to oppose the motion, Judge Kevins' August 24 Short Form Order dismissed the complaint for failure to timely effect service of the summons and complaint. (Id.) ("The plaintiff has not interposed opposition to defendants' motion herein and thus has not established good cause to extend the time for service. There is no e-filed proof of service of the summons and complaint upon the defendants in this case.") Defense counsel then filed a Notice of Entry in this case, including an affidavit of service, which attests that the "Order with Notice of Entry" was mailed to Plaintiff at 50 St. John Place, West Babylon, New York. (See NYSECF Docs. 22, 24.) That is the same address listed under Plaintiff's signature on the stipulation discussed above. (See NYSECF Docs. 22, 24.)

Similarly, in the case under Index No. 204057/2022, by Order dated December 1, 2022, Judge Kevins denied Plaintiff's application to proceed as a poor person because he "failed to make a sufficient showing of a meritorious cause of action." (See NYSECF No. 9.) The Notice of Entry in this case also an affidavit of service indicating that it was mailed to Plaintiff at the same address. (See NYSECF No. 17.)

The orders and notices of entry discussed above are posted on the public website maintained by the New York State Office of Court Administration where Plaintiff could view them. (See https://iapps.courts.state.ny.us/webcivil)

The New York State Office of Court Administration's public website does not indicate that Plaintiff ever filed a notice of appeal in either case. And Plaintiff's federal complaint does not allege otherwise. Plaintiff never alleges that he filed a notice of appeal in either case. Instead, Plaintiff alleges that he:

> [C]omposed a complaint to the Commission on Judicial Conduct dated January 21, 2023, listing the civil rights violations committed by judge Kevins and to [his] surprise and disappointment ..., then desperately sought relief through the New York State Appellate Court and rejected receiving no right to grieve the Judge and her unlawful acts, violations of oath of office and denial of the [his] rights.

> (ECF No. 1-1.)

These allegations appear to indicate that Plaintiff sought unspecified relief from the Appellate Division concerning his complaint to the "Commission on Judicial Conduct."

Plaintiff also alleges that he filed complaints against Judge Kevins with the New York State Attorney General's Office. (Id. at 3.) Plaintiff also describes phoning that office and, after speaking with "different employees" there, he was "chastised with a harsh verbal thrashing that the New York State Attorney General's Office only represent[s] the Department and interests of New York State." (Id.)

As a result, Plaintiff describes that he is [2]

> fed up with not being treated as a Citizen of The United States, protected by birth right! The Complainant ancestry has been traced to the 1600's through slavery prior to the Emancipation Proclamation, complainants' family history includes relatives that served and died for this country and the enjoyment of the rights established through these sacrifices. Recent family history includes a family members employed by Suffolk County Law Enforcement, New York State Law Enforcement, the Federal Bureau of Investigations and a daughter that served honorably in The United States Navy for Six years.

> This complainant, if need be, WILL NOT EVER! TUCK TAIL AND SWEEP WHAT THESE DEFENDANTS' DID AND THE GROSS CONSTITUTIONAL VIOLATIONS COMMITTED AGAINST HIM!!!

> If the reading of EVERY LAW BOOK WRITTEN AND EVERY VEHICLE allowed BY LAW to bring ALL THE DEFENDANTS' before a tribunal of complainants peers and a lawful rendering by such has been acquired, then and only then will complainant be at peace and pleased with the keepers administers of the Both United States and New York State Constitutions' set forth long ago prohibiting exactly what Complainant has experienced with the Defendants'.

**\*3**  (*Id.* at 3-4.)

For relief, Plaintiff seeks to "[c]ompel Defendants to do the jobs lawfully, respect the constitutional rights of the Plaintiff fully without prejudice or impartial enforcement of Law, restore complaint, and allow the complaint to be presented before a Judge that is truly Honorable, unbiased and a TRUE representative of the Constitutional Rights of ALL citizens even those who are of color and not a friend; All deemed just and proper." (<u>Id.</u> ¶ V.)

## II. DISCUSSION

### A. <u>In Forma Pauperis Application</u>

Upon review of Plaintiff's declaration in support of his application to proceed *in forma pauperis*, the Court finds that Plaintiff is qualified to commence this action without prepayment of the filing fee. 28 U.S.C. § 1915(a)(1). Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.

### B. <u>Standard of Review</u>

Pursuant to the *in forma pauperis* statute, a court must dismiss an action if it determines that it "(i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915 (e)(2)(B). The Court must dismiss the action as soon as it makes such a determination. 28 U.S.C. § 1915A(b).

*Pro se* submissions are afforded wide interpretational latitude and should be held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*); see also Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997). In addition, the court is required to read a plaintiff's *pro se* complaint liberally and interpret it as raising the strongest arguments it suggests. United States v. Akinrosotu, 637 F.3d 165, 167 (2d Cir. 2011) (*per curiam*) (citation omitted); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

The Supreme Court has held that *pro se* complaints need not even plead specific facts; rather the complainant "need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (*per curiam*) (internal quotation marks and citations omitted). Indeed, "[a]s th[e] [Supreme] Court has repeatedly stressed, 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'

" Simmons v. United States, 142 S. Ct. 23, 25 (2021) (quoting *Erickson*, 551 U.S. at 94); *cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

However, a pro se plaintiff must still plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. While " ' detailed factual allegations' " are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Id. at 678 (quoting Twombly, 550 U.S. at 555).

## C. **Section 1983**
**\*4** Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ....

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979); Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999). In order to state a § 1983 claim, a plaintiff must allege two essential elements. First, the conduct challenged must have been "committed by a person acting under color of state law." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)); see also Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.") (internal quotation marks and citation omitted). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." Id.; see also Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999). In addition, in an action brought pursuant to § 1983, a plaintiff must allege the personal involvement of the defendant in the purported constitutional deprivation. Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (citing Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006)).

### 1. Sovereign Immunity
The Eleventh Amendment to the Constitution states that:

> [t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

In essence, the Eleventh Amendment prevents non-consenting states, state agencies, and state officials (who are named in their official capacities) from being sued by private individuals in federal court. See Bd. of Tr. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001). "This immunity shields states from claims for money damages, injunctive relief, and retrospective declaratory relief." Yi Sun v. Saslovsky, 19-CV-10858, 2020 WL 6828666, at \*3 (S.D.N.Y. Aug. 6, 2020) (citing Green v. Mansour, 474 U.S. 64, 72-74 (1985); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984)).

"It is well-established that New York State has not consented to Section 1983 suits in federal court ... and that Section 1983 was not intended to override a state's sovereign immunity." Mamot v. Board of Regents, 367 F. App'x 191, 192 (2d Cir. 2010) (internal citation omitted); Brown v. Ukeiley, 22-CV-7214(JMA)(AYS), 2023 WL 6673474, at *4 (E.D.N.Y. Oct. 12, 2023). Thus, Plaintiff's Section 1983 claims against the NYSCJC and the AG's Office are barred by the Eleventh Amendment and are thus dismissed pursuant to 28 U.S.C. § 1915(e)(2) (B)(i)-(iii).

 *5  However, suits against state officials in their official capacities are permitted for prospective injunctive relief to stop ongoing violations of federal law. Mary Jo C. v. New York State & Local Ret. Sys., 707 F.3d 144, 166 (2d Cir. 2013); State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007) (Under the exception set forth in Ex parte Young, 209 U.S. 123 (1908), "a plaintiff may sue a state official acting in his official capacity -- notwithstanding the Eleventh Amendment -- for prospective, injunctive relief from violations of federal law.") (citation omitted).

Insofar as Plaintiff seeks prospective injunctive relief from Belluck and James in their official capacities, such claims also necessarily fail because "[m]erely alleging that an official has the general duty to enforce or execute the law is insufficient to overcome Eleventh Amendment immunity." [3] Sibley v. Watches, 501 F. Supp. 3d 210, 234 (W.D.N.Y. 2020) (citing Wang v. Pataki, 164 F. Supp. 2d 406, 410 (S.D.N.Y. 2001))

Further, as explained below, any claims against Judge Kevins are also barred by judicial immunity and the text of Section 1983, and any claims against Belluck and James also fail because Plaintiff has not alleged that either were personally involved in the challenged conduct.

### 2. Judicial Immunity

Plaintiff's Section 1983 claims against Judge Kevins must be dismissed because she is absolutely immune from a suit for damages based on Plaintiff's allegations and the text of Section 1983 precludes Plaintiff's claim for injunctive relief. [4]

Section 1983 states that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. As explained below, Judge Kevins was acting in her "judicial capacity," no declaratory decree was violated, and Plaintiff has not plausibly alleged that declaratory relief was unavailable to him through an appeal in state court.

 *6  Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." Bliven v. Hunt, 579 F.3d 204, 210 (2d Cir. 2009). Here, Plaintiff complains that Judge Kevins "disposed" of his cases. (Compl., ECF No. 1 at 2.) Judge Kevins' alleged actions were clearly taken in her judicial capacity.

Additionally, no declaratory decree was violated here, and Plaintiff has not plausibly alleged that declaratory relief was unavailable to him through an appeal in state court. Berlin v. Meijias, No. 15-CV-5308, 2017 WL 4402457, at *4 (E.D.N.Y. Sept. 30, 2017); see McKeown v. N.Y. State Comm'n on Jud. Conduct, 377 F. App'x 121, 123 (2d Cir. 2010) ("To the extent that Appellant seeks injunctive relief against Judge Scarpino, moreover, Appellant does not allege that a declaratory decree was violated or that declaratory relief was unavailable, and so § 1983 relief is not available."); LeDuc v. Tilley, No. 05-CV-157, 2005 WL 1475334, at *7 (D. Conn. June 22, 2005) ("Declaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order."); see also Vazquez-Diaz v. Borreiro, No. 22-CV-8708, 2022 WL 17539501, at *3 n.4 (S.D.N.Y. Dec. 5, 2022), appeal dismissed, No. 23-42, 2023 WL 4347957 (2d Cir. May 4, 2023).

Plaintiff's conclusory allegations in the complaint are insufficient to plausibly allege that appeals were "unavailable" to him in state court. If Plaintiff wished to dispute the affidavits of service filed in state court on the ground that he never received the notices of entry, he had the ability to try to contest those affidavits in state court, including through litigation before the Appellate Division. See Heffernan v. Vill. Of Munsey Park, 133 A.D.2d 139, 140, 518 N.Y.S.2d 813, 814 (App. Div. 2d Dep't 1987) (remitting case to Supreme Court for a hearing concerning alleged service of "judgment with notice of entry" because appellant

denied "receipt of a judgment purportedly served by mail and there is insufficient evidence of proper service"); Strober King Bldg. Supply Centers, Inc. v. Merkley, 266 A.D.2d 203, 203, 697 N.Y.S.2d 319, 319 (App. Div. 2d Dep't 1999) (dismissing appeal because appellant's conclusory statements in his reply brief failed to rebut the validity of a properly executed affidavit of service which indicated that appellant had been mailed a copy of the judgment and notice of entry more than thirty before he filed his notice of appeal); see also Hart v. New York City Hous. Auth., 161 A.D.3d 724, 724–25, 76 N.Y.S.3d 203, 204–05 (App. Div. 2d Dep't 2018) (holding that where written notice of entry of order was never served on defendant, "the defendant's time to appeal never commenced running, and its notice of appeal was therefore timely filed"). Accordingly, state court appeals were not "unavailable" to Plaintiff. Thus, his claims for injunctive relief against Judge Kevins are not permitted under Section 1983. The Court also notes that Plaintiff's complaint does not even allege that he filed a notice of appeal and contested the validity of the affidavits of service for the notices of entry that defendants filed in state court. This is a further reason why Plaintiff has failed to plausibly allege that appeals were "unavailable" to him. [5]

**\*7**  The Court therefore dismisses Plaintiff's Section 1983 damages claims against Judge Kevins under the doctrine of judicial immunity and dismisses Plaintiff's Section 1983 claims for injunctive relief against Judge Kevins because such relief is precluded by Section 1983. [6]  See 28 U.S.C. § 1915(e)(2)(B); Mills v. Fischer, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the in forma pauperis statute].").

### 3. Persons Under Section 1983

Plaintiff's Section 1983 claims against the NYSCJC and the AG's Office must also be dismissed because these defendants are not suable entities and proper parties under Section 1983. Section 1983 provides that an action may be maintained against a "person" who has deprived another of rights under the "Constitution and laws." 42 U.S.C. § 1983. Neither of these entities are "persons" within the meaning of Section 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (state is not a "person" for the purpose of Section 1983 claims); DeFreitas v. Toulon, 23-CV-5933, 2024 WL 308250, at \*1 (E.D.N.Y. Jan. 26, 2024) (dismissing claims against the State of New York Citizen's Policy and Complaint Review Council and the NY Grievance Committee, among others, because they are not "persons" within the meaning of Section 1983) (citing Hester-Bey v. Police Dep't, 12-CV-3320, 2012 WL 4447383, at \*1 (E.D.N.Y. Sept. 24, 2012)) (explaining that "Section 1983 provides that an action may only be maintained against a 'person' who has deprived another of rights under the 'Constitution and Laws,' " and holding that, because "[t]he New York City Police Department is not a 'person' within the meaning of section 1983 [it] is therefore[ ] not a suable entity" (quoting 42 U.S.C. § 1983)) (additional citation omitted). Therefore, Plaintiff's Section 1983 claims against the NYSCJC and the AG's Office and are not plausible and are thus dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

### 4. Lack of Personal Involvement

Although Plaintiff also names Belluck and James as defendants, Plaintiff does not mention either of these individuals in the body of the complaint nor are there any factual allegations against either of them. Indeed, the only mention of these individuals is found in the caption of the complaint and the section of complaint that identifies the parties. (See generally Compl.) In order to allege a plausible § 1983 claim, a plaintiff must allege the personal involvement of the defendant in the purported constitutional deprivation. Farid, 593 F.3d at 249 (citing Farrell, 449 F.3d at 484); Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986) (A plaintiff must "allege a tangible connection between the acts of a defendant and the injuries suffered."). Where a Section 1983 claim fails to allege the personal involvement of the defendant, it fails as a matter of law. See Johnson v. Barney, 360 F. App'x 199, 201 (2d Cir. 2010).

**\*8**  To the extent Plaintiff seeks to impose liability against these defendants based on the supervisory positions they hold, Plaintiff has not sufficiently alleged their personal involvement. An "individual cannot be held liable for damages under Section 1983 'merely because he held a high position of authority.' " Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004) (quoting Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996)). Instead, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution' " or laws of the

United States. Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) (quoting Iqbal, 556 U.S. at 676). Thus, Plaintiff has not alleged a plausible claim against Belluck and James and these claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

**5. State Law Claims**

Given the dismissal of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over any remaining state laws claims Plaintiff may have and any such claims are thus dismissed without prejudice. See 28 U.S.C. § 1367(c)(3); see also Carnegie Mellon Univ. v. Cohill, 484 U.S. 343 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

**6. Leave to Amend**

Given the Second Circuit's guidance that a *pro se* complaint should not be dismissed without leave to amend unless amendment would be futile, Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000), the Court has carefully considered whether leave to amend is warranted here. Because the defects in Plaintiff's claims are substantive and would not be cured if afforded an opportunity to amend, leave to amend the Complaint is denied.

## III. CONCLUSION

For the forgoing reasons, the Plaintiff's application to proceed *in forma pauperis* is granted. However, Plaintiff's complaint is dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii). Leave to amend the complaint is denied.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 3328592

---

### Footnotes

1    The Court can take judicial notice of the records of these related state court proceedings. See Blue Tree Hotel Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004); Durosene v. Bank of Am., N.A., No. 19-CV-4181, 2020 WL 3403083, at *1 (E.D.N.Y. June 19, 2020).

2    Excerpts from the complaint have been reproduced here exactly as they appear in the original. Errors in spelling, punctuation, and grammar have not been corrected or noted.

3    Plaintiff seeks, as prospective injunctive relief, that these defendants "do the[ir] jobs lawfully, respect the constitutional rights of the Plaintiff fully without prejudice or impartial enforcement of Law, restore complaint, and allow the complaint to be presented before a Judge that is truly Honorable, unbiased and a TRUE representative of the Constitutional Rights

of ALL citizens even those who are of color and not a friend" (Compl ¶. V.) However, neither of these defendants even have the authority to "restore [Plaintiff's] complaint" and to have it assigned to a different judge.

4    Plaintiff's complaint appears to request only injunctive relief. To the extent Plaintiff also seeks damages against Judge Kevins, such a claim is also barred because judges have absolute immunity from suit for any actions taken within the scope of their judicial responsibilities. Mireles v. Waco, 502 U.S. 9, 11 (1991). When judicial immunity applies, the Court may, on its own, dismiss the complaint "without affording a hearing or other notice of dismissal." Rolle v. Shields, 16-CV-2487(BMC)(LB), 2016 WL 3093898, at *1 (E.D.N.Y. June 1, 2016), aff'd, No. 16-2307, 2017 WL 6759305 (2d Cir. Apr. 26, 2017) (citing Tapp v. Champagne, 164 F. App'x 106 (2d Cir. 2006)) (summary order) (affirming *sua sponte* dismissal of § 1983 claims against judges protected by absolute immunity).

5    Plaintiff's allegations indicate that he submitted unspecified papers to the Appellate Division that appear to have concerned his complaint to the Commission on Judicial Conduct. Even assuming arguendo that Plaintiff had unsuccessfully contested the validity of the service of the notices of entry in the Appellate Division, that alone would not be sufficient to establish that appeals were "unavailable" to him.

6    Because Plaintiff's claims for injunctive relief against Judge Kevins are not permitted under Section 1983, the Court does not need to reach the merits of those claims. Nevertheless, the Court notes that Plaintiff's claims that Judge Kevins somehow violated his constitutional rights concerning the notices of entry are contradicted by court filings on the state court website. Defense counsel filed the notices of entry—which included affidavits of service attesting that the notices were mailed to Plaintiff—and it does not appear that Plaintiff ever challenged those affidavits before Judge Kevins. Plaintiff's complaint merely alleges, in conclusory fashion, that he "pleaded for due process" to Judge Kevins in "many" unspecified "correspondence[s] ... to no avail." As such, Plaintiff has not plausibly alleged that Judge Kevins played any role in Plaintiff's alleged failure to receive copies of the notices of entry.

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4870495
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,

v.

Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)

|

Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

### REPORT-RECOMMENDATION & ORDER

CHRISTIAN F. HUMMEL, United States Magistrate Judge

### I. In Forma Pauperis

**\*1**  Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint. [1] See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [2] Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

### II. Initial Review

### A. Legal Standards

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

> There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they

"suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

**\*2** Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at \*2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

**\*3** This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) [3] (quoting Livingston v. Adirondack

Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

### B. Complaint

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983. See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel." [4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of character [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

> **\*4** Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga Disrict Attorney's Office, and the Supreme Court Appellate Division Third department. ** This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts [5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has Constitutional violations. That case number is 1:24-CR-301 (AMN)." Id.

### C. Discussion [6]

#### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel," he does not provide factual support or context. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

#### 2. Heck v. Humphrey

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel" and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction. See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed "ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me." Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

**\*5** As this Court, citing the District of Connecticut, has set forth:

In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original).

[ ]

Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at \*3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards,

No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at *7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at *7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/ or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction. [7]

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge" [8] such claims would be barred by judicial immunity.

 **\*6**  "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Id. (citation omitted); see Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Zavalidroga, 2017 WL 8777370, at *8 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " Id. (quoting Mireles, 502 U.S. at 11-12). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.' " Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Ceparano, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.' " Ceparano, 404 F. App'x at 539 (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (quoting Mireles, 502 U.S. at 11).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired Administrative Law Judge," Judge Catena is also protected by absolute judicial immunity as a judge's retirement, "does not impact [his or] her immunity for acts taken in [his or] her official capacity before her retirement." McCray v. Lewis, No. 16-CV-3855 (WFK/ VMS), 2016 WL 4579081, at *2 (E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to sue the judges their official

capacities, the suit is barred by the Eleventh Amendment. See Pacherille v. Burns, 30 F. Supp. 3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").

**\*7**  In addition, plaintiff also references, exclusively in his "relief" section of the form complaint, "the Supreme Court Appellate Division, Third Department" when stating that he experienced "deliberate misconduct and malice." Compl. at 7. He does not name this Court as a defendant anywhere in the complaint. However, even if plaintiff were to have named the Appellate Division, Third Department as a defendant, such defendant would also need to be dismissed based on Eleventh Amendment immunity as the Appellate Division "is merely an agency or arm of New York State." Benyi v. New York, No. 3:20-CV-1463 (DNH/ML), 2021 WL 1406649, at \*5 (N.D.N.Y. Mar. 23, 2021), report and recommendation adopted, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citation omitted). Accordingly, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division as a defendant, such claims are barred by Eleventh Amendment immunity. See Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V. Maxwell, Esq., Assistant District Attorney, in addition to the Heck issues noted above, he would be protected by absolute prosecutorial immunity. As this Court has recently reiterated,

> Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011) (citing Kalina v. Fletcher, 522 U.S. 118, 127 (1997)).

> Accordingly, absolute immunity extends to functions such as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); see also Flagler, 663 F.3d at 547 (explaining, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).

Williams v. Atkins, No. 5:24-CV-0573 (DNH/TWD), 2024 WL 3649849, at \*5 (N.D.N.Y. June 11, 2024), report and recommendation adopted, No. 5:24-CV-573, 2024 WL 3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld potentially exculpatory material" that was used against him. Compl. at 4. Beyond the Heck barriers already discussed, even if plaintiff could amend to provide greater detail, absolute immunity would extent to even this alleged misconduct as such allegations clearly fall within the scope of prosecutorial immunity. Accordingly, it is recommended that any claims against ADA Samuel V. Maxwell be dismissed for absolute prosecutorial immunity. "Furthermore, because the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice." Phillips v. New York, No. 5:13-CV-927, 2013 WL 5703629, at \*5 (N.D.N.Y. Oct. 17, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 223 (2d Cir. 2000)). [9]

### III. Conclusion

**\*8**  It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/ Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have
**FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

**All Citations**

Slip Copy, 2024 WL 4870495

---

### Footnotes

1    The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

2    Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

3    Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

4    Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

5    Plaintiff did not provide any transcripts.

6    As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

7    The undersigned recognizes that claims that are determined to be barred by Heck are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a Heck dismissal. The undersigned has included the Heck review for sake of completeness.

8    Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by Rooker-Feldman, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by Younger. See Porter v. Nasci, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citations omitted), report and recommendation adopted, 2024 WL 3158645 (N.D.N.Y. June 25, 2024) ("Under the Rooker-Feldman doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); see also Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

9    Plaintiff appears to characterize his submissions as a purported removal to federal court or suggests that he seeks to remove his case from Montgomery County Court to this Court. See Dkt. No. 7 (citing 28 U.S.C. § 1441). However, in addition to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. See, e.g., 28 U.S.C. § 1446. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. See id. § 1446(a).

10    The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994). See Dkt. No. 5.

11    If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

---

End of Document    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Coon v. Merola, Not Reported in Fed. Supp. (2019)

2019 WL 1981416

2019 WL 1981416
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Donald James COON, Plaintiff,

v.

Frank MEROLA, et al., Defendants.

1:19-CV-394 (DNH/ATB)
|
Signed 04/08/2019

**Attorneys and Law Firms**

Donald James Coon, Troy, NY, pro se.

### ORDER and REPORT-RECOMMENDATION

Hon. Andrew T. Baxter, U.S. Magistrate Judge

**\*1** The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiff Donald James Coon, together with a motion to proceed in forma pauperis ("IFP"). (Dkt. Nos. 1, 2).

## I. <u>In Forma Pauperis ("IFP") Application</u>

A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). The court finds for purposes of this recommendation, that plaintiff meets the financial criteria for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) (B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

Case 5:25-cv-00967-ECC-MJK   Document 8   Filed 08/25/25   Page 36 of 97

Coon v. Merola, Not Reported in Fed. Supp. (2019)

2019 WL 1981416

## II. Complaint

Although plaintiff's complaint is very conclusory, a liberal reading of the allegations contained therein show that plaintiff is attempting to allege that the Rensselaer County Clerk and his John/Jane Doe Deputy Clerks have violated plaintiff's constitutional rights in connection with a state court law suit that plaintiff has attempted to bring. (Complaint ("Compl.") *generally*) (Dkt. No. 1). In order to understand plaintiff's allegations in this action, the court must discuss another action filed by this plaintiff in 2016. In 2016, plaintiff filed a federal action in this court in which he named a variety of defendants, including Police Chief George Bell, the Villages of Cambridge and Greenwich, various district attorneys, Claverack Insurance Company, Glens Falls Hospital, Washington County Child Protective Services, and a police officer. *Coon v. Bell*, No. 1:16-CV-291 (TJM/DJS).

**\*2**  After initial review of plaintiff's complaint in *Coon v. Bell*, Magistrate Judge Daniel Stewart found that plaintiff failed to state claims against the defendants and recommended that he be allowed to file an amended complaint in an effort to cure the deficiencies in the original. (Dkt. No. 8 in 16-CV-291). United States District Court Judge Thomas J. McAvoy adopted Magistrate Judge Stewart's recommendation on May 23, 2016. (Dkt. No. 11 in 16-CV-291). Plaintiff complied with the court's direction and filed an amended complaint on May 23, 2016. (Dkt. No. 12 in 16-CV-291).

Magistrate Judge Stewart conducted an initial review of the amended complaint and found that plaintiff failed to cure most of the deficiencies that were in the original. (Dkt. No. 13 in 16-CV-291). Magistrate Judge Stewart recommended dismissing most of the claims and most of the defendants from the action, while allowing a Fourth Amendment illegal search claim and Fourth Amendment excessive force claim to proceed against defendant Bell.[1] (Dkt. No. 13 in 16-CV-291). Magistrate Judge Stewart's recommendation was adopted by Judge McAvoy on November 2, 2016. (Dkt. No. 16 in 16-CV-291).

In Magistrate Judge Stewart's report and recommendation, he found that plaintiff's defamation claims against defendant Bell and his attempted contract claims against defendant Bell and Claverack Insurance Company were, at best, state law claims.[2] (Dkt. No. 13 in 16-CV-291 at 4). Plaintiff then states that he "filed said claims" in the Rensselaer County Supreme Court. (Compl. at 1). Plaintiff states that in 2017, Judge Andrew G. Ceresia granted plaintiff poor person status, but that when he went to the Rensselaer County Clerk's office, defendant Merola told plaintiff that Judge Ceresia's order was "no good and they wouldn't honor it." (Compl. at 2). Plaintiff states that he brought Judge Ceresia's order to the Clerk's office four more times, and "finally" on March 11, 2019, a clerk that plaintiff had never seen before stamped the Judge's order and kept a copy. (*Id.*)

Plaintiff alleges that he has been denied his "rightful benefits and access to the court." Plaintiff states that he even had "to choose between the suit or my housing," and that he was homeless from January 12, 2018 until April 24, 2018. (*Id.*) Plaintiff states that the Rensselaer County Supreme Court wrote plaintiff "2 times the County Clerk's staff made me pay for RJI motion I had already paid for. They told me to give letter [sic] to the Clerk and I would get my monies back." (*Id.*)

Plaintiff states that he is seeking "just compensation" for the Rensselaer County Clerks' actions who refused to recognize his "poor person status" from 2017 until 2019. Plaintiff states that he still has not "received anything" from the "grant[ed] status" because the Clerks refused to grant "my said status." (*Id.*) Plaintiff seeks substantial monetary relief. (*Id.*)

## III. Judicial Immunity

### A. Legal Standards

**\*3**  With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991). Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Judicial immunity is immunity

Coon v. Merola, Not Reported in Fed. Supp. (2019)

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 37 of 97

2019 WL 1981416

from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The only two circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12.

Absolute immunity extends to court clerks who perform tasks " 'which are judicial in nature and an integral part of the judicial process.' " *Proctor v. Quinn*, No. 19-CV-833, 2019 WL 692935, at *2 (E.D.N.Y. Feb. 19, 2019) (quoting *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997)). The court's " 'inherent power to control its docket is part of its function of resolving disputes between parties' and is thus 'a function for which judges and their supporting staff are afforded absolute immunity.' " *Id.* (quoting *Rodriguez*, 116 F.3d at 66); and citing *Pikulin v. Gonzalez*, No. 07-CV-0412 (CBA), 2007 WL 1063353, at *2 (E.D.N.Y. Apr. 5, 2007) (finding that absolute judicial immunity extends to "the Clerk's Office activities of filing and docketing legal documents"). However, a court clerk may not be entitled to absolute immunity where the clerk's refusal to accept the papers of a litigant seeking to commence an action results in the deprivation of the individual's constitutional rights. *Glass v. New York Supreme Court Appellate Division*, No. 1:17-CV-226, 2017 WL 9487181, at *3 (N.D.N.Y. Apr. 26, 2017) (citations omitted).

In determining whether the clerk's conduct in a particular case is "judicial" in nature, the court takes a "functional approach" and allows the defendant absolute immunity when the clerk is performing a "discretionary act, or performing a duty that inherently relates to resolving a dispute." *Vance v. State of New York Dep't of Corrections*, No. 9:18-CV-748, 2018 WL 6047828, at *10 (N.D.N.Y. Nov. 19, 2018) (quoting *Dzwonczyk v. Suddaby*, No. 10-CV-0300, 2010 WL 1704722, at *6 (N.D.N.Y. Apr. 28, 2010) (citing *Rodriguez*, 116 F.3d at 67) (internal quotation marks omitted)).

### B. Application

Plaintiff's statements in this case are conclusory and essentially, he is suing the "clerks" because they would not file his poor person status order between 2017 and 2019. At best, he alleges a delay in granting him poor person status because it appears that a clerk finally took and filed plaintiff's order, and at the end of his complaint, plaintiff alleges that he "still" has not "received a thing or any help from *the granyted [sic] status*." (Compl. at 2) (emphasis added). It is unclear what plaintiff believes he should have "received" or to what "help" he thinks he is entitled from the clerks beyond filing his order.

It is also unclear how plaintiff alleges that he was denied "access to courts" because he states that he filed his state law claims in the Rensselaer County Supreme Court. (Compl. at 1). However, he claims he was denied his "rightful benefits," and that somehow the clerk's actions in delaying the filing of his poor person order were related to his homelessness between January 12, 2018 and April 24, 2018. Plaintiff claims that he had to choose between "the suit" or his housing, but he does not explain why this is true or why this would be a denial of his constitutional rights. Plaintiff also states that the clerks made plaintiff pay for his RJI "motion," but that he was told that if he wrote a letter, he would get his money back.

**\*4** As it is written, plaintiff's complaint is too conclusory to state a claim against any of the clerks in this action, whether named or unnamed, [3] and the court will recommend dismissal.

## IV. Opportunity to Amend

### A. Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

### B. Application

In this case, the court will recommend dismissal without prejudice, even though the court has serious doubts that plaintiff will be able to amend his complaint to state a claim. However, because there are situations in which a clerk would not be entitled to

Coon v. Merola, Not Reported in Fed. Supp. (2019)

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 38 of 97

2019 WL 1981416

absolute immunity, and plaintiff in this case has failed to include enough facts for the court to make an accurate determination, the court will recommend dismissal without prejudice to plaintiff submitting an amended complaint.

If the court adopts this recommendation, and plaintiff is afforded the opportunity to amend, he should be afforded forty-five (45) days from the date of the order adopting this court's recommendation. Plaintiff should also be advised that if he files an amended complaint, it must be a complete pleading which must supercede the original and may not incorporate any facts from the original by reference.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) be **GRANTED for purposes of filing**, and it is further

**RECOMMENDED**, that the complaint be **DISMISSED** based on quasi-judicial immunity and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii) **WITHOUT PREJUDICE** to plaintiff filing an amended complaint, and it is

**RECOMMENDED**, that if the District Court adopts this recommendation, plaintiff be directed to file his amended complaint or ask for an extension of time to do so within **FORTY-FIVE (45) DAYS** from the date of the District Court's order adopting the recommendation, and it is

**RECOMMENDED**, that if plaintiff files an amended complaint within the appropriate time, the court return the proposed amended complaint to me for initial review, and it is

**RECOMMENDED**, that if the court adopts this recommendation, and plaintiff fails to file an amended complaint or ask for an extension of time to do so at the expiration of the forty-five (45) days, the complaint be dismissed with prejudice and the case closed, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1981416

---

**Footnotes**

1    Defendant Bell has since passed away, and his estate's representative has been substituted as a party. (Dkt. Nos. 52, 71). Another defendant was joined to 16-CV-291, and there have been various other proceedings in that case, but those details are not relevant to this action.

2    Although plaintiff states in this action that Magistrate Judge Stewart told plaintiff that the contract and defamation claims "needed to be refiled in Supreme Court," that is not exactly what Magistrate Judge Stewart said. His exact words were that "[l]iberally construed, plaintiff ***might*** be attempting to make state law defamation and intentional interference with a

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 39 of 97
Coon v. Merola, Not Reported in Fed. Supp. (2019)
2019 WL 1981416

contract claims. ***Again, however, Plaintiff's vague and conclusory allegations fail to plausibly state such claims.***" (Dkt. No. 13 in 16-CV-291 at 4) (emphasis added). The court merely notes this for the record. Magistrate Judge Stewart's dismissal and his language are not relevant to the findings herein.

3    Finally, the court must note that the United States Marshal would not be able to effect service of process on a "John or Jane Doe" defendant. In order for plaintiff to pursue his claims against John Doe defendants, he would ultimately be required to ascertain their identity. *LaPoint v. Vasiloff*, No. 5:15-CV-185, 2015 WL 1524437, at \*4 (N.D.N.Y. Apr. 2, 2015).

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

770 Fed.Appx. 587
This case was not selected for publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY
ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE
OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY
ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX
OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A
SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals, Second Circuit.

James DEFERIO, Plaintiff-Appellant,

v.

CITY OF SYRACUSE, Defendant-Appellee,

Joseph Sweeny, individually and in his official capacity as Captain for the City of Syracuse Police Department,
Jamey Locastro, individually and in his official capacity as Sergeant for the City of Syracuse Police Department,
Frank Fowler, in his official capacity as Chief of Police for the City of Syracuse Police Department, Defendants.

18-514 (L) *
|
18-516 (XAP)
|
May 8, 2019

**Synopsis**

**Background:** Protester brought § 1983 action against city and police department personnel, alleging violations of his First
Amendment right to demonstrate at annual gay pride parade and festival after he was barred from demonstrating on the public
sidewalk immediately adjacent to the festival's entrance, and instead was forced to move across the street. The United States
District Court for the Northern District of New York, Kahn, J., 306 F.Supp.3d 492, granted in part and denied in part parties'
motions for summary judgment. Protester appealed.

**[Holding:]** The Court of Appeals held that city was not liable on protester's § 1983 claim for municipal liability.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment.

West Headnotes (1)

[1]     **Civil Rights**    🔑    Criminal law enforcement;  prisons

Protester who was prohibited from protesting on public sidewalk immediately adjacent to gay pride festival entrance
failed to establish that deprivation of his First Amendment rights was caused by governmental custom, policy, or usage,
and thus city was not liable on protester's § 1983 claim for municipal liability, where no authoritative policymaker
endorsed police sergeant's interpretation of permit zone policy that festival permit barred protestor from expressing his
views by festival's entrance, festival permits did not give festival organizers proprietary control over public sidewalks,

and protestor failed to demonstrate that officers habitually or customarily invoked any policy to systematically violate constitutional liberties. U.S. Const. Amend. 1; 42 U.S.C.A. § 1983.

36 Cases that cite this headnote

**\*588**  Appeal from the United States District Court for the Northern District of New York (Kahn, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: NATHAN W. KELLUM, Center for Religious Expression, Memphis, Tennessee.

FOR DEFENDANT-APPELLEE: TODD M. LONG, Office of the Corporation Counsel, City of Syracuse, Syracuse, New York.

FOR AMICUS CURIAE INTERNATIONAL MUNICIPAL LAWYERS ASSOCIATION: Shannon T. O'Connor, Goldberg Segalla LLP, Syracuse, New York.

PRESENT: BARRINGTON D. PARKER, DENNY CHIN, SUSAN L. CARNEY, Circuit Judges.

<u>**SUMMARY ORDER**</u>

Plaintiff-appellant James Deferio appeals from a judgment, entered February 6, 2018, to the extent it dismissed his claims against defendant-appellee City of Syracuse (the "City"). Deferio asserted constitutional claims against the City and three Syracuse police officers for violating his First and Fourteenth Amendment rights by requiring him to move from one side of the street to the other when he was seeking to express his religious views (about Christianity) during gay pride celebrations in June 2014 and June 2015 (the "Pride Festivals") organized by CNY **\*589** Pride Inc. ("CNY Pride") and conducted pursuant to City permits.

Following the parties' cross-motions for summary judgment, on January 31, 2018, the district court granted the motions in part and denied them in part. The district court held as a matter of law that the two of the three police officers -- Sergeant James Locastro and Captain Joseph Sweeny -- violated Deferio's clearly established rights under the First Amendment by restricting his speech and awarded him nominal damages of $ 1.00 against them. The district court further held, however, that the City was entitled as a matter of law to dismissal of Deferio's municipal liability claims, concluding that Deferio had failed to present evidence that the City had adopted any unconstitutional policy that caused a violation of his First Amendment rights. [1] The district court also ruled that Deferio was not entitled to a permanent injunction.

On appeal, Deferio presents two challenges: (1) the district court erred in concluding that the City was not subject to municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); and (2) he was entitled to a permanent injunction prohibiting the City from restricting his religious expression on public sidewalks during future Pride Festivals. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

**I.** *Standard of Review*

We review a district court's decision on cross motions for summary judgment *de novo*, construing the evidence with respect to each motion in the light most favorable to the non-moving party. *Scholastic, Inc. v. Harris*, 259 F.3d 73, 81 (2d Cir. 2001); *see also Terwilliger v. Terwilliger*, 206 F.3d 240, 244 (2d Cir. 2000). "Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law."

*Novella v. Westchester Cty.*, 661 F.3d 128, 139 (2d Cir. 2011) (internal quotation marks omitted). Further, we review a district court's denial of a request for a permanent injunction for abuse of discretion. *All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 911 F.3d 104, 108 (2d Cir. 2018) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006)). [2]

## II. *Discussion*

### A. *Municipal Liability*

To establish municipal liability under 42 U.S.C. § 1983, a plaintiff must demonstrate that the deprivation of his constitutional rights was "caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. at 690-91, 98 S.Ct. 2018). The existence of a municipal policy that gives rise to *Monell* liability can be established **\*590** in four ways: (1) a formal policy promulgated by the municipality, *Turpin v. Mailet*, 619 F.2d 196, 199 (2d Cir. 1980); (2) actions directed by the government's "authorized decisionmakers" or "those who establish governmental policy," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware, *see Turpin*, 619 F.2d at 199; or (4) a "constitutional violation[ ] resulting from [policymakers'] failure to train municipal employees," *City of Canton v. Harris*, 489 U.S. 378, 380, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an "affirmative link," between the policy and the deprivation of his constitutional rights. *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985); *accord Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (holding that plaintiff must "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged").

Deferio argues that here the City "creat[ed], maintain[ed], and enforce[d] a permit zone policy that grants a private permittee [CNY Pride] of a popular public event censorial control over words uttered on open and accessible public sidewalks bounding the event." Appellant's Br. at 20. He contends that this policy -- which he claims gives "proprietary control" to a private entity over public city sidewalks, *id*. at 23 -- gives rise to municipal liability under *Monell* because it was (1) formalized in writing through a training bulletin promulgated by the Chief of Police to the Syracuse police department; (2) ratified by policy-making officials; and (3) part of a persistent and widespread pattern that was enforced as a custom. We are not persuaded.

First, while the Police Chief's 2016 training bulletin set forth an official policy, it simply did not set forth the policy that Deferio contends violated his constitutional rights. The bulletin explains that officers assigned to patrol a permitted event must carry a copy of the permit "in order to enforce the designated boundaries of the permitted event." App'x at 143. The bulletin does not set forth a policy that grants "proprietary control" to a private entity: it says nothing about granting permittees the right to exclude individuals based on their views. Instead, the bulletin merely provides that permits are required for assemblies and parades in streets, describes how permits can be acquired, and explains that permits are required to help officers "discharge their duties" in protecting the public and coordinating any "emergency services to the community." App'x at 143. To the extent the bulletin shows that some permits may cover sidewalks, that alone does not establish an unconstitutional policy because a municipality is not per se barred from restricting protected speech on sidewalks or other public fora. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989); *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 341 (2d Cir. 2010) (holding that government may apply content-neutral time, place, manner restrictions if they are narrowly tailored to serve significant government interests and alternative channels of communication are available). Therefore, the training bulletin was not, as Deferio contends, the cause of any First Amendment violation.

Second, Deferio failed to present any evidence from which a jury could find that any policy-making official ratified a policy that gave "proprietary control" over public sidewalks to a private entity. The two permits **\*591** did not give CNY Pride "proprietary control" over public sidewalks. The first permit provided for "no speakers @ sidewalks," without regard to content, and apparently was intended simply to bar amplification devices on the sidewalks. Supp. App'x at 1158. In any event, no authoritative policymaker endorsed Locastro's interpretation that the permit barred Deferio from expressing his views by the Pride Festival's entrance. The second permit did give CNY Pride "exclusive control" over certain areas, but only "for the limited

purpose of allowing exclusive use of sound amplification and access to the festival." *Id.* at 382. Moreover, the district court noted that "Captain Sweeny did not merely enforce the words of the permit," but he went beyond the terms of the permit by imposing even greater restrictions on Deferio's speech. App'x at 203.

Third, Deferio has not identified a persistent or widespread practice that would rise to the level of a custom for purposes of *Monell* liability. Although a policy need not be formalized or unconstitutional on its face to meet the *Monell* standard of municipal liability, Deferio fails to demonstrate that officers habitually or customarily invoked any policy to systematically violate constitutional liberties. *See Pembaur, 475 U.S. at 480-81, 106 S.Ct. 1292; Jones, 691 F.3d at 81; Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007).* The officers' invocation of permits on two occasions to restrict Deferio's First Amendment rights do not together constitute a pattern or custom which is "so manifest as to imply the constructive acquiescence of senior policy-making officials." *Sorlucco v. N.Y.C. Police Dep't, 971 F.2d 864, 871 (2d Cir. 1992)* (finding that survey conducted by appellant which revealed four allegedly discriminatory terminations of female employees, and other allegedly discriminatory treatment, cannot alone have constituted a custom); *Turpin, 619 F.2d at 202* (holding that policy cannot "ordinarily be inferred from a single incident of illegality," and even multiple incidents, without more, do not create custom). Nor did Deferio allege or otherwise argue that the officers' conduct was directed at anyone else, which further undercuts Deferio's contention that Syracuse had a custom or practice of infringing on constitutional rights. *See, e.g., St. Louis v. Praprotnik, 485 U.S. 112, 128, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)* (finding plaintiff's failure to allege relevant conduct "was ever directed against anyone other than himself" supported conclusion City could not be held liable under *Monell*).

Because Deferio failed to demonstrate the existence of a formalized City policy, a policy ratified by the City's decisionmakers, or a custom that caused his constitutional injury, the district court properly concluded the City is not subject to *Monell* liability.

**B.** *Permanent Injunction*

Deferio argues that he was entitled to permanent injunctive relief prohibiting the City from restraining his future religious expression during Pride Festivals, but that argument fails. To obtain a permanent injunction, a plaintiff must "succeed on the merits and show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." *Roach v. Morse, 440 F.3d 53, 56 (2d Cir. 2006)* (citation and internal quotations marks omitted). Here, the district court did not err in denying Deferio's request for permanent injunctive relief because Deferio did not succeed on the merits, as he failed to show that the City violated his First Amendment rights regarding his religious expression. Thus, we need not decide whether there is an adequate remedy at law or a chance of irreparable harm absent relief,    **\*592**   and Deferio is not entitled to permanent injunctive relief.

* * *

We have considered Deferio's remaining arguments and find them to be without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

**All Citations**

770 Fed.Appx. 587

---

**Footnotes**

\*    The Lead appeal, 18-514, was dismissed on June 18, 2018.

1    The claims against the third officer were dismissed. Sweeny and Locastro filed a notice of appeal, but their appeal was dismissed after they failed to file an appellate brief.

2    Deferio argues that this Court reviews a district court's decision to deny injunctive relief *de novo* when it pertains to a First Amendment claim. While this Court does review a district court's legal conclusions *de novo* when reviewing an order granting a permanent injunction regarding First Amendment violations, we review "its ultimate decision" for abuse of discretion. *Expressions Hair Design v. Schneiderman*, 808 F.3d 118, 127 (2d Cir. 2015) *vacated on other grounds by* —— U.S. ——, 137 S. Ct. 1144, 197 L.Ed.2d 442 (2017); *see also Open Soc'y*, 911 F.3d at 108; *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012).

---

**End of Document**                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.



KeyCite Yellow Flag

Declined to Extend by   Broadwater v. County of Onondaga,   N.D.N.Y.,   March 11, 2024

2020 WL 1904088
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael JOYNER, Plaintiff,

v.

COUNTY OF CAYUGA; Cayuga County Sheriff's Department; City of Auburn; Shawn I. Butler, Chief of
Auburn Police Department, as an Individual and in his official capacity; Cayuga County District Attorney's
Office; Jon E. Budelmann, as an Individual and in his capacity as District Attorney for Cayuga County;
and Anthony Spinelli, as an Individual and in his capacity as an Auburn City Police Officer, Defendants.

5:20-CV-60 (MAD/TWD)
|
Signed 04/17/2020

**Attorneys and Law Firms**

OF COUNSEL: JARROD W. SMITH, ESQ., OFFICE OF JARROD W. SMITH, 11 South Main Street, P.O. Box 173, Jordan,
New York 13080, Attorneys for Plaintiff.

OF COUNSEL: JEFFREY R. PARRY, ESQ., OFFICE OF JEFFREY R. PARRY, 7030 East Genesee Street, Fayetteville, New
York 13066, Attorneys for Plaintiff.

OF COUNSEL: FRANK W. MILLER, ESQ., GIANCARLO FACCIPONTE, ESQ., OFFICE OF FRANK W. MILLER, 6575
Kirkville Road, East Syracuse, New York 13057, Attorneys for Defendants.

## MEMORANDUM-DECISION AND ORDER

Mae A. D'Agostino, U.S. District Judge:

## I. INTRODUCTION

 *1  On or about February 18, 2020, Plaintiff filed a complaint against Defendants City of Auburn, Shawn L. Butler, County of
Cayuga, Cayuga County District Attorney's Office, Jon E. Budelmann, and Anthony Spinelli, asserting eight claims pursuant
to 42 U.S.C. §§ 1983 and 1988, and state law. See Dkt. No. 5. Specifically, Plaintiff's complaint alleges the following causes of
action: (1) false arrest under the Fourth and Fourteenth Amendments; (2) malicious prosecution under the Fourth and Fourteenth
Amendments; (3) negligent failure to train or supervise; (4) state law false arrest; (5) state law false imprisonment; (6) intentional
and negligent infliction of emotional distress under New York State law; (7) negligence; and (8) deliberate indifference to
medical care under the Eighth Amendment. See Dkt. No. 5 at ¶¶ 40-114. Currently before the Court is Defendants' motion to
dismiss the complaint in its entirety. See Dkt. No. 9.

## II. BACKGROUND

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 46 of 97

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)

2020 WL 1904088

According to the complaint, on August 10, 2018, Plaintiff was the passenger in a vehicle that was driven by 140 Wall Street, allegedly in violation of an order of protection for Linda Fitzsimmons and Lee Joyner, who both reside at that address. *See* Dkt. No. 5 at ¶¶ 24-25. Plaintiff resides at 145 Wall Street, several houses down from 140 Wall Street, on the opposite side of the street. *See id.* at ¶ 25. Plaintiff was not the driver of the vehicle and had no control over how the driver was delivering him to his home. *See id.*

On August 13, 2018, Plaintiff was arraigned on two felony complaints charging him with two counts of Criminal Contempt in the First Degree based on the alleged violation of the order of protection. *See id.* at ¶ 22. At the conclusion of his arraignment, Plaintiff was remanded to the Cayuga County Jail. *See id.* Plaintiff claims that "Defendant police officer lacked the requisite requirement of having probable cause to arrest the Plaintiff; and did falsely arrest and imprison the Plaintiff." *Id.* at ¶ 23.

On October 4, 2018, Defendant Jon E. Budelmann, in his capacity as Cayuga County District Attorney, presented Plaintiff's charges to a grand jury, which "No Billed" the case. *See id.* at ¶ 26. At this point, Plaintiff was released from custody. *See id.*

During the fifty-three days during which Plaintiff "was being illegally imprisoned," he slipped and fell at the Cayuga County Jail. *See id.* at ¶ 31. According to Plaintiff, on August 31, 2018, a water pipe burst at the Cayuga County Jail near Plaintiff's cell while he was already locked in for the night and sleeping. *See id.* at ¶ 32. Plaintiff was woken by a bursting water pipe that was turned off by a Cayuga County Correctional officer. *See id.* at ¶ 33. "The first burst of the water pipe [occurred] when the Cayuga County Correctional officer shut the water off" between "12:00 midnight and 2:00 a.m." *Id.* at ¶ 34. "Plaintiff was woken by a bursting water pipe; and observed and heard that the correctional officer was going to turn off the water and clean up the water spill. At that time, there was no water in Plaintiff's cell." *Id.*

 **\*2** Unbeknownst to Plaintiff, water from the burst pipe went underneath his locked cell door "and flooded his room while he was in bed and asleep." *Id.* at ¶ 35. "At around 6:30 am-7:00 am, Plaintiff got out of his bed to use the toilet in his cell. Plaintiff slipped and fell on the wet floor of his cell. The water on the floor was all near the toilet in his cell. There was a huge puddle of water between Plaintiff's bunk and the toilet in his cell." *Id.* at ¶ 36. Plaintiff claims that he slipped and fell, hitting his head and neck on his bunk, and his lower back on the floor, causing severe injuries. *See id.* at ¶ 37. At the time that Plaintiff had fallen and injured himself, a second water leak had occurred in the pod in which he was being held. *See id.* at ¶ 38. Plaintiff claims that, as a result of the fall, he suffered a herniated disc in his neck and a lower lumbar strain. *See id.* at ¶ 39. Plaintiff also claims that he suffers from numbing of his toes and finger tips. *See id.*

## III. DISCUSSION

### A. Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.*

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 47 of 97

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)

2020 WL 1904088

at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " *Id.* (quoting *[Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955*). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

**B. Documents Considered in Deciding Motion to Dismiss**

In their reply to the motion to dismiss, Defendants submitted several documents in further support of their motion. *See* Dkt. No. 16-1. These documents include (1) the August 10, 2018 criminal complaint charging Plaintiff with Criminal Contempt in the First Degree, (2) the order of protection that Plaintiff allegedly violated, (3) the affidavit of Linda Fitzsimmons that formed the basis for Defendant's underlying criminal charge, and (4) the incident narrative report of Defendant Spinelli dated August 15, 2018 relating to the criminal complaint filed against Plaintiff. *See id.* at 1-6.

**\*3** In deciding a motion to dismiss for failure to state a claim, the court considers the complaint, materials incorporated into the complaint by reference, materials integral to the complaint, and facts that are capable of judicial notice. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

In the present matter, the Court finds that these documents are not properly considered at the motion to dismiss stage. The Court acknowledges that there are cases in which courts have considered similar police records at the pleading stage. *See Betts v. Shearman*, No. 12-cv-3195, 2013 WL 311124, \*3 (S.D.N.Y. Jan. 24, 2013) (considering incident report and accusatory instrument that "provide[d] crucial details" about the plaintiff's prosecution), aff'd *on qualified immunity grounds*, 751 F.3d 78 (2d Cir. 2014); *cf. Obilo v. City Univ. of City of N.Y.*, No. 01-cv-5118, 2003 WL 1809471, \*4 (E.D.N.Y. Apr. 7, 2003) (considering incident report and police complaint that the plaintiff had conceded were "implicitly" incorporated into his conspiracy allegations). The better view, however, adopted by a majority of courts in our Circuit, is that these kinds of police records are not "integral" to a false arrest complaint. *See Bejaoui v. City of New York*, No. 13-CV-5667, 2015 WL 1529633, \*4–5 (E.D.N.Y. Mar. 31, 2015) (noting disagreement and declining to consider extrinsic police reports); *Alvarez v. Cty. of Orange*, 95 F. Supp. 3d 385, 394-95 (S.D.N.Y. 2015) (collecting cases). A document is not "integral" simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff relied on the document in preparing his complaint. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156-57 (2d Cir. 2006); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Most typically, "the incorporated document is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason ... was not attached to the complaint." *Global Network Commc'ns*, 458 F.3d at 157. "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

Here, there is "no indication in the record that plaintiff relied on these documents in drafting the complaint." *Allyn v. Rockland Cty.*, No. 12-cv-5022, 2013 WL 4038602, \*4 (S.D.N.Y. July 30, 2013), *affirmed*, 646 Fed. Appx. 60 (2d Cir. 2016). To the contrary, Plaintiff relies on his own perceptions and recollections, while only making passing reference to the criminal complaint and order of protection. Furthermore, it is not beyond dispute that the police report and narrative are a truthful description of the police officer's basis to arrest Plaintiff. To accept the truth of the documents offered by Defendants at this stage would amount to a premature determination that the arresting officers and the alleged victim are more credible than Plaintiff. To make such a determination at this stage would not be appropriate, and therefore the Court will not consider the facts adduced in these documents. The Court will, however, take judicial notice of the existence of the criminal complaint, supporting affidavit, and order of protection. *See Williams v. City of New York*, No. 14-cv-5123, 2015 WL 4461716, \*1 (S.D.N.Y. July 21, 2015) (noting that the court "may take judicial notice of the procedural history of plaintiff's criminal case, but not of the truth of the arresting officers' version of events"); *see also Ribaudo v. Desimone*, No. 3:18-cv-1190, 2019 WL 1906269, \*4 (M.D. Pa. Apr. 5, 2019) (holding that "even if judicial notice is taken of these documents, 'a court may take notice of such documents only to establish their existence and legal effect, or to determine what statements they contained ... not for the truth of the matters asserted' ") (quoting *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 223 (N.D.N.Y. 2014)) (other citation omitted).

Case 5:25-cv-00967-ECC-MJK   Document 8   Filed 08/25/25   Page 48 of 97

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)

2020 WL 1904088

## C. *Monell* and Supervisory Liability

**\*4** "Under the standards of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), a municipality can be held liable under 42 U.S.C. § 1983] if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). Liability under Section 1983 "is imposed on the municipality [only] when it has promulgated a custom or policy that violates federal law and, pursuant to that policy, a municipal actor has tortiously injured the plaintiff." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Jones*, 691 F.3d at 80. Thus, for a municipality to be held liable under Section 1983 for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks omitted).

"Supervisory liability is a concept distinct from municipal liability, and is 'imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates.' " *Kucera v. Tkac*, No. 5:12-cv-264, 2013 WL 1414441, \*4 (D. Vt. Apr. 8, 2013) (quoting *Odom v. Matteo*, 772 F. Supp. 2d 377, 403 (D. Conn. 2011)). Prior to the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Second Circuit required a plaintiff to allege one of the following categories for supervisory liability under § 1983:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [persons] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

In order to succeed on his *Monell* and supervisory liability claims, a plaintiff must first "identify obvious and severe deficiencies" in the policies of the municipal and supervisory defendants and "show a causal relationship" between those deficiencies and his alleged deprivations. *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007). However, to the extent that a plaintiff premises his claims on a failure to train or supervise, such failure "may constitute an official policy or custom [only] if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." *Wray*, 490 F.3d at 195. Similarly, a supervisory defendant is liable only for the creation or continuation of policy that leads to a pattern of unconstitutional conduct or if he demonstrated deliberate indifference in failing to act on information that a pattern of unconstitutional conduct was occurring. *See Colon*, 58 F.3d at 873.

"To establish deliberate indifference a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." *Jones*, 691 F.3d at 81.

> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train [or supervise because] [w]ithout notice

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 49 of 97

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)

2020 WL 1904088

that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

**\*5** *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* at 61 (citation omitted). [1]

### D. Cayuga County District Attorney's Office and Auburn Police Department

Plaintiff names the Cayuga County District Attorney's Office as a named Defendant in this case. The caselaw is clear, however, that a district attorney's office is not an entity subject to suit under 42 U.S.C. § 1983. *See Michels v. Greenwood Lake Police Dep't*, 387 F. Supp. 2d 361, 367 (S.D.N.Y. 2005) (citing cases); *Griffith v. Sadri*, No. 07-CV-4824, 2009 WL 2524961, \*8 (E.D.N.Y. Aug. 14, 2009). Similarly, Plaintiff has listed the Auburn Police Department as an entity responsible for several of the alleged constitutional violations. *See* Dkt. No. 5 at ¶¶ 51-82. As with the District Attorney's Office, the Auburn Police Department (which is not listed as a Defendant in the caption of the complaint), the Court finds that it must be dismissed because a police department is not an independent, suable entity separate from the municipality in which the police department is located. *See Jenkins v. City of New York*, 478 F.3d 76, 93 (2d Cir. 2007) (citation omitted); *Krug v. City of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (citing cases); *Koulkina v. City of New York*, 559 F. Supp. 2d 300, 315 (S.D.N.Y. 2008) (citing cases).

Accordingly, the Court dismisses Plaintiff's claims against the Cayuga County District Attorney's Office and the Auburn Police Department.

### E. False Arrest

In their motion to dismiss, Defendants contend that, based on Plaintiff's own allegations, probable cause was present to believe that he committed the offense for which he was arrested. *See* Dkt. No. 9-1 at 14-16. Defendants claim that Plaintiff "admits that he was charged with violating duly issued orders of protection issued for Linda Fitzsimmons and Lee Joyner, who reside at 140 Wall Street in the City of Auburn. *See id.* at 15 (citing Dkt. No. 5 at ¶ 24). Defendants further claim that Plaintiff "admits he was 'driven by' 140 Wall Street on August 10, 2018." *Id.* (citing Dkt. No. 5 at ¶ 25). Defendants contend that the fact that Plaintiff claims that he was not driving the vehicle "has no bearing on whether the order of protection was reasonably deemed violated by police authorities, and Plaintiff is careful not to deny that he was in fact at 140 Wall Street on the date in question, which is *a per se* violation of the order." *Id.* In response, Plaintiff argues that since he "was arrested for traveling on a public road in route to his own home and in violation of no Order, law or ordinance and, as it cannot be denied that he was 'no billed' by the Grand Jury, it would seem plausible to this writer that any court would agree to the plausibility of Plaintiff's claims." Dkt. No. 10 at 16.

**\*6** In assessing Fourth Amendment claims of false arrest brought under Section 1983, courts generally look to the law of the state in which the arrest is alleged to have occurred. *See Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007) (citation omitted). To prevail on a false arrest claim under New York law, a plaintiff has to prove the following: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (alteration and internal quotation marks omitted) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975)); *see also Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (outlining the elements of false arrest claims). "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest.' " *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *see also Ackerson*, 702 F.3d at 19-20 (citing *Weyant*, 101 F.3d at 852). "A police officer has probable cause for an arrest when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime[.]' " *Swartz v. Insogna*,

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)

2020 WL 1904088

704 F.3d 105, 111 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (same). Such knowledge or information can be based on information provided by an eyewitness, unless the circumstances would raise a doubt as to the eyewitness' veracity. *See Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (citing *Singer*, 63 F.3d at 119). The question is whether the facts known to the arresting officer, at the time of the arrest, objectively provided probable cause to support the arrest. *See Gonzalez*, 728 F.3d at 155.

In the present matter, the Court finds that Defendants' motion to dismiss Plaintiff's false arrest claim must be denied as to Defendant Spinelli. The complaint sufficiently alleges, albeit barely, that Defendant Spinelli lacked probable cause to arrest Plaintiff for the crime of Criminal in the First Degree. Indeed, it is unclear from the complaint whether Plaintiff's conduct was, in fact, in violation of the order of protection. [2]

However, to the extent that Plaintiff attempts to assert a false arrest claim against any other named Defendant, the claim must be dismissed. Plaintiff's complaint is devoid of any facts that would permit the Court to find that any other Defendant was personally involved in the alleged false arrest. Aside from conclusory allegations merely reciting the underlying law, Plaintiff fails to include any facts that plausibly allege the personal involvement of any municipal or supervisory Defendant. For example, Plaintiff alleges that "Defendant Butler, Defendant City and Defendant County have created and tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and of the public." Dkt. No. 78 at ¶ 78. While this allegation accurately reflects what is required to hold municipal and supervisory officials personally liable for the acts of other, the simple recitation of the relevant law is insufficient to withstand a motion to dismiss. Rather, Plaintiff was required to allege facts, specific to his case, demonstrating how these municipal and supervisory Defendants were personally involved in the alleged unconstitutional conduct, which he has failed to do. Simply put, the legal conclusions in Plaintiff's complaint, devoid of any supporting facts, fail to plausibly allege supervisory or municipal liability as to this claim.

**\*7** Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's false arrest claim as to Defendant Spinelli.

## F. Malicious Prosecution

In their motion to dismiss, Defendants argue that Plaintiff's malicious prosecution must be dismissed because the complaint fails to set forth facts plausibly alleging that the prosecution was initiated without probable cause or that any named Defendant acted with the requisite malice. *See* Dkt. No. 9-1 at 16-17. In response, Plaintiff states as follows: "As the plaintiff was arrested for traveling on a public road in route to his own home and in violation of no Order, law or ordinance, as it cannot be denied that he was 'no billed' by the Grand Jury and as he spent 53 days in jail for no reason whatsoever, it would seem plausible to this writer that any court would agree to the plausibility of Plaintiff's claims." Dkt. No. 10 at 17 (citing *Swierkiezicz v. Sorema*, 534 U.S. 506 (2002)). Plaintiff brings his malicious prosecution claim against the City of Auburn, Auburn Police Department, Cayuga County, and Defendant Butler. *See* Dkt. No. 5 at ¶¶ 51-82. While Plaintiff may be confident in the viability of his claim, this Court finds that Plaintiff has failed to plausibly allege facts supporting a claim for malicious prosecution. [3]

To prevail on a Section 1983 claim for malicious prosecution, "a plaintiff must show a violation of his rights under the Fourth Amendment ... and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citations omitted). Under New York law, a plaintiff must plausibly allege four elements to support a malicious prosecution claim: " '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.' " *Id.* (quotation and other citations omitted); *see also Dufort v. City of New York*, 874 F.3d 338, 350 (2d Cir. 2017) (quotation omitted). Initiating a criminal proceeding against a person without probable cause, coupled with a deprivation of liberty, is a Fourth Amendment violation. *See Murphy v. Lynn*, 118 F.3d 938, 944-45 (2d Cir. 1997) (citation omitted).

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 51 of 97

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)

2020 WL 1904088

**\*8**  The Second Circuit has held that although "police officers do not generally "commence or continue" criminal proceedings against defendants, a claim for malicious prosecution can still be maintained against a police officer if the officer is found to 'play[ ] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.' " *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (quotations omitted). "This element might be satisfied by, for example, showing that an officer generated witness statements or was regularly in touch with the prosecutor regarding the case." *Id.* (citation omitted).

Recently, the New York Court of Appeals acknowledged that it has " 'never elaborated on how a plaintiff in a malicious prosecution case demonstrates that the defendant commenced or continued the underlying criminal proceeding.' " *Torres v. Jones*, 26 N.Y.3d 742, 760-61 (2016) (quotation omitted). "But, by suggesting that a defendant other than a public prosecutor may be liable for supplying false information to the prosecutor in substantial furtherance of a criminal action against the plaintiff, we have implicitly recognized that such conduct may, depending on the circumstances, constitute the commencement or continuation of the prosecution." *Id.* at 761 (citations omitted); *see also Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983) (noting that proof establishing "that the police witnesses" have falsified evidence may create liability for malicious prosecution); *Hopkinson v. Lehigh Val. R.R. Co.*, 249 N.Y. 296, 300-01 (1928) (noting that the falsification of evidence and presentation of that evidence to the prosecutor can constitute commencement of a prosecution).

### 1. Initiation of Criminal Prosecution

In the present matter, the Court finds that Plaintiff's malicious prosecution claim must be dismissed. Initially, the Court finds that Plaintiff has failed to adequately allege that any named Defendant initiated that the prosecution against him. While Defendant Spinelli filed the criminal complaint against him, nothing in the complaint suggests his participation in Plaintiff's prosecution beyond that. Nearly all cases in which law enforcement officers were found to have initiated or continued a prosecution for purposes of a malicious prosecution claim involve officers who provided knowingly false and/or fabricated evidence to unwitting prosecutors. *See, e.g.*, *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997); *Ramos v. City of New York*, 285 A.D.2d 284, 299 (1st Dep't 2001). There is a rebuttable presumption that criminal proceedings are initiated by prosecutors, not arresting officers. *See Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 228 (S.D.N.Y. 2006) (citation omitted). "[I]n the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment," a claim of malicious prosecution against the officer must fail. *See Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999) (citations omitted).

Plaintiff's complaint is devoid of any allegations that Defendant Spinelli engaged in any of the conduct identified above that would permit the Court to find that Plaintiff plausibly alleged that any party other than the District Attorney initiated the prosecution against him. As such, the Court finds that Plaintiff's malicious prosecution claim is subject to dismissal.

### 2. Malice

Plaintiff's complaint is also devoid of any facts supporting an inference that the prosecution was instituted with malice. As Defendants correctly note, Plaintiff misconstrues the standard on a motion to dismiss. While Plaintiff is not required to "prove" that Defendants acted in a malicious manner to sustain his claim, he is certainly required to plead enough facts that would make such a conclusion plausible. Plaintiff's complaint fails to plead any facts that would support the inference that any named Defendant (or their employees) acted with the requisite malice to support a malicious prosecution claim. Rather, the complaint simply alleges that he was subjected to normal processes of law. The number of days that Plaintiff spent in jail is irrelevant to this consideration, as is the fact that he was "no billed" by the Grand Jury. Plaintiff does not allege that he had previous interactions with any of the named Defendants, or that his interactions with them during his arrest and subsequent prosecution would indicate a malicious intent. Finally, as to the supervisory and municipal Defendants, Plaintiff has failed to put forth any facts in support of this claim. Rather, the complaint contains nothing but legal conclusions without providing any basis for the Court to conclude that Plaintiff has plausibly alleged a malicious prosecution claim against these Defendants.

**\*9**  Accordingly, the Court finds that Plaintiff's malicious prosecution claim is subject to dismissal on this alternative ground.

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 52 of 97

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)

2020 WL 1904088

### 3. Prosecutorial Immunity

Prosecutors sued under 42 U.S.C. § 1983 enjoy absolute immunity " 'from claims for damages arising out of prosecutorial duties that are "intimately associated with the judicial phase of the criminal process." ' " *Okongwu v. County of Erie*, No. 14CV832, 2017 WL 2686454, *3 (W.D.N.Y. June 22, 2017) (quoting *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976))). The prosecutor enjoys this absolute immunity because he or she is acting in a quasi-judicial capacity. *See Okongwu v. County of Erie*, No. 14CV832, 2018 WL 1383233, *3 (W.D.N.Y. Mar. 19, 2018). The function performed by the prosecutor defines the scope of this immunity. *See Imbler*, 424 U.S. at 430; *Warney*, 587 F.3d at 121. Acts of advocacy before a court, or preparation to advocate, are absolutely immune, *Imbler*, 424 U.S. at 430-31; *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993), while administrative duties or investigatory functions are not so immune, *Imbler*, 424 U.S. at 431 n.33; *Buckley*, 509 U.S. at 273; *Warney*, 587 F.3d at 121. "This protection encompasses 'all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation.' " *Peters*, 848 F. Supp. 2d at 385 (quoting *Barrett v. United States*, 798 F.2d 565, 571-72 (2d Cir. 1986)). As noted by the Second Circuit, "thus, to establish [absolute] immunity, the 'ultimate question' is 'whether the prosecutors have carried their burden of establishing that they were functioning as "advocates" when they engaged in the challenged conduct.' " *Warney*, 587 F.3d at 121 (quoting *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996)).

Absolute immunity extends from the initiation of a prosecution and presenting a case at trial, *Boria v. Hicks*, No. 5:17-CV-00486, 2017 WL 2983304, *4 (N.D.N.Y. June 14, 2017), through the decision to end it, *see Okongwu*, 2017 WL 2686454, at *4, as well as post-conviction defense of proceedings and the decision whether to vacate a conviction, *Warney*, 587 F.3d at 123; *Peters*, 848 F. Supp. 2d at 387. Absolute immunity applies in the preparation for the initiation of judicial proceedings, but not to the investigative or administrative duties of a prosecutor. *See Warney*, 587 F.3d at 122. In *Peters*, the court listed activities that are investigative or administrative that do not deserve absolute immunity, such as orchestrating a sting operation, authorizing wiretaps, coercing confidential informant to consent to a wire, releasing information to the media, assisting in the execution of a warrant, or supervising and interacting with law enforcement agents to acquire evidence. *See Peters*, 848 F. Supp. 2d at 386 (citing cases).

In the present matter, the Court finds that Defendant Budelmann, as Cayuga County District Attorney is entitled to absolute prosecutorial immunity. In the complaint, Plaintiff alleges that "[o]n October 4, 2018, Defendant district attorney presented Plaintiff's criminal charges to the Grand Jury of Cayuga County where the grand jury 'No Billed' the case; and Plaintiff was released from his illegal confinement at the Cayuga County Jail." Dkt. No. 5 at ¶¶ 26, 91. Further, Plaintiff claims that "Defendant district attorney knew at the time of Plaintiff's case being presented to the Grand Jury of Cayuga County that he would not prevail due to the lack of probable cause." *Id.* at ¶ 29. These allegations make clear that Defendant Budelmann has been sued relating to his role in presenting the case to the grand jury; conduct for which he is entitled to absolute prosecutorial immunity. *See Hill v. City of New York*, 45 F.3d 653, 661-62 (2d Cir. 1995) (holding that "that prosecutors are immune from § 1983 liability for their conduct before a grand jury") (citations omitted); *Bernard v. County of Suffolk*, 356 F.3d 495, 505 (2d Cir. 2004) (citations omitted). Accordingly, Plaintiff's claim of malicious prosecution against Defendant Budelmann is subject to dismissal on this alternative ground.

**\*10** Finally, to the extent that Plaintiff seeks to impute the conduct of Defendant Budelmann to Cayuga County, the claim must necessarily be dismissed. The Second Circuit Court of Appeals has unequivocally held that "prosecutorial acts may not fairly be said to represent official policy of the County," because "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." *Baez v. Hennessy*, 853 F.2d 73 (2d Cir. 1988) (internal quotation omitted); *see also Doe v. Smith*, 704 F. Supp. 1177, 1184 (S.D.N.Y. 1988). Since Defendant Budelmann was acting on behalf of the State of New York, and not Cayuga County, any alleged misconduct on Defendant Budelmann's part cannot be imputed to Cayuga County.

### G. Negligent/Intentional Infliction of Emotional Distress

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 53 of 97

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)

2020 WL 1904088

In his sixth cause of action, Plaintiff alleges claims of negligent and intentional infliction of emotional distress against Defendants Butler, Spinelli, and Budelmann. *See* Dkt. No. 5 at ¶¶ 96-98. Defendants contend these claims fail as a matter of law. *See* Dkt. No. 9-1 at 19-20.

As to the claim of negligent infliction of emotional distress, it is well settled that a " 'plaintiff seeking damages for an injury resulting from a wrongful arrest and detention may not recover under broad general principles of negligence ... but must proceed by way of the traditional remedies of false arrest and imprisonment.' " *Greenaway v. Cty. of Nassau*, 97 F. Supp. 3d 225, 239 (E.D.N.Y. 2015) (quoting *Secard v. Dep't of Soc. Servs. of Cnty. of Nassau*, 204 A.D.2d 445, 612 N.Y.S. 2d 167, 168 (2d Dep't 1994)). This is precisely what Plaintiff is attempting to do here. Tacking on a claim for negligent infliction of emotional distress without any other facts or assertions is insufficient under the relevant law. Moreover, even if this claim could be considered independent of Plaintiff's false arrest claim, it is still subject to dismissal because Plaintiff has not alleged any facts demonstrating that Defendants breached a duty owed to Plaintiff. As such, the Court grants Defendants' motion to dismiss as to Plaintiff's claim of negligent infliction of emotional distress.

As to the intentional infliction of emotional distress claim, it too must be dismissed. "Intentional infliction of emotional distress has four elements: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.' " *Greenaway*, 97 F. Supp. 3d at 239-40 (quoting *Howell v. N.Y. Post Co., Inc.*, 81 N.Y.2d 115, 596 N.Y.S. 2d 350, 612 N.E. 2d 699, 702 (1993)). "The 'extreme and outrageous conduct' must 'go beyond all possible bounds of decency' and be 'atrocious, and utterly intolerable in a civilized community.' " *Id.* (quotation and other citation omitted).

Here, Plaintiff claims that Defendants Budelmann, Spinelli, and Butler engaged in "extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to Plaintiff." Dkt. No. 5 at ¶ 97. Notably absent from the complaint is any explanation what this "extreme and outrageous conduct" was. " 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 302 (1983) (quotation omitted). The threadbare facts alleged by Plaintiff, which include the fact that he was arrested and eventually released after the grand jury refused to indict, fall far short of this strict standard.

**\*11** Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's claims for negligent and intentional infliction of emotional distress.

## H. Negligence

In his seventh cause of action, Plaintiff asserts a claim for negligence. *See* Dkt. No. 5 at ¶¶ 100-04. In this claim, Plaintiff argues that his arrest, Defendants' failure to "follow the criminal law of the State of New York," and Plaintiff's fifty-three days of incarceration, were the product of Defendants' negligence. *See id.*

"To prevail on a claim for negligence under New York law, a plaintiff must establish '(1) the existence of a duty on the defendant's part as to the plaintiff; (2) a breach of that duty; and (3) resultant injury to the plaintiff.' " *Frederique v. County of Nassau*, 168 F. Supp. 3d 455, 485 (E.D.N.Y. 2016) (quotation omitted). "However, '[u]nder New York law, harm predicated on an intentional act may not give rise to a claim of negligence.' " *Id.* (quotation and other citation omitted). Moreover, it is well settled that, "[u]nder New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citing *Boose v. City of Rochester*, 71 A.D.2d 59, 421 N.Y.S.2d 740, 743 (4th Dept. 1979)) (other citation omitted).

In the present matter, the Court finds that Plaintiff's negligence claim must be dismissed as it is simply redundant of Plaintiff's claims of false arrest, false imprisonment, and malicious prosecution. Accordingly, the Court grants Defendants' motion to dismiss as to this claim.

## I. Deliberate Indifference to Serious Medical Needs

In his eighth cause of action, Plaintiff claims that "Defendant Medical Staff and Defendant Cayuga County Sheriff's Department" were deliberately indifferent to his medical care and treatment after he was injured when a water pipe broke outside his cell on August 31, 2018. *See* Dkt. No. 5 at ¶¶ 105-14.

A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citations omitted). A pretrial detainee's claims are evaluated under the Due Process Clause because, " '[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner — neither cruelly and unusually nor otherwise.' " *Id.* (quotations omitted).

"A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29 (citation omitted). "This means that a pretrial detainee must satisfy two prongs to prove a claim, an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong' — perhaps better classified as a *'mens rea* prong' or 'mental element prong' — showing that the officer acted with at least deliberate indifference to the challenged conditions." *Id.* "The reason that the term 'subjective prong' might be a misleading description is that, as discussed below, the Supreme Court has instructed that 'deliberate indifference' roughly means 'recklessness,' but 'recklessness' can be defined subjectively (what a person actually knew, and disregarded), or objectively (what a reasonable person knew, or should have known)." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 836-37, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).

**\*12** Under both the Eighth and Fourteenth Amendments, to establish an objective deprivation, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health," which includes the risk of serious damage to "physical and mental soundness." *Id.* at 30 (citations omitted). "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.' " *Id.* (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981))). For example, the Second Circuit has " 'held that prisoners may not be deprived of their basic human needs — *e.g.*, food, clothing, shelter, medical care, and reasonable safety — and they may not be exposed to conditions that pose an unreasonable risk of serious damage to [their] future health.' " *Id.* (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)).

" '[C]onditions of confinement may be aggregated to rise to the level of a constitutional violation, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.' " *Darnell*, 849 F.3d at 30 (quotations omitted). "Unsanitary conditions, especially when coupled with other mutually enforcing conditions, such as poor ventilation and lack of hygienic items (in particular, toilet paper), can rise to the level of an objective deprivation." *Id.* (citations omitted).

The second element of a conditions of confinement claim brought under the Due Process Clause of the Fourteenth Amendment is the defendant's "deliberate indifference" to any objectively serious condition of confinement. *See Darnell*, 849 F.3d at 32. Courts have traditionally referred to this second element as the "subjective prong." "But 'deliberate indifference,' which is roughly synonymous with 'recklessness,' can be defined either 'subjectively' in a criminal sense, or 'objectively' in a civil sense." *Id.* As such, the "subjective prong" might better be described as the "*mens rea* prong" or "mental element prong." *Id.*

Under the second prong of the deliberate indifference analysis, the Court must consider whether the defendants "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though [they] knew, or should have known, that the condition posed an excessive risk to

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 55 of 97

Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)

2020 WL 1904088

health or safety." *Darnell*, 849 F.3d at 35. Under this standard, the plaintiff "must prove that [the defendants] acted intentionally or recklessly, and not merely negligently.' " *Id.* at 36.

In the present matter, the Court finds that Plaintiff has failed to plausibly allege a claim of deliberate indifference under the Fourteenth Amendment. Initially, the Court notes that the "medical staff" at the Cayuga County Jail were not named as defendants in this action. Rule 10(a) requires a plaintiff to "name all the parties" in the Complaint. *See* Fed. R. Civ. P. 10(a). Although the naming of pseudonymous defendants is permissible where a plaintiff requires discovery to learn the true identities of the defendants, the plaintiff subsequently must amend the complaint to reflect the discovered identities and effect service on the named parties within the 120-day time period set forth in Rule 4(m). *See Petty v. Cty. of Franklin*, 478 F.3d 341, 345–46 (6th Cir. 2007).

Here, Plaintiff has not brought suit against any pseudonymous defendants, and only makes reference to these unidentified individuals in the body of the complaint. If Plaintiff had intended to sue then-unknown members of the medical staff at the jail, he should have brought suit against "John and/or Jane Doe" defendants, who could be identified through discovery. Upon obtaining their identities, Plaintiff would then be required to amend his complaint to reflect the Doe defendants' identities. *See Simmons v. District of Columbia*, 750 F. Supp. 2d 45, 45 (D.D.C. 2011) (holding that a plaintiff "may bring an action against unknown John Doe defendants, but plaintiff must substitute named defendants for those unknown defendants after the completion of discovery") (citations omitted); *see also Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) (holding that "[a]n action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery"). Here, Plaintiff has not brought suit against unknown members of the medical staff at the Cayuga County Jail or providing any facts that would permit Defendants to assist in obtaining their identities. As such, the only potential deliberate indifference claim asserted in the complaint is a municipal liability claim against Defendant Cayuga County.

**\*13**  In his complaint, Plaintiff has alleged that a water pipe burst outside his cell during the night, the water was turned off, and at some point during the night it pooled near his cell's toilet. *See* Dkt. No. 5 at ¶¶ 109-13. At sometime between 6:30 a.m. and 7:00 a.m., Plaintiff claims that he got out of bed to use the toilet in his cell and slipped and fell on the wet floor. *See id.* at ¶ 110. Plaintiff alleges that, when he fell, he hit his head and neck on his bunk and his lower back on the floor, causing severe injuries, including a herniated disc in his neck and lower lumbar strain. *See id.* at ¶¶ 111-13. Plaintiff claims that, "[a]fter the injury up and until Plaintiff was released on October 4, 2018[,] Plaintiff was denied medical treatment for his injuries that he suffered inclusive of medication and treatment from a physician." *Id.* at ¶ 114.

Initially, the Court notes that nothing in the complaint indicates that Plaintiff's alleged injury was caused by a municipal custom, policy, or usage, as is required to find a plausible claim against Defendant Cayuga County. Rather, Plaintiff claims that a water pipe leaked outside his cell during the night and that a "correctional officer ... turn[ed] off the water and clean[ed] up the water spill. At that time, there was no water in Plaintiff's cell." Dkt. No. 5 at ¶ 108. When the second pipe leaked, some water entered Plaintiff's cell, which caused Plaintiff to fall. *See id.* at ¶ 109. This isolated incident, involving a bursting water pipe, is woefully insufficient to plausibly allege municipal liability for Plaintiff's alleged injury. *See Connick*, 131 S. Ct. at 1360; *see also Plair v. City of New York*, 789 F. Supp. 2d 459, 470 (S.D.N.Y. 2011) ("[I]t is well established that a single incident does not give rise to an unlawful practice by subordinate officials so permanent and well-settled as to constitute custom or usage") (internal quotation marks omitted); *Giaccio v. City of New York*, 308 Fed. Appx. 470, 472 (2d Cir. 2009) (finding that allegations of, at most, four prior incidents of misconduct "falls far short of establishing a practice that is 'so persistent or widespread' as to justify the imposition of municipal liability") (internal quotation marks omitted).

Even assuming that Plaintiff had asserted this claim against an individually named Defendant, the claim would still be dismissed. To satisfy the second prong of a deliberate indifference claim, Plaintiff must plausibly allege facts suggesting that a defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though [they] knew, or should have known, that the condition posed an excessive

Case 5:25-cv-00967-ECC-MJK   Document 8   Filed 08/25/25   Page 56 of 97
Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)
2020 WL 1904088

risk to health or safety." *Darnell*, 849 F.3d at 35. At best, the facts set forth in the complaint describe negligence on the part of the correctional staff, which is insufficient to support a claim of deliberate indifference. *See id.* at 36.

Finally, to the extent that Plaintiff is basing his claim on the alleged deprivation of medical care after his accident, Plaintiff has failed to provide any factual basis in support of his conclusory assertion that he "was denied medical treatment for his injuries that he suffered inclusive of medication and treatment from a physician." Dkt. No. 5 at ¶ 114. The complaint fails to allege that he brought his alleged injuries to the attention of the correctional or medical staff at the Cayuga County jail (or even identify any such individual).

Based on the foregoing, the Court grants Defendants' motion to dismiss as to Plaintiff's deliberate indifference claim.


## IV. CONCLUSION

After carefully the entire record in this matter, parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

 **\*14** **ORDERS** that Defendants' motion to dismiss (Dkt. No. 9) is **GRANTED in part** and **DENIED in part**; [4] and the Court further

**ORDERS** that Defendants City of Auburn, Butler, Cayuga County, Cayuga County District Attorney's Office, and Budelmann are **TERMINATED** as Defendants in this action; and the Court further

**ORDERS** that Defendants' letter motion a portion of the argument raised in their motion to dismiss (Dkt. No. 15) is **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1904088

---

**Footnotes**

1   As discussed in more detail below, Plaintiff's complaint fails to set forth any facts sufficient to find either supervisory or municipal liability against any of the named Defendants for any of the listed causes of action.

2   Although the Court is permitting this claim against Defendant Spinelli to survive, the Court has serious doubts about whether the claim would survive a properly supported motion for summary judgment. If the Court were to consider the contents of the criminal complaint, supporting affidavit, and Defendant Spinelli's narrative, the claim would undoubtedly be dismissed. This, however, highlights why the Court believes that it is inappropriate to rely on the contents of these documents at this stage. Without the benefit of discovery, Plaintiff has been unable to question the veracity of the

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 57 of 97

**Joyner v. County of Cayuga, Not Reported in Fed. Supp. (2020)**

2020 WL 1904088

statements contained in those documents. That being said, the criminal complaint and affidavits paint a much less sympathetic picture than the one set out in Plaintiff's complaint.

3    Throughout his response, Plaintiff repeatedly states that "the Court is respectfully reminded that it may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See, e.g.*, Dkt. No. 10 at 17, 18 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73). Further, Plaintiff repeatedly contends that he "has no duty at this stage to prove his case." *Id.* These basic tenets are not in dispute. What Plaintiff fails to appreciate, however, is that a complaint must be supported by facts specific to his case, not merely broad assertions of the relevant law poorly disguised as facts. For example, Plaintiff alleges that Defendants engaged in "extreme and outrageous conduct," but fails to explain how any of the conduct alleged could possibly be considered extreme and outrageous. Further, Plaintiff seems to be operating under the assumption that the Court is required to use its imagination to come up with a hypothetical set of facts that could have been pled that would render the claims plausible. *Iqbal* and *Twombly*, however, place no such burden on the Court. Rather, it is incumbent on the plaintiff to set forth the necessary facts specific to his or her case to render the asserted claims plausible.

4    As a result of this Memorandum-Decision and Order, the only remaining claim is Plaintiff's false arrest claim against Defendant Spinelli.

---

**End of Document**                                                                                     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

377 Fed.Appx. 121

This case was not selected for publication in West's Federal Reporter.

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

United States Court of Appeals, Second Circuit.

Kevin McKEOWN, Plaintiff–Counter–Claimant–Appellant,

v.

The N.Y. STATE COMMISSION ON JUDICIAL CONDUCT, The N.Y.S. 1st Dept. Departmental Disciplinary Committee, Gary L. Casella, Francis A. Nicolai, Anthony Scarpino, Robert A. Korren, Jeffrey A. McNamara, Patricia Bave–Planell, Giulini & Giulini, Esqs., Charles A. Giulini, Christine Giulini, Catherine M. Miklitsch, Michael D. McQuade, Defendants–Appellees, The State of New York, The Office of Court Administration of the Unified Court System, Thomas J. Cahill, Sherry Cohen, Nancy J. Barry, Joseph Accetta, Robert M. DiBella, McQuade & McQuade, Esqs., Joseph F. McQuade, John Does 1–20, Jane Does 1–20, Defendants–Counter–Defendants–Appellees.

No. 08–4586–cv
|
May 18, 2010.

**Synopsis**

**Background:** Litigant brought § 1983 action against former attorney, New York Commission on Judicial Conduct, judges and court officers, relating to alleged corruption in New York state courts. The United States District Court for the Southern District of New York, Shira A. Scheindlin, J., 2008 WL 3523910, dismissed action. Litigant appealed.

**Holdings:** The Court of Appeals held that:

[1] litigant's claims against state and its related entities were barred by Eleventh Amendment, and

[2] decision of attorneys in state's Office of Court Administration of the Unified Court System (OCA) not to initiate disciplinary proceedings against litigant's former attorneys was protected by doctrine of quasi-judicial immunity.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Dismiss.

West Headnotes (5)

[1]    **Federal Courts** 👈 Civil rights and discrimination in general
       **Federal Courts** 👈 Waiver by State;  Consent

**Federal Courts** 🔑 Courts

Litigant's claims pursuant to § 1983 against state, the state's Office of Court Administration of the Unified Court System (OCA), the Departmental Disciplinary Committee of the state Appellate Division, First Department (DDC), the state Grievance Committee, Ninth Judicial District (SGC), and state Commission on Judicial Conduct (SCJC), were barred by Eleventh Amendment, absent evidence that state consented to be subject to suit or that state's immunity from suit had been otherwise abrogated. U.S.C.A. Const.Amend. 11; 42 U.S.C.A. § 1983.

24 Cases that cite this headnote

[2] **Federal Courts** 🔑 Suits for injunctive or other prospective or equitable relief;  Ex parte Young doctrine

**Federal Courts** 🔑 Agencies, officers, and public employees

State official acting in his or her official capacity may be sued only for prospective injunctive relief from ongoing violations of federal law. U.S.C.A. Const.Amend. 11.

17 Cases that cite this headnote

[3] **Courts** 🔑 Regulation of attorneys

Federal courts are precluded by the *Rooker–Feldman* doctrine from reviewing a claim attacking a state court's decision regarding the discipline of an attorney.

6 Cases that cite this headnote

[4] **Judges** 🔑 Liabilities for official acts

State judges and those who perform functions closely associated with the judicial process are afforded absolute judicial immunity from private civil actions.

35 Cases that cite this headnote

[5] **Public Employment** 🔑 Particular torts

**States** 🔑 Particular cases and contexts

Decision of attorneys in state's Office of Court Administration of the Unified Court System (OCA) not to initiate disciplinary proceedings against litigant's former attorneys was protected by doctrine of quasi-judicial immunity, as they performed functions closely associated with judicial process.

27 Cases that cite this headnote

**\*122**  Appeal from a judgment of the United States District Court for the Southern District of New York (Scheindlin, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

**Attorneys and Law Firms**

Kevin McKeown, pro se, New York, NY, for Plaintiff–Appellant.

Andrew M. Cuomo, Attorney General of the State of New York; Barbara D. Underwood, Solicitor General; Michael S. Belohlavek, Senior Counsel; Patrick J. Walsh, Assistant Solicitor General; New York, NY, for the New York State Defendants.

PRESENT: WALKER, CHESTER J. STRAUB, DEBRA ANN LIVINGSTON, Circuit Judges.

### SUMMARY ORDER

Appellant Kevin McKeown, proceeding *pro se,* appeals the district court's dismissal of his 42 U.S.C. § 1983 claims. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

This Court reviews *de novo* a district court's dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). A claim will have facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). In the case of a *pro se* complaint, a court must construe the complaint liberally, *see Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009), and should not dismiss it without granting the plaintiff leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) (per curiam) (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)) (internal quotation mark omitted).

[1]    Under the Eleventh Amendment, "[a] suit generally may not be maintained directly against the State itself, or against an agency or department of the State, unless the State has waived its sovereign immunity." *Fla. Dep't of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 684, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982); *see also Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). In this case, Appellant seeks relief against, among others, New York State, the Office of Court Administration of the Unified Court System of New York ("OCA"), the Departmental Disciplinary Committee of the New **\*123** York Appellate Division, First Department ("DDC"), the New York State Grievance Committee, Ninth Judicial District ("SGC"), and the New York State Commission on Judicial Conduct ("SCJC"), based on the decisions of the latter three to dismiss his complaints. However, because he has offered no evidence that the State has consented to be subject to suit in this context, or that the State's immunity from suit has been otherwise abrogated, the claims against the State are barred by the Eleventh Amendment. The district court also correctly found that the OCA, DDC, SGC, and SCJC are arms of the State of New York. *See* N.Y. Const. art. 6, § 1 (creating the unified court system); *In re Deposit Ins. Agency,* 482 F.3d 612, 617 (2d Cir.2007) (noting that "arm[s] of the State" are immunized from suit (internal quotation marks omitted)). Accordingly, the district court properly dismissed Appellant's claims against the State, OCA, DDC, SGC, and SCJC.

[2]    With respect to Appellant's argument that *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), permits his suit, the district court properly noted that a state official acting in his or her official capacity may be sued only for prospective injunctive relief from ongoing violations of federal law. *See Ex parte Young,* 209 U.S. at 155–56, 28 S.Ct. 441. The Appellant's complaint seeks the appointment of a federal monitor to oversee the day-to-day operations of the DDC and SCJC for an indefinite period of time. To the extent this relief is sought based on the dismissal of the Appellant's attorney grievance complaints against Joseph McQuade and others, however, there is no ongoing violation of federal law. Although Appellant also alleges ongoing misconduct at the DDC and the other disciplinary entities, moreover, his claim still fails with regard to these allegations because he lacks a cognizable legal interest in the disciplinary proceedings. *See Application of Phillips,* 510 F.2d 126, 126 (2d Cir.1975) (per curiam).

[3]    To the extent that Appellant's complaint effectively asked the district court to review the decisions of the New York courts, the complaint was properly dismissed because lower federal courts lack subject matter jurisdiction in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S.

280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). We have specifically determined that federal courts are precluded by the *Rooker–Feldman* doctrine from reviewing a claim attacking a state court's decision regarding the discipline of an attorney. *See Zimmerman v. Grievance Comm. of the Fifth Judicial Dist.,* 726 F.2d 85, 86 (2d Cir.1984) ("The decision in *Feldman* clearly applies to federal district court challenges to attorney disciplinary orders rendered by state courts in judicial proceedings."). Appellant's constitutional claims effectively require review of state court decisions regarding the discipline of McQuade and Frank Streng; therefore, the district court correctly determined that it did not have subject matter jurisdiction over these claims.

It is well settled that "judges generally have absolute immunity from suits for money damages for their judicial actions" and that "even allegations of bad faith or malice cannot overcome judicial immunity." *Bliven v. Hunt,* 579 F.3d 204, 209 (2d Cir.2009). Judicial immunity protects the actor unless he "acted in the clear absence of all jurisdiction." *Tucker v. Outwater,* 118 F.3d 930, 933 (2d Cir.1997) (internal **\*124** quotation marks and emphasis omitted). As a general matter, judges are not absolutely immune from suits for prospective injunctive relief. *Mireles v. Waco,* 502 U.S. 9, 10 n. 1, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam). Section 1983 provides, however, that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

 **[4]**    Here, Appellant's claims against Judge Scarpino were properly dismissed because those claims involved Scarpino's performance of his judicial function. Specifically, Appellant alleges that Scarpino failed to report the misconduct of attorneys appearing in probate proceedings before him and was biased in favor of those attorneys during those proceedings—actions and omissions that were clearly taken while Scarpino was acting in his judicial role in the probate proceedings. Accordingly, Appellant's claims for money damages against Scarpino are barred by absolute judicial immunity from suit. To the extent that Appellant seeks injunctive relief against Judge Scarpino, moreover, Appellant does not allege that a declaratory decree was violated or that declaratory relief was unavailable, and so § 1983 relief is not available.

 **[5]**    Judicial immunity also extends to "certain others who perform functions closely associated with the judicial process." *Oliva v. Heller,* 839 F.2d 37, 39 (2d Cir.1988) (quoting *Cleavinger v. Saxner,* 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985)) (internal quotation marks omitted). To determine which persons are covered under quasi-judicial immunity, "the Supreme Court follows a ' "functional" approach,' under which '[a]bsolute immunity flows not from rank or title or "location within the Government," but from the nature of the responsibilities of the individual officer.' " *Id.* (alteration in original) (quoting *Cleavinger,* 474 U.S. at 201, 106 S.Ct. 496). Prosecutors, hearing examiners, and law clerks are eligible for absolute immunity, and those involved in preparing and adjudicating attorney discipline proceedings share analogous roles. *See id.* at 39–40; *see also Anonymous v. Ass'n of the Bar of N.Y.,* 515 F.2d 427, 433 (2d Cir.1975) (observing that New York State courts regard disciplinary proceedings as "judicial proceeding [s]" and determining that the state bar association's grievance committee acted as a quasi-judicial body and an arm of the Appellate Division). Accordingly, the decisions of the OCA attorneys not to initiate disciplinary proceedings against McQuade and Streng are protected by the doctrine of quasi-judicial immunity, and Appellant's claims against them must fail.

Appellant has abandoned on appeal his § 1983 claims against those of the Defendants–Appellees who are attorneys in private practice, as well as his state law claims. *See LoSacco v. City of Middletown,* 71 F.3d 88, 92–93 (2d Cir.1995) (holding, in civil appeal filed by *pro se* appellant, that issues not raised in an appellate brief are abandoned). We therefore do not address them.

We have considered all of Appellant's arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

## All Citations

377 Fed.Appx. 121

---

                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

335 Fed.Appx. 102
This case was not selected for publication in West's Federal Reporter.
United States Court of Appeals,
Second Circuit.

Sandra SHEEHY, et al., Plaintiffs–Appellants,

v.

Thomas P. BROWN, et al., Defendants–Appellees.

No. 08–0102–cv.
|
June 23, 2009.

**Synopsis**
**Background:** Plaintiffs appealed, pro se, a judgment of the United States District Court for the Western District of New York, Telesca, J., sua sponte dismissing their complaint.

**Holdings:** The Court of Appeals held that:

[1] plaintiffs failed to establish § 1983 claims arising out of their allegedly false prosecutions, and

[2] plaintiffs failed to state a claim for conspiracy to interfere with civil rights.

Affirmed.

West Headnotes (2)

[1]    **Civil Rights**  🔑  **Criminal prosecutions**

Plaintiffs failed to allege that their convictions or sentences were invalidated or otherwise expunged, as required to establish § 1983 claims arising out of their allegedly false prosecutions. 42 U.S.C.A. § 1983.

50 Cases that cite this headnote

[2]    **Conspiracy**  🔑  **Civil rights conspiracies**

Plaintiffs failed to allege the formation of a conspiracy, and overt acts in furtherance of such conspiracy, as required to state a claim for conspiracy to interfere with civil rights. 42 U.S.C.A. § 1985.

395 Cases that cite this headnote

 *103  **UPON DUE CONSIDERATION,** it is hereby **ORDERED, ADJUDGED AND DECREED** that the judgment of the district court is **AFFIRMED.**

**Attorneys and Law Firms**

**Sandra Sheehy**, pro se.

**Robert Sheehy**, pro se.

**Patrick Sheehy**, pro se.

**Bobbi Sheehy**, pro se.

**Billie Sheehy**, pro se.

**Casey Sheehy**, pro se.

**Sherry Sheehy**, pro se.

PRESENT: Hon. PIERRE N. LEVAL, Hon. ROSEMARY S. POOLER and Hon. B.D. PARKER, Circuit Judges.

*SUMMARY ORDER*

**\*\*1** Plaintiffs–Appellants Sandra, Robert, Patrick, Bobbi, Billie, Casey, and Sherri Sheehy, *pro se,* appeal from the judgment of the United States District Court for the Western District of New York (Telesca, J.), *sua sponte* dismissing the complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). We assume the parties' familiarity with the facts, procedural history and issues on appeal.

Having reviewed *de novo* the district court's *sua sponte* dismissal under § 1915(e), *see Giano v. Goord,* 250 F.3d 146, 149–50 (2d Cir.2001), we conclude that the district court did not err in dismissing Appellants' complaint.

**[1]** First, any 42 U.S.C. § 1981 or § 1983 claim against Appellees Lucy or Edward Sherwood, Thomas Fuoco, Mark Wattenberg, or Steve Presutti was properly dismissed, as private actors and institutions generally are not proper § 1983 defendants. *See American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (§ 1983 actions do not reach purely private conduct). Additionally, for an individual to recover damages for an allegedly unconstitutional conviction or imprisonment, he or she "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus...." *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Thus, any § 1983 claims arising out of the allegedly false prosecutions of Sandra, Patrick, or Robert Sheehy were appropriately dismissed, as Appellants did not allege that their convictions or sentences were invalidated or otherwise expunged. *Id.*

**\*104** As for the American Society for the Prevention of Cruelty to Animals, the Allegany County Society for the Prevention of Cruelty to Animals, and Appellee Presutti, claims against these defendants were properly dismissed, as Appellants did not allege any wrongdoing on their part or specify how they were involved in the constitutional violations alleged. *See* 28 U.S.C. § 1915(e)(2). Next, to the extent that Appellants challenge the conduct of county district attorneys or state court judges, such actors are entitled to immunity. *Nixon v. Fitzgerald,* 457 U.S. 731, 766, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

Appellants also assert § 1983 claims against: (1) county sanitation workers for entering the Sheehys' property, in violation of their property and privacy rights; (2) state troopers for use of excessive force and retaliation; and (3) Allegany County Department of Social Services employees for entering the Sheehys' property and removing the Sheehy children from their homes, in violation of their First, Fourth, and Ninth Amendment rights. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). We conclude that because the Appellants' § 1983 allegations are so vague as to fail to give the defendants adequate notice of the claims against them, the district court did not err in dismissing them.

**2    [2]    Appellants also assert claims under § 1985, for which a plaintiff must allege: (1) a conspiracy, (2) which has an intent or purpose to deprive a person of equal protection of the law; (3) an act in furtherance of the conspiracy; (4) which results in an injury to a person, or a person's property, or the deprivation of a federal constitutional right. *See Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993) (per curiam). Here, the Appellants' claims of conspiracy failed to specifically allege (1) the formation of a conspiracy; or (2) overt acts in furtherance of such conspiracy. Thus, the district court correctly dismissed any claims brought pursuant to §§ 1985 and 1986.

To the extent that Appellants assert claims based on the violation of federal criminal statutes, such as 18 U.S.C. §§ 241–242, these claims are not cognizable, as federal criminal statutes do not provide private causes of action. *See Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 511 (2d Cir.1994). In addition, any claim brought under 42 U.S.C. § 2000d, which prohibits the exclusion of individuals from a federally funded program or activity on the basis of race, color, or national origin, properly was dismissed, as Appellants did not allege that they were excluded from a federally funded program or activity and, thus, no claim exists under that statute. Similarly, although former 42 U.S.C. § 13981 authorized a cause of action arising out of a crime of violence motivated by gender, the Supreme Court has held that statute unconstitutional. *See United States v. Morrison,* 529 U.S. 598, 601, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).

We have reviewed Appellants' remaining arguments and find them to be without merit. We also note here that we see no  *105 indication in the record that Appellants perfected service on any of the defendants in this case.

Therefore, for the reasons stated above, the judgment of the district court is AFFIRMED.

**All Citations**

335 Fed.Appx. 102, 2009 WL 1762856

---

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

651 Fed.Appx. 72

This case was not selected for publication in West's Federal Reporter.

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

United States Court of Appeals, Second Circuit.

Moshe SHTRAUCH, Plaintiff–Appellant,

v.

Kevin M. DOWD, Individually and as the administrator of the Supreme Court building in Norwich, NY, Defendant–Appellee.

15–2727
|
June 10, 2016

**Synopsis**

**Background:** Plaintiff brought § 1983 action against judge for allegedly violating his First, Fourth, Fifth, and Fourteenth Amendment rights by having him removed from the courthouse during his divorce proceedings. The United States District Court for the Northern District of New York, Thomas J. McAvoy, J., 2015 WL 4508604, granted judge's motion to dismiss, and plaintiff appealed .

**[Holding:]** The Court of Appeals held that judge had judicial immunity from plaintiff's suit.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Dismiss.

**West Headnotes (1)**

**[1]**      **Civil Rights**  🔑  Judges, courts, and judicial officers

Judge had judicial immunity from plaintiff's § 1983 action alleging he violated plaintiff's First, Fourth, Fifth, and Fourteenth Amendment rights by having him removed from the courthouse for allegedly behaving improperly during a conference in chambers, even though judge had recused himself from plaintiff's divorce proceedings prior to ordering that he be removed from the courthouse; the removal of plaintiff from the courthouse was a function typically performed by a judge in his judicial capacity and in relation to an individual case, and whether plaintiff was correct in asserting that he did not violate decorum under New York court rules was irrelevant to the question of immunity. U.S. Const. Amend. 1, 4, 5, 14; 42 U.S.C.A. § 1983; N.Y. Comp. Codes R. & Regs. tit. 22, § 100.3(B)(2).

65 Cases that cite this headnote

Appeal from a judgment of the United States District Court for the Northern District of New York (Thomas J. McAvoy, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED,   \*73  AND DECREED** that the judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

For Petitioner–Appellant: Moshe Shtrauch, pro se, Mount Upton, NY.

For Defendant–Appellee: Jonathan D. Hitsous, Assistant Solicitor General (Barbara D. Underwood, Solicitor General and Andrew B. Ayers, Senior Assistant Solicitor General, on the brief ), for Eric T. Schneiderman, Attorney General of the State of New York, Albany, NY.

PRESENT: ROBERT D. SACK, GERARD E. LYNCH, Circuit Judges, J. GARVAN MURTHA, [*] District Judge.

<u>**SUMMARY ORDER**</u>

Appellant Moshe Shtrauch, proceeding pro se, appeals the district court's judgment dismissing his 42 U.S.C. § 1983 complaint asserting that Kevin Dowd, a New York state justice, violated his First, Fourth, Fifth, and Fourteenth Amendment rights as barred by judicial immunity. [1]  We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009). Additionally, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity.' " *Bliven*, 579 F.3d at 209, quoting *Mireles v. Waco*, 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). Moreover, judicial immunity does not bar a claim for prospective injunctive and declaratory relief. *Cf. Pulliam v. Allen*, 466 U.S. 522, 541–43, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984).

We employ "a 'functional' approach" to determine whether an act is "judicial" because judicial "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 224, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (emphasis in original). "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature," *Bliven*, 579 F.3d at 210, whereas, "[a]dministrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts," *Forrester*, 484 U.S. at 228, 108 S.Ct. 538. This Court looks to state law to "inform [the] inquiry as to whether [judges] acted ... in their judicial capacities."  **\*74** *Huminski v. Corsones*, 396 F.3d 53, 76 (2d Cir. 2005).

Dowd was entitled to judicial immunity because the act underlying Shtrauch's claims—the removal of Shtrauch from the courthouse—was a function typically performed by a judge in his judicial capacity and in relation to an individual case. *See* 22 N.Y.C.R.R. § 100.3(B)(2) (providing that a judge in New York "shall require order and decorum in proceedings before" him); *People v. Knowles*, 88 N.Y.2d 763, 766, 650 N.Y.S.2d 617, 673 N.E.2d 902 (1996) (stating that judges in New York "possess inherent authority" to control the conduct of the trial before them); *see also Huminski*, 396 F.3d at 79 (concluding that defendant was entitled to judicial immunity for barring litigant from courthouse because she "acted pursuant to Vermont law in ensuring the security of the courthouse"). Moreover, in this case, Dowd ordered Shtrauch removed based on Dowd's perception—right or

wrong—that Shtrauch had behaved improperly during a conference in a case pending before him. Whether Shtrauch is correct in asserting that he did not violate decorum is irrelevant to the question of immunity; by definition, immunity protects wrongful as well as appropriate exercises of a judicial function. *See Stump*, 435 U.S. at 359, 98 S.Ct. 1099.

Shtrauch argues that Dowd is not entitled to judicial immunity because Dowd recused himself from Shtrauch's divorce proceedings prior to ordering that Shtrauch be removed from the courthouse. Dowd's recusal from Shtrauch's case, however, does not alter the functional analysis of the underlying act. The removal of a litigant from a courtroom remains conduct typically performed by a judge in his judicial capacity arising directly from an individual case before the judge. The judge's decision to grant a recusal motion does not deprive the judge of authority to address perceived misbehavior during the proceeding on that motion.

Shtrauch is not entitled to injunctive relief because he "allege[d] neither the violation of a declaratory decree, nor the unavailability of declaratory relief." *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999). Nor is Shtrauch entitled to declaratory relief because he alleges only past conduct and does not seek to prevent an ongoing or future violation of federal law. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996) (concluding that relief sought was not prospective where the "specific allegations target[ed] past conduct" and the "remedy [was] not intended to halt a present, continuing violation of federal law").

We have considered all of Shtrauch's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

**All Citations**

651 Fed.Appx. 72

---

## Footnotes

\*      The Honorable J. Garvan Murtha, of the United States District Court for the District of Vermont, sitting by designation.

1      Shtrauch also moves to supplement the record on appeal to include the transcript of a state court proceeding. "[A]bsent extraordinary circumstances, federal appellate courts will not consider ... evidence which [is] not part of the [district court] record." *Int'l Bus. Machs. Corp. v. Edelstein*, 526 F.2d 37, 45 (2d Cir. 1975). Nevertheless, because it is undisputed that the transcript is accurate, the inclusion of the transcript does not affect the merits of the case, and we have necessarily reviewed the transcript in the course of deciding the motion, the motion is granted.

---

End of Document                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Williams v. County of Onondaga, Not Reported in Fed. Supp. (2023)

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 68 of 97

2023 WL 2563181
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Charles R. WILLIAMS II, Plaintiff,

v.

COUNTY OF ONONDAGA, et al., Defendants.

5:22-CV-1367 (TJM/ATB)
|
Signed February 21, 2023

**Attorneys and Law Firms**

CHARLES R. WILLIAMS II, Plaintiff, pro se.

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** The Clerk has sent to the court, for initial review, a pro se complaint filed on December 19, 2022, by plaintiff Charles R. Williams II. Plaintiff names 23 defendants, primarily in connection with alleged civil rights violations under 42 U.S.C. § 1983. (Dkt. No. 1) ("Compl."). [1] Plaintiff also filed a motion for leave to proceed in forma pauperis ("IFP"). (Dkt. No. 2).

**I. In Forma Pauperis ("IFP") Application**

Plaintiff's IFP application declares that he is unable to pay the filing fee. (Dkt. No. 2). After reviewing his application, this court finds that plaintiff is financially eligible for IFP status, although, because he is incarcerated, he will be required to submit an inmate authorization form–Form G on the Northern District of New York's public website.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327, 109 S.Ct. 1827; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants, and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555, 127 S.Ct. 1955). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

## II. Complaint

**\*2** Plaintiff's complaint, dated January 10, 2022, but filed on February 25 <sup>th</sup> of that year, consists of seven pages on a court form entitled "Civil Rights Complaint Pursuant to 42 U.S.C. § 1983," followed by a 23-page, 93-paragraph typed supplement ("Compl. Supp."). [2] The complaint is repetitive and somewhat difficult to follow, but the court will attempt to summarize it, leaving discussion of much of the factual detail, as necessary, in connection with my later analysis of particular issues with the complaint. [3]

Plaintiff came to the attention of the Syracuse Police Department in and around November 2019 for two reasons–(1) an apparent allegation of domestic violence and/or sexual assault by plaintiff's "common-law wife," [4] and (2) an altercation at McNeilly's Pub in Syracuse, where plaintiff allegedly worked security, which resulted in an exchange of gunfire between plaintiff and two other individuals. Although plaintiff intertwines the facts related to these two incidents in his somewhat chronological presentation in the supplement to his complaint, the court will attempt to separate the incidents in the discussion below, in the interests of clarity.

With respect to the sexual assault allegation, the complaint indicates that plaintiff's wife's complaints led to the initiation of charges and the entry of an order of protection against plaintiff. (Compl. Supp., ¶ 15). Plaintiff and his wife allegedly attempted to communicate to the Syracuse Police Department and Assistant District Attorney ("ADA") Jarrett A. Woodfork that plaintiff's wife was not the victim of a sexual assault and did not want to pursue any charges against plaintiff. (Compl. Supp., ¶ 15; Compl. in Case No. 5:20-CV-206, Dkt. No. 1 at 1, 2-3). Nevertheless, unspecified representatives of the Syracuse Police Department "defamed" plaintiff on November 21, 2019, by "broadcasting his face on the news for crimes he did not commit." (Compl. Supp., ¶ 2). [5] ADA Woodfork thereafter pressured and lied to plaintiff's wife, in an effort to persuade her to accuse plaintiff, before a grand jury, of sexual assault. Plaintiff's wife consistently refused to accuse plaintiff of sexual assault, and ultimately, no charges were pursued against the plaintiff relating to his wife. (Compl. Supp., ¶¶ 15, 21-23).

Plaintiff alleges that the November 4, 2019 incident at McNeilly's Pub began when Donnell Thornton pulled a gun on plaintiff and escorted him out of the bar. Another "assailant," Arthur Stripling, then attacked plaintiff with a knife. During the encounter, a gun allegedly fell from Stripling's person, which plaintiff picked up. Thornton fired two shots at plaintiff, who then ran and jumped between two cars and exchanged gunfire with Thornton. (Compl. Supp., ¶ 1; Compl. in Case No. 5:20-CV-206, Dkt. No. 1 at 1-2). Both Thornton and Stripling were shot multiple times. (Compl. in Case No. 5:20-CV-206, Dkt. No. 1 at 2).

**\*3** Plaintiff did not go to the police immediately regarding the incident at McNeilly's Pub because he was aware that they were looking for him in connection with the allegations of sexual assault by his wife. (Compl. in Case No. 5:20-CV-206, Dkt. No. 1 at 2). Plaintiff was eventually arrested, on November 25, 2019, in connection with the incident at McNeilly's Pub and, perhaps, also based on his wife's complaints of domestic abuse. (Compl. Supp., ¶¶ 3, 4). Plaintiff accused the prosecutors, inter alia, of selective prosecution relating to the McNeilly's Pub incident, by immunizing and/or giving other favorable treatment to plaintiff's two allegedly more culpable "assailants," who were used as government witnesses against him. (Compl. Supp., ¶¶ 1, 4).

The majority of plaintiff's lengthy complaint accuses one of his defense attorneys, as well as the prosecutors, judges, and witnesses involved in his prosecution relating to the McNeilly's Pub incident, of various abuses of plaintiff's constitutional rights. The prosecutors and judges were accused of insisting on excessive bail, resulting in plaintiff's pretrial detention for approximately ten months. The prosecutors allegedly did not permit plaintiff to introduce exculpatory information before the all-white grand jury, called witnesses who committed perjury, and did not call witnesses who could provide exculpatory information. One prosecutor, defendant ADA Anthony V. Mangovski, allegedly admitted to erasing part of crucial security video evidence

**Williams v. County of Onondaga, Not Reported in Fed. Supp. (2023)**

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 70 of 97

from the scene of the incident, which allegedly would have proved that plaintiff was not the primary aggressor in the incident. Several judges involved in the court proceedings allegedly excused improper delays and other pretrial procedural defaults by the prosecutors. Plaintiff accused his first defense counsel, defendant Walter B. Coffin, Esq., of improperly trying to persuade him not to testify before the grand jury, agreeing to waive a preliminary examination against plaintiff's express wishes, and generally working to assist the ADAs in prosecuting the case against plaintiff.

Plaintiff was brought to trial in September 2022 on a five-count indictment, charging him with attempted murder 2nd, criminal use of a firearm 1st, assault 1st, criminal possession of a weapon 1st, and criminal possession of a weapon 2nd. (Compl. Supp. ¶¶ 36, 48). Plaintiff accused numerous civilian witnesses, including Thornton and Stripling, as well as Syracuse Police Officer Dallas Pelz, of committing perjury during trial and often contradicting prior statements that were favorable to the plaintiff. He accused the trial prosecutor, defendant ADA Alphonse Williams, of various types of misconduct, which were allowed or facilitated by the trial judge, defendant Rory A. McMahon. Judge McMahon allegedly allowed numerous procedural irregularities at the trial, and pressured the jury to reach a verdict on the last of five charges after it seemed apparent that the jury had acquitted plaintiff of the most serious charges. At the end of the trial, plaintiff was only convicted on the criminal possession of a weapon 2nd charge and was acquitted on the remaining charges. (Compl. Supp., ¶ 55). [6]

Towards the end of his complaint, plaintiff alleges that his constitutional rights were violated during his confinement in the Onondaga County Justice Center. Plaintiff claims that, in 2020 during his pretrial detention, he was exposed to Hepatitis A when "Napcare" providers and staff at the Justice Center cleared an infected inmate to work in the kitchen, which resulted in plaintiff being forced to take a vaccine against his own will or to be held in medical keep lock. Plaintiff also alleges that, on October 30, 2020, a Napcare employee "(Jen or Erin)" violated HIPAA laws by disclosing plaintiff's medications to a custody deputy. (Compl. Supp., ¶ 90).

**\*4**  After his conviction, on October 13, 2022, plaintiff alleges that certain deputies attempted to "obstruct justice" by transferring him to another facility just after he had filed a federal habeas petition. (Compl. Supp., ¶ 75-76). [7]  When plaintiff resisted the transfer, defendants Lt. Daniel Lavy and Lt. Corey Moore summoned the emergency response team, and allegedly threatened plaintiff with violence. (*Id.*, ¶ 77). Ultimately, plaintiff agreed to be moved to a mental health observation cell, which he alleges was infested with urine and feces, and he was not moved to a different cell until the next day. (*Id.*, ¶¶ 78-80). [8]

The initial, handwritten portion of plaintiff's complaint suggests or asserts claims for defamation, cruel and unusual punishment, malicious prosecution, an unfair trial, and a wrong conviction. (Compl., Dkt. No. 1 at 6 ("Causes of Action")). In concluding his complaint, plaintiff claims damages of $20,000,000 and seeks expungement of charges from his criminal record based on the following alleged constitutional and other violations:

> racial discrimination, defamation of character on the news, erasure/destruction of video evidence by prosecutor/police, perjury on the stand by all witnesses at trial, perjury at the grand jury by police, wrongful arrest, wrongful conviction with no basis or element of a crime, perjury in grand jury by witnesses, extortion by complainant, prosecution bribery of witness, failure to prosecute assailants with multiple weapons, ... forcing a deadlocked jury to render a verdict, prosecutorial misconduct, judicial misconduct, violation of my civil rights, 5th, 6th and 14th Amendment Rights to the United States Constitution.

(Compl. Supp., ¶ 91, 92).

### III. Judicial Immunity

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 71 of 97

**Williams v. County of Onondaga, Not Reported in Fed. Supp. (2023)**

Plaintiff names as defendants two state-court judges who were involved in various court proceedings relating to his prosecution–Hon. Stephen J. Dougherty and Hon. Rory A. McMahon. Both are protected with absolute immunity from suit and from liability.

### A. Applicable Law

With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). Judicial immunity serves the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The only two circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity, and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12, 112 S.Ct. 286.

**\*5** Injunctive relief against judges is also barred "unless a declaratory decree was violated or declaratory relief was unavailable." *Bobrowski v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011) (citing inter alia *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (per curiam)). [9] Although fairness and injustice may result on occasion, a judicial officer must be free to act on his or her own convictions in exercising the authority vested in him or her, "without apprehension of personal consequences...." *Id.* (citing inter alia *Mireles*, 502 U.S. at 10, 112 S.Ct. 286).

Whether an act by a judge is a "judicial one" relates to the "nature of the act itself'–whether it is a function that is necessarily performed by a judge. *Id.* (citing *Stump v. Sparkman*, 436 U.S. 349, 362 (1978)). The parties must have dealt with the judge in his or her "judicial capacity." *Id.* The court acts in "absence of all jurisdiction" when "it does not have any statutory or constitutional power to adjudicate the case." *Id.* (citing *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009)). The judge will not be deprived of absolute immunity if he or she takes action that is merely "in excess" of his or her authority. *Id.* (citing *Mireles*, 502 U.S. at 12-13, 112 S.Ct. 286).

### B. Analysis

The conduct of the defendant judges about which plaintiff complains involved their actions in the courtroom in a criminal case to which they were assigned. It is clear that plaintiff's allegations against the judges who presided during his prosecution all related to the exercise of their judicial functions. Accordingly, the judges are entitled to absolute immunity and the claims against them are subject to dismissal. *See, e.g., Shtrauch v. Dowd*, 651 F. App'x 72, 73-74 (2d Cir. 2016) ("Generally, 'acts arising out of, or related to, individual cases before the judge are considered judicial in nature' ") (quoting *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009)); *Kim v. Saccento*, No. 21-2865, 2022 WL 9583756, at *2 (2d Cir. Oct. 17, 2022) ("the actions that [plaintiff] complains of – adverse decisions in a criminal proceeding – are plainly judicial in nature"); *Root v. Liston*, 444 F.3d 127, 132 (2d Cir. 2006) (judges who set bail enjoy absolute immunity) (collecting cases).

## IV. **Prosecutorial Immunity**

Plaintiff asserts claims against ADA Jarrett Woodfork, who was involved in the grand jury investigation of plaintiff regarding the allegations of sexual assault, as well as ADAs Michael Whalen, Anthony Mangovski, and Alphonse Williams, who were involved in various aspects of the prosecution of plaintiff relating to the incident at McNeilly's Pub. Based on plaintiff's allegations, these defendants are protected by absolute prosecutorial immunity.

### A. Applicable Law [10]

**\*6** Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities intimately associated with the judicial phase of the criminal process." *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987). The immunity covers "virtually all

Case 5:25-cv-00967-ECC-MJK   Document 8   Filed 08/25/25   Page 72 of 97

Williams v. County of Onondaga, Not Reported in Fed. Supp. (2023)

acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995). Functions to which absolute immunity applies are when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, involves the exercise of discretion. *See Flagler v. Trainor*, 663 F.3d 543, 547 (2d Cir. 2011) ("Prosecutors are absolutely immune from suit only when acting as advocates and when their conduct involves the exercise of discretion.") (citing *Kalina v. Fletcher*, 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997)). This includes such functions as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas," *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013), and whether and when to drop charges. *Taylor*, 640 F.2d at 452. "This immunity attaches to conduct in court, as well as conduct 'preliminary to the initiation of a prosecution and actions apart from the courtroom.' " *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler*, 424 U.S. at 431 n. 33, 96 S.Ct. 984).

"[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused." *Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 199-200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985)). Absolute immunity extends even to a prosecutor who "conspir[es] to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because the immunity attaches to his function, not to the manner in which he performed it." *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (cleaned up). Immunity even extends to "the falsification of evidence and the coercion of witnesses," *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981), "the knowing use of perjured testimony," "the deliberate withholding of exculpatory information," *Imbler v. Pachtman*, 424 U.S. 409, 431 n.34, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the "making [of] false or defamatory statements in judicial proceedings," *Burns v. Reed*, 500 U.S. 478, 490, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (collecting cases), and "conspiring to present false evidence at a criminal trial," *Dory*, 25 F.3d at 83.

### B. Analysis

Plaintiff contends that ADA Woodfork, in pursuing charges based on his wife's apparent complaint of domestic violence and/or sexual assault, lied to her and pressured her to falsely accuse plaintiff in the grand jury. Based on the authority discussed above, ADA Woodfork's efforts to pursue the charges against plaintiff and prepare witnesses for testimony before the grand jury would fall within his prosecutorial functions and would be protected by absolute immunity, regardless of whether the prosecutor engaged in the type of misconduct alleged. *See, e.g.*, *Brown v. Fallon*, 2022 WL 4103998, at *8 ("the courts have long held that a prosecutor's determination to bring charges against an individual by the presentment of a case to a grand jury, even if it involves the presentation of false or fabricated evidence, is an act by an advocate intimately related to the judicial phase of the criminal process to which absolute prosecutorial immunity applies) (citing, inter alia, *Simon*, 727 F.3d at 171 (absolute immunity applies to such functions as "deciding whether to bring charges and presenting a case to a grand jury or a court, **along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection**, and issuing subpoenas") (emphasis added)).

The plaintiff's allegations against the ADAs who were involved in his prosecution relating to the incident at McNeilly's Pub were clearly carrying out prosecutorial functions in court in a case to which they were assigned. Based on the authority cited above, these prosecutors are immune from suit and liability based on absolute prosecutorial immunity. As noted above, to the extent the prosecutors decided not to charge plaintiff's alleged "assailants" in the McNeilly's Pub incident, and/or to immunize them or use them as witnesses against plaintiff, they would also be protected by absolute immunity, regardless of their motivation. *See, e.g.*, *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 505 (2d Cir. 2004) ("regardless of defendants' ... motives, absolute immunity shields them from suit pursuant to § 1983 for their alleged malicious or selective prosecution of plaintiffs, as well as for any misconduct in the presentation of evidence to the grand juries that returned the challenged indictments against plaintiffs"); *Corley v. Vance*, 365 F. Supp. 3d 407, 457-58 & n.21 (S.D.N.Y. 2019) ("Plaintiff's selective prosecution claim, even if not barred by *Heck* [v. *Humphrey*], additionally fails because prosecutorial immunity shields the DA Defendants."), *aff'd*, 811 F. App'x 62 (2d Cir. 2020). [11]

Williams v. County of Onondaga, Not Reported in Fed. Supp. (2023)

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 73 of 97

## V. Witness Immunity

**\*7** Plaintiff's civil rights claims against Syracuse Police Officer Dallas Pelz, and civilians Arthur Stripling, Tonya Burton, Tammy McNeilly, and Sasha Thornton, are based on the allegation that they testified falsely and/or to plaintiff's detriment in the grand jury and/or at trial. (Compl. Supp., ¶¶ 44, 46, 64-67). However, "witnesses, including police officers, who testify in judicial proceedings[,] ... 'are integral parts of the judicial process' and, accordingly, are shielded by absolute immunity." *Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (citations omitted); *Briscoe v. LaHue*, 460 U.S. 325, 334, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). The Supreme Court has established that grand jury witnesses should enjoy the same absolute immunity from any § 1983 claim as witnesses at trial. *Rehberg v. Paulk*, 566 U.S. 356, 369, 132 S.Ct. 1497, 182 L.Ed.2d 593 (2012). "[T]his rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution. *Id.* Accordingly, the claims against these grand jury and trial witnesses are subject to dismissal. [12]

## VI. State Action

### A. Applicable Law

A claim for relief under 42 U.S.C. § 1983 must allege facts showing that the defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *See West v. Atkins*, 487 U.S. 42, 48-49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). While private individuals are not state actors, such individuals can be liable under Section 1983 if they acted either "jointly" or "in conspiracy" with a state actor to deprive the plaintiff of a constitutional right. [13] *Stewart v. Victoria's Secret Stores*, LLC, 851 F. Supp. 2d 442, 445 (E.D.N.Y. 2012); *see also Betts v. Shearman*, 751 F.3d 78, 84 n.1 (2d Cir. 2014). However, "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002).

### B. Analysis

### 1. Attorney Coffin

Walter B. Coffin was plaintiff's first "assigned" lawyer in his criminal case, who was ultimately replaced by another attorney. (Compl. Supp., ¶ 7). "[I]t is axiomatic that a "public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Flores v. Levy*, No. 07-CV-3753, 2008 WL 4394681, at \*7 (E.D.N.Y. Sept. 23, 2008) (citing, inter alia, *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ("it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983"); *Benjamin v. Branden*, No. 21-CV-4927, 2022 WL 1092681, at \*2 (E.D.N.Y. Apr. 12, 2022) (collecting cases). "Section 1983 'was enacted to redress civil rights violations by persons acting under color of State law' and should not be used by clients disappointed with the performance of their attorneys." *Brooks v. New York State Supreme Court*, No. 02-CV-4183, 2002 WL 31528632, at \*3 (E.D.N.Y. Aug. 16, 2002) (citation omitted)).

**\*8** While plaintiff criticized Attorney Coffin's advice in several respects and alleges that his lawyer counsel made tactical decisions contrary to plaintiff's wishes and direction, that would not alter the fact that his defense counsel was not a state actor. Plaintiff also noted that, when Attorney Coffin was advised by "a complainant" (apparently plaintiff's wife) that she was not sexually assaulted by plaintiff, he referred the complainant to ADA Woodcock to provide a corrected statement to the authorities. (Compl. Supp., ¶ 14). Plaintiff alleged that Attorney Coffin was conspiring with the prosecutors, essentially to deny plaintiff a fair trial:

**Williams v. County of Onondaga, Not Reported in Fed. Supp. (2023)**

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 74 of 97

> Permission to speak freely? I feel and know upon information and believe [sic] that Mr. Coffin is on the take and working for the Onondaga County District Attorney's Office. He is given all of the high-profile cases where the defendants may or may not be guilty and his job is to get them to plead guilty and waive certain rights and in return, he is assigned the most (high-profile) cases and I can prove it! Let me proceed.

(Compl. Supp., ¶ 12). These allegations are speculative and conclusory, and are not sufficient to establish a conspiracy that would qualify Attorney Coffin as a state actor. *See, e.g., Flores v. Levy*, No. 07-CV-3753, 2008 WL 4394681, at *10 (E.D.N.Y. Sept. 23, 2008) (allegations that Legal Aid attorneys engaged in numerous conspiracies with the other defendants "(1) denying plaintiff his right to counsel; (2) preventing plaintiff from testifying before the grand jury; (3) allowing the defendant prosecutors to "lift" the indictment into the county court; and (4) adding the additional charge of assault in the first degree to the indictment" do not support a plausible claim of conspiracy with the other defendants) (collecting cases). "Moreover, as the Second Circuit has noted, generalized allegations of conspiracy 'ring especially hollow' where, as here, the parties alleged to be part of the same conspiracy have an adversarial relationship." *Id.* (citing *Ciambriello*, 292 F.3d at 324).

In any event, plaintiff suggests only a conspiracy between Attorney Coffin and the ADAs involved in the prosecution of plaintiff, all of whom are protected by absolute immunity. Where plaintiff's only conspirators are protected by absolute immunity, "Plaintiff's defense attorney[ ] therefore had no state actor with whom [he] could have conspired, rend[er]ing Plaintiff's conspiracy claim deficient as a matter of law." *Murdock v. Legal Aid Soc'y*, No. 14-CV-0508, 2015 WL 94245, at *3 (E.D.N.Y. Jan. 6, 2015) (citing, inter alia, *Delarosa v. Serita*, No. 14-CV-737, 2014 WL 1672557, at *4 (E.D.N.Y. Apr. 28, 2014)) (dismissing Section 1983 conspiracy claim because the assistant district attorney was immune from suit and the criminal defense attorney therefore had no "state actors with whom [he] could have conspired to deprive Plaintiff of his Constitutional rights").

### 2. Other Alleged Conspirators

Plaintiff may have intended to suggest that other civilians, such as the witnesses who allegedly committed perjury at trial, also conspired with state actors to infringe on plaintiff's constitutional rights, and should be liable under Section 1983. (Compl. Supp., ¶¶ 64-67). However, the complaint makes no explicit allegations of conspiracy involving these witnesses and an allegation that they committed perjury is clearly not sufficient to make them state actors. *See Flores v. Levy*, 2008 WL 4394681, at *9 (the mere allegation a civilian witness committed perjury, and the prosecutor's alleged failure to correct such testimony, is insufficient to support a conspiracy claim making the witness a state actor) (collecting cases). In any event, as discussed above, because plaintiff's allegations focus on the civilian witnesses's testimony at trial or grand jury, they are, like the prosecutors who likely helped prepare the witness testimony, protected by absolute immunity and cannot be state actors.

### VII. Claims Based on Criminal Violations

**\*9** Plaintiff's claims appear to be based, in part, on the defendants' alleged violations of federal or state criminal statutes such as state statutes outlawing perjury, evidence or witness tampering, extortion, and bribery. However, plaintiff may not assert claims under Section 1983 based on criminal violations. *See, e.g., Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, 51 F. Supp. 3d 319, 348 n.19 (S.D.N.Y. 2014) (allegations that defendants violated criminal statutes by submitting false statements and falsified documents, or committing perjury "cannot form the basis of a ...§ 1983 or related claim given that those statutes apply only to violations of federal constitutional rights") (collecting cases); *Patterson v. Patterson*, No. 1:16-CV-844, 2019 WL 1284346, at *7 (W.D.N.Y. Mar. 20, 2019) ("Courts within this Circuit have accordingly held consistently that criminal charges ... 'cannot be prosecuted by a private person.' ") (collecting cases).

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 75 of 97

Williams v. County of Onondaga, Not Reported in Fed. Supp. (2023)

## VIII. Malicious Prosecution/Heck v. Humphrey

Many of plaintiff's claims against particular defendants are subject to dismissal on multiple grounds, including absolute immunity. Although not necessary to support dismissal of any defendant, the court will discuss alternative bases for dismissal of plaintiff's malicious prosecution and related claims. [14]

Because plaintiff is a pro se litigant, the court must "read his supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Plaintiff's allegations that the defendants conspired to fabricate evidence against him, withhold exculpatory evidence, and otherwise deny him a fair trial most strongly suggest claims for malicious prosecution, denial of due process and a fair trial, and a claim for failure to disclose exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1983). [15]

### A. Applicable Law

#### 1. Malicious Prosecution

**\*10** "The elements of a malicious prosecution claim under section 1983 are derived from applicable state law." *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (citation omitted). "We have stated these elements, under New York law, to be (1) commencement of a criminal proceeding, (2) favorable termination of the proceeding, (3) lack of probable cause, [16] and (4) institution of the proceedings with actual malice. *Id.* at 111-12. Based on a recent decision of the Supreme Court, "[a] plaintiff need only show that the criminal prosecution ended without a conviction," to satisfy the favorable termination element. *Thompson v. Clark*, ––– U.S. ––––, 142 S. Ct. 1332, 1341, 212 L.Ed.2d 382 (2022).

"Where a criminal prosecution concluded in acquittal on some but not all charges, the court must determine whether the charges are 'sufficiently distinct to allow a malicious prosecution claim to proceed on the charge for which there was an acquittal.'" *Jones v. City of New York*, No. 19-CV-9126, 2020 WL 1503509, at \*4 (S.D.N.Y. Mar. 27, 2020) (quoting *Janetka v. Dabe*, 892 F.2d 187, 190 (2d Cir. 1989)), *aff'd*, 846 F. App'x 22 (2d Cir. 2021). "Courts examine several factors in determining whether charges are sufficiently distinct: (1) disparity in sentencing ranges; (2) the elements of each crime; and (3) whether the crimes were related or separate acts." *Bailey v. City of New York*, 79 F. Supp. 3d 424, 447-48 (E.D.N.Y. 2015) (citation omitted). "Courts in this Circuit frequently apply *Janetka* where a plaintiff, charged with multiple [ ]counts, is acquitted on counts that arise from a distinct set of factual allegations from the counts for which he was convicted." *Dunham v. City of New York*, 295 F. Supp. 3d 319, 333-35 (S.D.N.Y. 2018) (citing, inter alia, *Ostroski v. Town of Southold*, 443 F. Supp. 2d 325, 337 (E.D.N.Y. 2006)) (*Janetka* requires a court to look at "whether the elements of each charge are different, whether one charge is a lesser included offense of the other, and whether the alleged convictions were directed at different people").

#### 2. Due Process/Fair Trial Claim

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (citations omitted). To succeed on a Section 1983 claim alleging a fair trial violation, a plaintiff must prove that "an (1) investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result." *Ross v. City of New York*, No. 17-CV-3505, 2019 WL 4805147, at \*5 (E.D.N.Y. Sept. 30, 2019) (*quoting Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)).

"Whether the proceeding was terminated in a manner indicative of innocence ... is not dispositive in the context of a section 1983 fair-trial claim." *Smalls v. Collins*, 10 F.4th 117, 138-39 (2d Cir. 2021). "Where the plaintiff asserts a section 1983 fair-

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 76 of 97

Williams v. County of Onondaga, Not Reported in Fed. Supp. (2023)

trial claim based on fabricated evidence, all that is required is that the underlying criminal proceeding be terminated in such a manner that the lawsuit does not impugn an ongoing prosecution or outstanding conviction." *Id.* at 139 (citing *McDonough v. Smith*, ––– U.S. ––––, 139 S. Ct. 2149, 2158, 204 L.Ed.2d 506 (2019)).

### 3. *Brady* Violation

**\*11**  To the extent the plaintiff alleges defendants withheld or destroyed exculpatory evidence in connection with grand jury or trial, he suggests a claim under the Supreme Court's seminal case of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1983). " ' There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.' " *Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) (citations omitted).

### 4. *Heck v. Humphrey*

Civil lawsuits may not be used to collaterally attack criminal convictions. *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck*, the Supreme Court held that a section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.* at 486-87, 114 S.Ct. 2364.

A claim is barred by *Heck* if it directly attacks the propriety of the criminal action and is inconsistent with a state court criminal conviction, "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Bowers v. Kelly*, No. 13 Civ. 06265, 2015 WL 2061582, at *3-4 (S.D.N.Y. May 4, 2015). This aspect of the *Heck* analysis standard parallels the favorable termination standard for malicious prosecution claims. *See id.; Poventud v. City of New York*, 750 F.3d 121, 130 (2d Cir. 2014) (the Supreme Court in *Heck* the Court applied " 'the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments ... to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution' ") (citations omitted).

The standard for applying *Heck* when a civil right plaintiff has been convicted of some criminal charges and acquitted of others is also similar to the standard for a malicious prosecution claim. "Where plaintiff's allegations attempt to undermine the legality of his or her entire prosecution, such that a challenge is to both the counts for which plaintiff was acquitted and for which he or she was convicted, a lawsuit will be barred by *Heck*." *Bailey v. City of New York*, 79 F. Supp. 3d 424, 448 (E.D.N.Y. 2015) (collecting cases).

### B. Analysis

All of the criminal charges in the indictment against plaintiff related to the same confrontation between plaintiff and two other individuals during the McNeilly's Pub incident. While the charges, all felonies, carried different penalties and had different elements, plaintiff's possession of a weapon was a circumstance common to both the charges on which he was acquitted and the weapons possession charge on which he was convicted. Plaintiff acknowledges his conviction on the charge of Criminal Possession of a Weapon in the Second Degree–a class C felony under N.Y. Penal Law § 265.03 which criminalizes possession of a "loaded firearm" "with intent to use the same unlawfully against another." The same conduct would relate to the other charges brought against plaintiff as a result of his exchange of gunfire with and wounding of two other individuals–attempted murder, assault, and criminal use of a weapon. Under the reasoning of cases such as *Goree v. Gunning*, 738 F. Supp. 79, 82-83 (E.D.N.Y. 1990), the plaintiff's conviction on the weapons possession charges precludes him from asserting a favorable

Williams v. County of Onondaga, Not Reported in Fed. Supp. (2023)

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 77 of 97

termination necessary to support a malicious prosecution claim on the acquitted charges, even though the offenses have different elements and carry different penalties:

> **\*12**  The resisting arrest, criminal possession of a weapon and menacing charges all arose from Goree's actions directed at [police officer] Tully during the course of Tully's attempts to arrest him, and the harassment and disorderly conduct charges arose from Goree's alleged use of abusive and obscene language and obscene gestures toward Tully immediately prior to the arrest. Moreover, although the criminal possession of a weapon in the fourth degree and menacing charges are separate offenses with elements different from the other charges, the allegations forming the bases of these charges and the resisting arrest charge are not distinct. Thus, the present case is distinguishable from *Janetka* and *Cuthrell* in that in both of those cases distinct allegations formed the bases of the different charges involved. Here, the same conduct which formed the bases for the criminal possession and menacing charges also formed the basis for the resisting arrest charge. In addition, Goree was convicted of the resisting arrest charge, one of the two class A misdemeanor charges.

*Id.*

Similar analysis supports the conclusion that plaintiff's imputed due process/fair trial claim would "impugn" his apparently ongoing criminal case and his outstanding weapons possession conviction, which would compel dismissal of that claim. Moreover, plaintiff's due process/fair trial, malicious prosecution, and *Brady* claims would all attack the propriety of the prosecution of plaintiff on all the charges against him, including the weapons possession charge on which he was convicted. Thus, those claims would be barred by *Heck v. Humphrey* unless and until that conviction was invalidated. *See, e.g.*, *Bowers v. Kelly*, 2015 WL 2061582, at *3-4 ("Plaintiff's malicious prosecution, *Brady*, fair trial and conspiracy claims all directly attack the propriety of the criminal action against Plaintiff. As they are inconsistent with his state court criminal conviction, they must be dismissed [pursuant to Heck].") [17]  *See also Amaker v. Weiner*, 179 F.3d 48, 51-52 (2d Cir. 1999) (applying Heck to claims under 28 U.S.C. §§ 1981, 1985 and 1986 that "asserted existence of a conspiracy to frame plaintiff" because they "plainly would call into question the validity of his conviction").

## IX. Conditions of Confinement

As noted above, plaintiff has complained of "cruel and unusual punishment" during his confinement by Onondaga County, alleging some specific incidents involving him, as well as a number of other general observations about conditions and practices in the county jails. Because the conditions of confinement challenged by plaintiff all occurred before he was sentenced, these claims must be addressed under the Fourteenth Amendment Due Process Clause, not the Eighth Amendment cruel and unusual punishment provisions. *See, e.g., Williams v. Savory*, 87 F. Supp. 3d 437, 452 (S.D.N.Y. 2015) ("the Eighth Amendment does not attach until after conviction and sentencing, as 'it was designed to protect those convicted of crimes' ") (citing, inter alia, *Ingraham v. Wright*, 430 U.S. 651, 664, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977)). [18]

### A. Applicable Law

**\*13**  "A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). "This means that a pretrial detainee must satisfy two prongs to prove a claim, an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong'–perhaps better classified as a 'mens rea prong' or 'mental element prong'–showing that the officer acted with at least deliberate indifference to the challenged conditions." *Id.* "Under both the Eighth and Fourteenth Amendments, to establish an

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 78 of 97

Williams v. County of Onondaga, Not Reported in Fed. Supp. (2023)

objective deprivation, 'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health.' " *Id.* at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)).

"[T]o establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment, the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety. In other words, the 'subjective prong' (or 'mens rea prong') of a deliberate indifference claim is defined objectively." Id. at 35.

### B. Analysis

### 1. Alleged Exposure to Hepatitis A

Plaintiff alleges, that in or about early 2020, while confined in the Onondaga County Justice Center:

> I was subjected to Hepatitis A, when Nap[hC]are [19] providers and Onondaga County Justice Center employees cleared an inmate to work in the inmate kitchen. This inmate tested positive for the virus before he was cleared to work in the meal preparation room. Due to the gross negligence of both county employees and employers, I was placed at risk to contract this non-curable disease I was forced to take a vaccine against my own will or be locked in (medical keep-lock) until I would allow them to put this disease in my body in a form of a vaccine.

(Compl. Supp., ¶ 89). Notably, the plaintiff does not state that he ever contracted Hepatitis A, he does not identify any individual defendants who were personally responsible for allegedly exposing him to Hepatitis A, [20] he does not reference any policy of the Justice Center or NaphCare that allegedly required him to choose between a Hepatitis A vaccination or medical isolation of some unspecified duration, [21] nor does he allege that he opposed being vaccinated on the basis of his religious beliefs or for any other constitutionally protected reason.

**\*14**  To the extent NaphCare, Onondaga County, or their employees acted with gross negligence in exposing prisoners at the Justice Center to Hepatitis A, as plaintiff alleges, that would not support a due process claim for deliberate indifference to unsafe conditions of pretrial confinement. *See Darnell v. Pineiro*, 849 F.3d at 36 ("[A]ny § 1983 claim for a violation of due process requires proof of a mens rea greater than mere negligence.... A detainee must prove that an official acted intentionally or recklessly, and not merely negligently.") (citations omitted). In any event, under section 1997e(e) of the Prison Litigation Reform Act ("PLRA"), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Gilmore v. Rivera*, No. 13 CIV. 6955, 2014 WL 1998227, at \*6 (S.D.N.Y. May 14, 2014) (quoting 42 U.S.C. § 1997e(e)). At most, plaintiff experienced "apprehension of the contraction of ...Hepatitis A" which would constitute an "emotional injur[y]" that would not support a Section 1983 claim for damages. *Id.* at 7. Similarly, any anxiety plaintiff suffered as a result of being vaccinated for Hepatitis A, in the absence of any resulting physical harm, would not support such a claim.

### 2. Alleged Disclosure of Plaintiff's Medications

Plaintiff alleges that:

Williams v. County of Onondaga, Not Reported in Fed. Supp. (2023)

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 79 of 97

On October 30, 2020, at the Onondaga County Justice Center Facility, an LPN (Jen or Erin) who works for an Nap[hC]are providers broke HIPAA laws [22] when I heard her tell Deputy Schmunk what medication I was receiving. She gave him a rundown out of my pill containers, "ibuprofen, Seroquel, BuSpar" and she only stopped once she realized I was at my cell door, watching her....

(Compl. Supp., ¶ 90). However, "[c]ourts have overwhelmingly concluded that there is no private right of action under HIPAA." *Coon v. Burkly*, No. 1:13-CV-1306, 2014 WL 1976669, at *8 (N.D.N.Y. May 15, 2014) (collecting cases). Enforcement of HIPAA is reserved exclusively to the Secretary of Heath and Human Services. *Rzayeva v. United States*, 492 F. Supp. 2d 60, 83 (D. Conn. 2007).

The Second Circuit has recognized a constitutional right, protected by the First Amendment, to " 'maintain the confidentiality of previously undisclosed medical information.' " *Mendez v. Quiros*, No. 3:16-CV-2097, 2017 WL 374462, at *3 (D. Conn. Jan. 25, 2017) (quoting *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999)). Prison officials may only "disclose medical information to the extent that disclosure relates to a 'legitimate penological interest.' " *Id.* " 'The gratuitous disclosure of an inmate's confidential medical information as humor or gossip ... is not reasonably related to a legitimate penological interest, and it therefore violates the inmate's constitutional right to privacy.' " *Id.*

The degree of protection afforded to an inmate's medical condition varies with the "sensitive" nature of the condition. *Id.* (citing *Powell*, 175 F.3d at 111). In order to state a claim for violation of the right to keep medical information confidential, the plaintiff must show that he suffers from an "unusual or sensitive medical condition that, if disclosed, would expose him to ridicule, discrimination or even violence, particularly when the word of the condition is likely to spread through 'humor or gossip[.]' " *Id.* (quoting *Powell*, 175 F.3d at 112).

Plaintiff alleges that a female employee of NaphCare, not identified by full name, began to list plaintiff's medications to a correction office, two of which–Seroquel, BuSpar–are often prescribed to address mental health issues. In *Hunnicutt v. Armstrong*, a panel of the Second Circuit held that a defendant violated the plaintiff's constitutional privacy by discussing plaintiff's "private/personal mental health issues ... in front of other prisoners and D.O.C. employees[.]" 152 F. App'x 34, 35-36 (2d Cir. 2005). Hunnicutt is readily distinguishable from this case, where the only medical information disclosed, to one correction officer, was the name of plaintiff's medications, two of which might or might not be identified as mental health medications by non-medical personnel. *See, e.g., Brooks v. Hogan*, No. 9:14-CV-477 (LEK/DJS), 2016 WL 1298137, at *3 (N.D.N.Y. Mar. 31, 2016) (inmate does not have a confidentiality interest in a list of his prescription medications).

**\*15** Moreover, as one District Court subsequently noted:

*Hunnicutt* is an unpublished summary order from 2005 and therefore, while persuasive, has no precedential effect under Rule 32.1.1(a) of the Local Rules of the Second Circuit.... Indeed, the summary order does not provide any analysis on this point.

Notably, other courts since *Hunnicutt* have concluded that an inmate's mental impairment was not so "unusual" that the disclosure of information pertaining to such condition rose to a Fourteenth Amendment violation.... Although bipolar disorder is a serious medical condition, it does not appear, in the prison context, to carry 'a social stigma equivalent to HIV/AIDS or transsexualism' ...., nor is such disclosure likely to expose an inmate 'to discrimination or intolerance.' ...

*Dash v. Mayers*, No. 19-CV-414, 2020 WL 1946303, at *4-5 (S.D.N.Y. Apr. 23, 2020) (collecting cases), *report and recommendation adopted*, 2020 WL 3057133, at *3 (S.D.N.Y. June 9, 2020) (collecting cases). [23] Indeed, plaintiff's complaint implicitly recognizes that the disclosure of his mental health medications to the correction officer was not the type of sensitive information that would subject him to stigma or harm.

**Williams v. County of Onondaga, Not Reported in Fed. Supp. (2023)**

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 80 of 97

> What if I was taking HIV or A.I.D.S. medication. It would have been spread all through the facility. Her actions violated HIPAA Laws, facility protocol, and ... place the plaintiff's life in danger by doing so.

(Compl. Supp., ¶ 90). Accordingly, this court concludes that the alleged disclosure of plaintiff's medications to one correction officer did not violate any constitutional or federal statutory right of plaintiff.

### 3. Conditions in Observation Cell

Plaintiff acknowledges that, after his trial was completed in October 2022, but before he was sentenced, he vociferously resisted the efforts of correction officers to move him to a different facility, apparently because he felt that would impede him in pursuing the habeas petition he had just filed with the federal court. (Compl. Supp., ¶¶ 75-77). [24] Plaintiff alleges that defendants Moore and Lavy threatened to call the Sheriff Emergency Response Team to force him to leave his cell and otherwise threatened him with violence. (*Id.*, ¶¶ 76-77). [25] Plaintiff then "agreed to be walked upstairs to the mental health unit...." (*Id.*, ¶¶ 78). Plaintiff further alleges:

**\*16** [U]pon my arrival to the mental health unit, I was placed in a hang proof cell and stripped of my clothes and dignity in front of everyone. I was placed in a cell that had feces and urine all over the floor and walls from the last mentally ill inmate. It was so bad that while I am naked, surrounded by deputies I told Lt. Moore to come here and he came in the cell and told them "Oh yeah, we have to clean this." This is after I had been standing in this urine, with feces everywhere. An inmate came and mopped the floor and I was sent back in there barefoot on a wet floor, the toilet, sink, mattress or walls were not cleaned.

(*Id.*, ¶ 79). Plaintiff acknowledges, that at 8:30 a.m. the next day, "I was taken out of the 'hell hole' and moved a couple of doors down. Prior to this I was given my clothes back." (*Id.*, ¶ 80).

The Second Circuit has rejected "any bright-line durational requirement for a viable unsanitary-conditions claim[,]" and has instructed that a unconstitutional unsanitary conditions claim by a prisoner "depends on both the duration and severity of the exposure." *See Willey v. Kirkpatrick, 801 F.3d 51, 68 (2d Cir. 2015)* (reversing district court's dismissal for failure to state an Eighth Amendment conditions of confinement claim where inmate plaintiff alleged that while kept naked in a strip cell, he was exposed, at a minimum, to seven days of human waste). In *Darnell v. Pineiro*, the Second Circuit vacated the judgment of the district court which had "essentially ruled that no set of conditions, no matter how egregious, could state a due process violation if the conditions existed for no more than [10] to [24] hours" and held that such ruling "was error." *Darnell, 849 F.3d 17, 37 (2d Cir. 2017)*. Instead, the court held "conditions of confinement cases must be evaluated on a case-by-case basis according to severity and duration." *Id.*

Notwithstanding *Willey* and *Darnell*, "[n]umerous courts have held that unpleasant or unsanitary conditions only rise to the level of a Constitutional violation if they amount to an objectively and sufficiently serious denial of the minimal civilized measure of life's necessities." *Anduze v. City of New York,* No. 21-CV-519, 2022 WL 4586967, at *10 (S.D.N.Y. Aug. 8, 2022), *report and recommendation adopted,* 2022 WL 4547420 (S.D.N.Y. Sept. 29, 2022). Furthermore, a plaintiff must proffer facts to show "an official's deliberate indifference to those conditions, or that ... those conditions are punitive." *Id.* (citing *Darnell, 849 F.3d at 34 n.12*).

**\*17** Plaintiff fails to specify the duration of his confinement in the allegedly filthy mental health observation cell, but it was clearly less than 24 hours. Nor does plaintiff allege that his exposure, for less than a day, to urine and feces in the cell, the floor of which was mopped as soon as he complained, presented any serious risk to his health or resulted in any adverse health consequences. These deficiencies in his pleading preclude the court from determining whether plaintiff could satisfy the

Williams v. County of Onondaga, Not Reported in Fed. Supp. (2023)

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 81 of 97

objective element of a deliberate indifference claim. *See, e.g., Figueroa v. Cty. of Rockland*, No. 16-CV-6519, 2018 WL 3315735, at *7 (S.D.N.Y. July 5, 2018) (dismissing conditions of confinement claim alleging lack of ventilation, insect infestation, and feces/bodily fluids on the walls because plaintiff did not provide details as to duration of conditions); *Grant-Cobham v. Martinez*, No. 20-CV-1947, 2020 WL 2097807, at * 3 (E.D.N.Y. May 1, 2020) (dismissing claim alleging dirty conditions at Rikers, including that other inmates threw feces at or near plaintiff because plaintiff failed to provide information about duration of condition and whether fecal matter built up to such an extent that plaintiff's health was placed at risk); *Jackson v. Sullivan Cnty.*, 16-CV-3673, 2018 WL 1582506, at *4 (S.D.N.Y. Mar. 27, 2018) (dismissing conditions of confinement claim in absence of allegations regarding severity and duration); *Hamilton v. Westchester Cnty.*, No. 18-CV-8361, 2020 WL 917214, at *7 (S.D.N.Y. Feb. 25, 2020) ("Without any additional information as to the duration of the conditions Plaintiff alleges, the Court cannot determine that they pose an objectively unreasonable risk to Plaintiff's health."), *aff'd in part, vacated in part and remanded on other grounds*, 3 F.4th 86 (2d Cir. 2021).

Based on what plaintiff has alleged, he has not satisfied the objective element of a due process claim relating to the conditions of confinement during his brief stay in the mental health observation cell. *See, e.g., Howard v. Brown*, No. 15 CIV. 9930, 2018 WL 3611986, at *5 (S.D.N.Y. July 26, 2018) (courts in this circuit have regularly held that brief exposure to human waste or sewage does not rise to the level of a constitutional violation); *Myers v. City of New York*, No. 11 Civ. 8525, 2012 WL 3776707, at *6-7, (S.D.N.Y. Aug. 29, 2012) (holding that being held for "approximately 16 hours" in a cell without air conditioning where "[t]he only place to sit ... was on 'a urine and filth laden floor' " did "not rise to the level of a constitutional violation"), *aff'd*, 529 F. App'x 105 (2d Cir. 2013); *Ortiz v. Dep't of Correction of City of New York*, No. 08 CIV. 2195, 2011 WL 2638137, at *8 (S.D.N.Y. Apr. 29, 2011) (holding that three exposures to waste for a total of "probably less than 24 hours" was "simply too limited to withstand a motion to dismiss"), *report and recommendation adopted*, 2011 WL 2638140 (S.D.N.Y. July 5, 2011).

The court in *Howard*, applying the required case-by-case analysis, distinguished the Second Circuit cases involving substantially more egregious conditions of confinement:

> Here, Howard has not plausibly alleged sufficiently serious confinement conditions. Howard alleges that he was held for "several hours" in a cell littered with "food ..., papers, urine, and other un-sanitary things," with a nonworking toilet filled with waste, and no running water or ventilation.... This case is distinguishable from the "absolutely atrocious" conditions in *Darnell*, where the plaintiffs endured, among other things, inadequate sanitation, overcrowding, inedible food, extreme temperatures, and sleep deprivation for 10 to 24 hours, 849 F.3d at 20, 23-26, 37, and the "grotesque" conditions in *Willey*, which included exposure to waste, poor ventilation, and being held naked for one to four weeks, 801 F.3d at 55, 66. Rather, the Court follows numerous other decisions holding that a brief exposure like the one alleged here does not rise to the level of a constitutional violation.

*Howard v. Brown*, 2018 WL 3611986, at *5. *See also Singleton v. City of New York*, No. 20-CV-8570, 2022 WL 4620174, at *5-6 (S.D.N.Y. Sept. 30, 2022) (plaintiff's allegation that, when transported to court and between facilities, he must sit on a transport bus that is "dirty and unsanitary with urine and defecation that's never cleaned" "and inhale filth for hours ... with no adequate ventilation" are closer to the circumstances of cases like *Howard* and distinguishable from cases like *Darnell*).

 **\*18** Plaintiff's complaint acknowledges that, apparently to avoid the use of force to overcome his resistence to being transferred out of the facility, the defendants, with plaintiff's assent, moved plaintiff to a mental health observation cell. When plaintiff complained about the condition of the cell in the mental health unit, Lt. Moore arranged for the cell floor to be mopped. And plaintiff was moved to another cell the next morning. Plaintiff's allegations do not state a plausible claim that the defendants acted intentionally, recklessly, or with the intent to punish plaintiff, but, at most, were negligent in not having the first cell cleaned more thoroughly or not moving him to another cell sooner. Accordingly, plaintiff's complaint also fails to state the mens rea element for a due process violation relating to the conditions of his confinement. *Hamilton v. Westchester Cnty.*, at *7, (plaintiff's allegations that named defendants were "on notice" of, the poor conditions in his housing unit, but "took no action," or that they conducted daily rounds and were responsible for the conditions of confinement at the jail fail to demonstrate that any defendant acted in a manner that rose above the level of negligence, which is not adequate to satisfy the objective mens rea element for a due process claim); *Figueroa v. Cnty. of Rockland*, No. 16-CV-6519, 2018 WL 3315735, at *7 (S.D.N.Y. July

Williams v. County of Onondaga, Not Reported in Fed. Supp. (2023)

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 82 of 97

5, 2018) (plaintiff merely alleges that defendants knew of the unsanitary conditions and "did not care" and "put [him] back in intake housing" after he was released from the hospital, which fails to demonstrate that defendants acted in a manner that was reckless or intentional, as opposed to merely negligent).

### 4. Other Allegations re: Conditions of Confinement

As noted, plaintiff makes other allegations regarding general conditions of confinement violating the rights other inmates. (Compl. Supp., ¶¶ 81-84). However, there are no other plaintiffs in this action, and plaintiff, because he is not a lawyer, could not represent the interests of others inmates, in this action or otherwise. *See, e.g., Machadio v. Apfel*, 276 F.3d 103, 106 (2d Cir. 2002) ("an individual who is not licensed as an attorney 'may not appear on another person's behalf in the other's cause' ") (citing *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998)).

To the extent plaintiff suggests that some of these general conditions of confinement affected him, he has not identified any specific instances or identified any particular defendants who were personally involved. Nor has plaintiff stated if or how his constitutional rights were violated by the conditions of confinement he describes. Based on the standards of pleading required by Fed. R. Civ. P. 8, discussed below, plaintiff's allegations about general conditions of confinement in Onondaga County Justice Center have not provided the defendants with adequate notice of the nature or basis of any plausible claims that plaintiff could assert against them.

### X. Claims Against Municipal Entities

It is not clear from the complaint which municipal defendants plaintiff has tried to sue. To the extent he has named, as defendants, municipal sub-entities such as the Onondaga County Attorney's Office, the District Attorney's Office, the Onondaga County Justice Center, the City of Syracuse City Attorney, or the Syracuse Police Department, they are not separate legal entities that are subject to suit. *See, e.g., Harrison v. Inc. Vill. of Freeport*, 498 F. Supp. 3d 378, 399-400 (E.D.N.Y. 2020) ("Under New York law, "departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued.") (collecting cases).

To the extent plaintiff intended to sue the municipalities, Onondaga County and the City of Syracuse, his claim would not survive initial review. In order to state a claim against a municipality or municipal agency, plaintiff must present evidence that the alleged deprivation of his constitutional rights was caused by an official custom, policy or practice. *Monell v. Dep't of Social Services*, 436 U.S. 658, 691-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To satisfy this requirement, a plaintiff may allege the existence of:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policy makers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

**\*19** *Harrison v. Inc. Vill. of Freeport*, 498 F. Supp. 3d at 398 (collecting cases). A single incident of unconstitutional activity by a municipal employee is generally insufficient to infer a custom, policy or practice as required by *Monell* to impose municipal liability. *Id.; Griffith v. Sadri*, No. CV-07-4824, 2009 WL 2524961, at \*8 (E.D.N.Y. Aug. 14, 2009) (collecting cases). Plaintiff's complaint does not make the type of *Monell* allegations sufficient to state a plausible claim of municipal liability on the part of Onondaga County or the City of Syracuse. See, e.g., *McAllister v. New York City Police Dep't*, 49 F. Supp. 2d 688, 705 (S.D.N.Y.

**Williams v. County of Onondaga, Not Reported in Fed. Supp. (2023)**

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 83 of 97

1999) ("Conclusory allegations of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a *Monell* claim, absent evidence to support such an allegation.") (collecting cases). [26]

## XI. Other Referenced Claims

Plaintiff's complaint references, in vague and/or conclusory fashion, a laundry list of other possible grounds for claims against the named defendants. ("Causes of Action," Dkt. No. 1 at 6; Compl. Supp., ¶ 91). The court has identified and addressed any possible civil rights or other federal claims remotely suggested by the factual allegations in the complaint. While the Second Circuit requires that pro se pleadings be liberally construed, "the basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike." *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004). Under Rule 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this standard, the complaint must at a minimum "disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000)). The vague "Causes of Action" section in the form complaint and conclusory paragraph 91 towards the end of the complaint supplement do not give the defendants a fair understanding of any basis for other possible civil rights claims that this court did not address above.

To the extent plaintiff references possible claims under state law, the court notes that there is no basis for diversity jurisdiction because all of the parties would appear to be citizens of New York. This court has found that plaintiff has not identified any plausible federal claim against any of the named defendants and would recommend against the exercise of supplemental jurisdiction over the state law claims summarily referenced at the end of plaintiff's complaint. See, e.g., *Lawtone-Bowles v. City of New York, Dep't of Sanitation*, 22 F. Supp. 3d 341, 352 (S.D.N.Y. 2014) ("When all federal claims are eliminated before trial, the balance of factors to be considered–including judicial economy, convenience, fairness, and comity–typically points towards declining to exercise supplemental jurisdiction over any remaining state-law claims.") (citing, inter alia, *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122-24 (2d Cir. 2006)).

## XII. Opportunity to Amend

**\*20** Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). As stated below, this court recommends that certain of plaintiff's stated or imputed claims be dismissed with prejudice because efforts to amend these claims would be futile. The court recommends that the remaining stated or imputed claims be dismissed without prejudice; but that, for claims currently barred by *Heck v. Humphrey*, plaintiff not be permitted to amend those claims unless and until his conviction is invalidated on appeal or otherwise.

PLAINTIFF IS ADVISED THAT HE SHOULD NOT ATTEMPT TO AMEND HIS COMPLAINT UNTIL SENIOR U.S. DISTRICT COURT JUDGE McAVOY RULES ON THIS COURT'S RECOMMENDATIONS WITH RESPECT TO PLAINTIFF'S ORIGINAL CLAIMS. ANY PROPOSED AMENDED COMPLAINT FILED BEFORE JUDGE McAVOY'S DECISION WITH RESPECT TO THIS COURT'S RECOMMENDATIONS WILL BE STRICKEN AS PREMATURE AND WILL NOT BE CONSIDERED BY THE COURT. As noted below, however, the plaintiff may file objections to this court's orders and recommendations.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED** for purposes of filing and any appeal, unless the trial court certifies in writing that the appeal is not taken in good faith (see 28 U.S.C. § 1915(a)(3)), and it is

**ORDERED** that the plaintiff complete and submit to the court an executed Inmate Authorization Form, a blank copy of which the Clerk will mail to plaintiff, and a certified copy of his DOCCS inmate account, and it is

**Williams v. County of Onondaga, Not Reported in Fed. Supp. (2023)**

Case 5:25-cv-00967-ECC-MJK     Document 8     Filed 08/25/25     Page 84 of 97

**RECOMMENDED**, that the following claims be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**: (1) all claims against defendant Judges, Hon. Stephen J. Dougherty and Hon. Rory A. McMahon; (2) all claims against defendant Assistant District Attorneys Jarrett Woodfork, Michael Whalen, Anthony Mangovski, and Alphonse Williams; (3) all claims based on testimony before a grand jury or at trial of defendants Officer Dallas Pelz, Arthur Stripling, Tonya Burton, Tammy McNeilly, and Sasha Thornton; (4) any claims based on violations of state or federal criminal statutes; and (5) all claims against sub-entities or departments of the City of Syracuse or County of Onondaga, New York, and it is

**RECOMMENDED,** that, to the extent the court has identified claims currently barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), those claims be **DISMISSED WITHOUT PREJUDICE, BUT WITHOUT LEAVE TO AMEND** unless and until plaintiff's criminal conviction is reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, and it is

**RECOMMENDED,** that plaintiff's remaining claims against all remaining defendants be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND,** and it is

**RECOMMENDED**, that if the District Judge adopts these recommendations, plaintiff be given forty-five (45) days to amend his complaint to the extent authorized, and that plaintiff be advised that any amended pleading must be a **COMPLETE PLEADING, WHICH WILL SUPERCEDE THE ORIGINAL**, and that plaintiff must include all the remaining facts and causes of action in the amended complaint. **No facts or claims from the original complaint may be incorporated by reference**, and it is

**RECOMMENDED**, that if the district court adopts these recommendations, and plaintiff files a proposed amended complaint, the proposed amended complaint be returned to me for review; and it is

**\*21  RECOMMENDED,** that if the district court adopts these recommendations, the Clerk of the Court shall be authorized, without further order, to dismiss the entire complaint without leave to amend if plaintiff does not file an amended complaint within the forty five (45) day deadline, or request a reasonable extension of time to do so, and it is

**ORDERED**, that while plaintiff may file objections to this Order and Report-Recommendation, he must wait for the District Court to rule on the above orders and recommendations before plaintiff submits any proposed amended pleading, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on the plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2563181

---

**Footnotes**

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 85 of 97

Williams v. County of Onondaga, Not Reported in Fed. Supp. (2023)

1    Plaintiff filed an earlier action, on February 25, 2020, which was dismissed in June 2021 without prejudice for plaintiff's failure to prosecute. (Case No. 5:20-CV-206 (TJM/ATB), Dkt. Nos. 1 (Compl.), 42 (6/10/2021 Text Order dismissing action)). Because the complaints in this action and the earlier action make many of the same allegations relating to the time period before February 25, 2020, the cases were deemed related, leading to the direct assignment of this case to District Judge McAvoy and me. (Case No. 5:22-CV-1367 (TJM/ATB), Dkt. No. 4 (12/27/2022 Text Order granting direct assignment)).

2    Because the pagination of the form complaint is not consistent, the court will reference that document with the page numbers assigned by the court's electronic docketing system, CM-ECF. The court will refer to the typed supplement to the complaint by paragraph number.

3    The court's summary includes some allegations from the complaint in the earlier action, which provides clarity on a few issues that were not as apparent from the complaint in this action.

4    *See* Compl. Supp., ¶ 76; Compl. in Case No. 5:20-CV-206, Dkt. No. 1 at 1. All references to complaint herein refer to the complaint in this action, unless the court specifically references the complaint in the earlier case.

5    As discussed below, the police had not been able to locate plaintiff by that time, so it appears that their use of the press reflected an effort to locate plaintiff so that he could be taken into custody. The news release allegedly also stated that plaintiff shot at two men in connection with the incident at McNeilly's Pub. (Compl., Dkt. No. 1 at 6).

6    Plaintiff had apparently not been sentenced on the one count of conviction by the time his complaint was submitted. The DOCCS Incarcerated Lookup website indicates that plaintiff was received into DOCCS custody at the Elmira Correctional Facility on 2/7/2023 in connection with a 15-year sentence for the offense of Criminal Possession of a Weapon 2nd. https://nysdoccslookup.doccs.ny.gov/

7    There appear to be several typographical errors with respect to dates in plaintiff's complaint, including with respect to these allegations. As noted below, plaintiff did file a habeas corpus petition in this court on October 12, 2022, so the alleged efforts to transfer him out of his cell appears to have occurred in October 2022, not October 2020.

8    This section of the complaint also includes plaintiff's general observation about various conditions of confinement affecting other inmates at the Justice Center in October 2022, which allegedly violated their constitutional rights. (Compl. Supp., ¶¶ 80-88). As discussed below, plaintiff does not specify any instances when he was personally harmed by these alleged conditions of confinement, does not identify any particular individuals who were personally involved in imposing such conditions of confinement on him, and does not explain how these conditions violated his constitutional rights.

9    Plaintiff demands in conclusory fashion that the charges against him be expunged. As it appears likely that state collateral and appellate proceedings related to his prosecution will be ongoing, this court must abstain from granting any injunctive relief that would interfere with the ongoing criminal case. *See, e.g., Gristina v. Merchan*, No. 21-CV-8608, 2022 WL 1597732, at *2 (S.D.N.Y. May 19, 2022) ("Younger abstention provides that 'federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings' " including ongoing state criminal prosecutions) (citing, inter alia, *Younger v. Harris*, 401 U.S. 37, 44-45 (1971)).

10    This discussion of the applicable law is based on Senior District Judge McAvoy's cogent summary in *Brown v. Fallon*, No. 1:21-CV-641 (TJM/ML), 2022 WL 4103998, at *5 (N.D.N.Y. Sept. 8, 2022), which in turn quotes extensively from *Anilao v. Spota*, 27 F.4th 855, 863-64 (2d Cir. 2022)

11    Plaintiff makes a conclusory allegation that his selective prosecution was motivated by his race. *Corley* held that a Section 1983 claims against a prosecutor based on vindictive or selective prosecution based on race would still be barred by absolute prosecutorial immunity. *Corley v. Vance*, 365 F. Supp. 3d at 461. The application, to plaintiff's claims, of *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), is discussed further below.

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 86 of 97

Williams v. County of Onondaga, Not Reported in Fed. Supp. (2023)

12    As discussed below, any civil rights claims against the civilian defendants would also be subject to dismissal for lack of "state action" and plaintiff may not predicate civil rights violations on criminal statutes such as those outlawing perjury.

13    "The elements of a § 1983 conspiracy claim for deprivation of civil rights include, (1) an agreement between two or more state actors, or a state actor and a private entity, (2) to act in concert to inflict constitutional injury, [and] (3) an overt act done in furtherance of the goal of causing damages." *McCray v. City of New York*, No. 03-CV-1008, 2007 WL 4352748, at *23 (S.D.N.Y. Dec. 11, 2007) (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).

14    Plaintiff's Third Cause of Action in the handwritten portion of his complaint referenced malicious prosecution and denial of a fair trial. (Compl., Dkt. No. 1 at 6). Towards the end of the supplement to his complaint, plaintiff also invoked "wrongful arrest." (Compl. Supp., ¶ 91).

15    To the extent plaintiff suggests a false arrest claim, such a claim is defeated if probable cause supports the arrest on some charge. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (collecting cases). If, following the arrest, the plaintiff was convicted of the charges against him, that conviction normally "would be conclusive evidence of probable cause." *Id.* (citation omitted). Given that plaintiff's conviction on at least one offense has not been invalidated, he cannot state a viable claims for false arrest on the current record. *Cf. Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 428 (S.D.N.Y. 2012) ("When a [§] 1983 plaintiff pleads guilty to the underlying or lesser included charge, this fact alone provides sufficient evidence that probable cause existed at the time of the arrest and precludes a false arrest claim under [§] 1983.") Moreover, a claim for false arrest can only be based on police conduct before the defendant is subject to arrest or other judicial process. *Wallace v. Kato*, 549 U.S. 384, 388-90, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) (a claim for false arrest or imprisonment "ends once the victim becomes held pursuant to ... process–when, for example, he is bound over by a magistrate or arraigned on charges.... Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution"). Because most of plaintiff's allegations of misconduct by the defendants occurred after the start of formal criminal proceedings, malicious prosecution and due process/fair trial claims, not false arrest claims, are his most tenable causes of action.

16    While an indictment may ordinarily be conclusive evidence of probable cause, that presumption may be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith. *See Manganiello v. City of New York*, 612 F.3d 149, 162 (2d Cir. 2010).

17    *Bowers* also noted: "The dismissal is without prejudice, but the claims may be reasserted only if the state court conviction is overturned, as the Supreme Court described in *Heck*." *Id.*

18    To pursue Section 1983 claims regarding the conditions of his confinement, plaintiff was first obligated to exhaust available administrative remedies at the facility where he was incarcerated. *See, e.g., Rodriguez v. Heit*, No. 9:16-CV-706 (GTS/ATB), 2018 WL 3121626, at *2-4 (N.D.N.Y. Mar. 30, 2018), *report and recommendation adopted*, 2018 WL 2316687 (N.D.N.Y. May 22, 2018). However, failure to exhaust administrative remedies is an affirmative defense. Thus, unless it is unmistakably clear from the face of the complaint that administrative remedies were available and had not been exhausted, "it is bad practice for a district court to dismiss without affording a plaintiff the opportunity to be heard in opposition." *See, e.g., Carolina v. Feder*, No. 3:20-CV-658, 2021 WL 268854, at *10 (D. Conn. Jan. 26, 2021), *reconsideration denied*, 2021 WL 723534 (D. Conn. Feb. 24, 2021).

19    Based on other litigation in this District, the court is aware that a company named NaphCare, Inc. was a contractor who, for a time, provided medical care to inmates in Onondaga County corrections facilities. (N.D.N.Y. Case No. 5:22-CV-1165 (BKS/TWD), Compl., ¶ 15, Dkt. No. 1 at 4). The court will assume, without deciding, that NaphCare and its employees are state actors for the purposes of claims under Section 1983. *See Caballero v. Shayna*, No. 18-CV-1627, 2019 WL 2491717, at *3 (E.D.N.Y. June 14, 2019) (for the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: "(1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the

Williams v. County of Onondaga, Not Reported in Fed. Supp. (2023)

Case 5:25-cv-00967-ECC-MJK    Document 8    Filed 08/25/25    Page 87 of 97

joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test').") (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)).

20    It has long been established that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted).

21    As discussed further below, in order to establish liability of a municipality pursuant to 42 U.S.C. § 1983 for violation of civil or constitutional rights, a plaintiff must allege that the municipality "has adopted a 'custom' or 'policy' which is the 'moving force' behind [the violation]." *Monell v. Dep't of Social Services*, 436 U.S. 658, 691-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

22    "HIPAA" is the commonly-used acronym for the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320 et seq., which requires health care providers to keep patient medical records confidential.

23    The numerous cases cited in the *Dash* opinions establish that the majority rule among district courts in this Circuit is that disclosure of mental health information does not violate a prisoner's privacy rights. *See also, Flores v. City of New York*, No. 21-CV-1680, 2022 WL 4705949, at *22 (S.D.N.Y. Aug. 8, 2022), *report and recommendation adopted*, 2022 WL 4592892 (S.D.N.Y. Sept. 30, 2022)) ("Courts within the Second Circuit have declined to recognize a claim for violation of medical privacy with regard to disclosure of mental health disorders because such disclosure was not likely to expose an inmate to discrimination or intolerance.") (collecting cases). *Cf. Medina v. Watson*, No. 3:16-CV-2061, 2017 WL 62512, at *2 (D. Conn. Jan. 5, 2017) (following *Hunnicutt*).

24    That habeas petition was dismissed sua sponte on October 26, 2022, shortly after it was filed on October 12th, because plaintiff had not been sentenced and had not exhausted his state court remedies, as required before he could pursue any federal habeas petition. (N.D.N.Y. Case No. 9:22-CV-1054 (GLS), Dkt. Nos. 1, 4, 5). The docket reflects that plaintiff was able to correspond with the court between October 12th and October 26th and that nothing served by the court on the plaintiff was returned as undeliverable. (*Id.*, Dkt. Nos. 2, 3). Hence, there is no basis for plaintiff to contend that the alleged efforts of Onondaga County correction officials to transfer him interfered with his access to courts or obstructed his ability to pursue his habeas petition. *See, e.g., Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995) ("To state a valid § 1983 claim that he has been denied reasonable access to the courts, [plaintiff] must show that the alleged deprivation actually interfered with his access to the courts or prejudiced an existing action.") Plaintiff filed a prior habeas petition in June 2020 that was also dismissed in September 2021 as premature for failure to exhaust state remedies. (N.D.N.Y. Case No. 9:20-CV-660 (LEK), Dkt. Nos. 1, 13, 14).

25    "Because Plaintiff alleges nothing beyond mere threats of force, [any] excessive force claim [would] fail[ ]." *Pelt v. City of New York*, No. 11-CV-5633, 2013 WL 4647500, at *13 (E.D.N.Y. Aug. 28, 2013) ("[T]hreat[s] of force ... do [ ] not support an excessive force claim.") (collecting cases).

26    Plaintiff arguably makes allegations suggesting a policy or practice when he addresses the general conditions of confinement in the Onondaga County Justice Center involving restrictive confinement and visitation practices. (Compl. Supp., ¶¶ 81-83). As noted above, however, plaintiff fails to allege how these allege practices affected him or violated any of his constitutional rights.

---

**End of Document**                                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 713295
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jomo WILLIAMS, Plaintiff,

v.

DOES, et al., Defendants.

CIVIL ACTION NO.: 24 Civ. 4794 (PAE) (SLC)

|

Signed January 30, 2025

**Attorneys and Law Firms**

Jomo Williams, New York, NY, Pro Se.

Miranda Onnen, Office of the New York State Attorney General, New York, NY, for Defendants.

## REPORT AND RECOMMENDATION

SARAH L. CAVE, United States Magistrate Judge.

**\*1  TO THE HONORABLE PAUL A. ENGELMAYER**, United States District Judge.

## I. INTRODUCTION

Pro se Plaintiff Jomo Williams asserts claims under 42 U.S.C. § 1983 alleging that Defendants Erlon Hodge and Theresa Daniel denied him access to the New York State courts in violation of his First and Fourteenth Amendment rights. (ECF Nos. 1; 18). Mr. Williams also names as a defendant BSREP UA 3333 Broadway LLC ("BSREP"), but it has neither been served nor otherwise appeared in this action. Hodge and Daniel move to dismiss the Complaint with prejudice. (ECF No. 37 (the "Motion")).

We respectfully recommend that: (i) the Motion be granted; (ii) BSREP be dismissed pursuant to Federal Rule of Civil Procedure 21; (iii) this action be dismissed with prejudice and without leave to amend; and (iv) that all other of Mr. Williams' pending requests be denied as moot.

## II. BACKGROUND

### A. Factual Background

In several hundred pages of filings, over two hundred of which consist of the Complaint (ECF No. 1) and the Amended Complaint (ECF No. 18 (together, the "Complaint")), [1] Mr. Williams complains of systemic discrimination and disadvantages based on race, socioeconomic status, and other characteristics. A federal case, however, is a limited affair not suitable for carte blanche grievance against the world and, as best we can discern from the Complaint, Mr. Williams filed this action to remedy the alleged denial of his right to access a New York State court. (ECF No. 1 at 2, 5–6, 8).

To set the scene, after Mr. Williams allegedly failed to pay rent on an apartment, he and BSREP became involved in adversarial housing proceedings in New York State courts (the "State Courts"). [2] (ECF No. 18 at 5–23 (the "Housing Matters")). [3] Mr.

Williams complained, among other things, that BSREP imposed or contributed to the allegedly improper living conditions he experienced because of his race and socioeconomic status. (Id.) Throughout the Complaint, Mr. Williams appended documents he submitted in the State Courts in the Housing Matters. (See generally ECF Nos. 1; 18).

In June 2023, Mr. Williams attempted to file a petition and other documents in the State Courts using the New York State Courts Electronic Filing System ("NYSCEF") without the prepayment of fees. (ECF No. 1 at 72). Daniel, a management analyst in the E-filing Division of the New York State Office of Court Administration ("OCA"), emailed Mr. Williams to inform him that his petition was deleted from the system because a "[p]oor person application cannot be done on NYSCEF." (Id. at 32). Daniel further explained that Mr. Williams needed first to "obtain a court order granting [him] poor person status BEFORE [he was] permitted to file" a petition. (Id. (emphasis in original)).

**\*2** About a year later, in June 2024, Mr. Williams attempted to file in the State Courts a second petition, to which he attached his first petition, by sending it to several email addresses, at least one of which appears to connect to an emergency relief docket. (Id. at 15; 72). After several days without acknowledgment of this filing, Mr. Williams filed his second petition on NYSCEF. (Id. at 15–17). Mr. Williams was later notified that his second petition could not be processed. (Id. at 17). After additional administrative back-and-forth regarding his second petition, Hodge, another OCA management analyst, emailed Mr. Williams, informing him that the State Courts "require[ ] for a Poor Person Application to be filed at the court in person ... [p]rior to commencement" of an action without the prepayment of fees. (Id. at 31). "Once the order is signed[,] then you can file the signed order and your comm[e]nceme[n]t [d]ocuments." (Id.) Mr. Williams alleges that he then submitted his documents to the State Courts' pro se office, which did not respond. (Id. at 21–22).

Mr. Williams claims that the emails from Daniel and Hodge, informing him that he was required to receive a signed order before commencing an action in the State Courts without the prepayment of fees, signaled "tacit approvals" of and amounted to denial of his access to the State Courts. (ECF No. 1 at 22).

In the Amended Complaint, Mr. Williams added allegations that, because he was denied access to the State Courts, he should be able to pursue his underlying claims against BSREP in this Court. (ECF No. 18 at 5). To that end, Mr. Williams repeated the allegations he made against BSREP in the State Courts. (See generally ECF No. 18).

The relief Mr. Williams seeks includes: (i) an order compelling Hodge and Daniel to "accept" his "CPLR 1101 Application via electronic means to allow him to proceed in the e-filing" of his second petition in the State Courts; (ii) an order tolling "all deadlines and statutes of limitations that may have expired due to this instant unequal access to the court matter"; and, (iii) damages of $50 million. (ECF No. 1 at 6).

### B. Procedural Background

On June 18, 2024, Mr. Williams filed the Complaint against various unidentified "Doe" defendants. (ECF No. 1). The Honorable Paul A. Engelmayer granted Mr. Williams' request to proceed in forma pauperis and directed the Clerk of Court to: (i) add Hodge and Daniel as defendants in the case, pursuant to Rule 21; (ii) drop all unidentified defendants from the action without prejudice under the same Rule; and (iii) effect service of process on Hodge and Daniel. (ECF No. 9). The Clerk of Court issued the summonses for Hodge and Daniel and mailed an information package to Mr. Williams. (ECF Nos. 10; 11). Judge Engelmayer then granted Mr. Williams' request for permission to utilize electronic case filing in this action and referred the case for general pretrial supervision. (ECF Nos. 15; 16). The United States Marshals Service ("USMS") served Hodge and Daniel with the Complaint and summonses. (ECF Nos. 20; 21). On August 12, 2024, Mr. Williams filed the Amended Complaint. (ECF No. 18).

Although Mr. Williams does not clearly define his claims, we construe his Complaint as asserting three claims: (i) a § 1983 claim based on denial of his right to access the State Courts under the First Amendment (the "Access to Courts Claim"); (ii) a § 1983 claim based on violation of his equal protection rights under the Fourteenth Amendment (the "Equal Protection Claim"); and, (iii) purported criminal claims against Defendants (the "Criminal Claims").

On October 25, 2024, Hodge and Daniel filed the Motion, which Judge Engelmayer referred for a report and recommendation. (ECF Nos. 37; 41). After Hodge and Daniel filed the Motion—and between Mr. Williams' various other lengthy filings and requests for relief—the Court ordered Mr. Williams to file a response to the Motion, granted him several extensions of time to do so, and warned him each time that failure to respond would result in the Court ruling on the Motion based on the Complaint and Defendants' submissions alone. (ECF Nos. 44; 47; 50; 52; 56).

**\*3**  On December 30, 2024, Mr. Williams filed a document labeled as his response to the Motion, which does address some of Defendants' arguments (ECF No. 60), so the Court deemed that submission Mr. Williams' opposition to the Motion. (ECF No. 62). Hodge and Daniel then filed a reply. (ECF No. 66). [4]

## III. JURISDICTION AND VENUE

Personal jurisdiction and venue are uncontested. As discussed below, Hodge and Daniel challenge the Court's subject matter jurisdiction over Mr. Williams' claims.

## IV. STANDARDS OF REVIEW

### A. Federal Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). [5] Mr. Williams' Access to Courts and Equal Protection Claims trigger the Court's federal question jurisdiction under 28 U.S.C. § 1331, which grants federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." [6] Mr. Williams asserts those claims pursuant to a federal statute, 42 U.S.C. § 1983. (See ECF Nos. 1; 18). Section 1983 provides a vehicle for judicial relief to civil litigants who allege a "person who, under color of any statute, ordinance, regulation, custom, or usage of any State" subjected them to the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983.

Hodge and Daniel move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) on the ground that the Eleventh Amendment deprives the Court of subject matter jurisdiction and shields them from suit under the doctrine of sovereign immunity, and under Rule 12(b)(6) on the ground that Mr. Williams fails to state a claim against them. (ECF Nos. 38; 66).

### B. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008). A court may properly refer to matters outside the pleadings when considering the existence of jurisdiction on a Rule 12(b)(1) motion. See Kamen, 791 F.2d at 1010–11.

On a motion to dismiss under Rule 12(b)(1), "the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both." Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 (2d Cir. 2001). A challenge to the legal sufficiency of jurisdiction is "based solely on the allegations of the complaint or the complaint and exhibits attached to it," and thus "plaintiffs have no evidentiary burden, for both parties can be said to rely solely on the facts as alleged in the plaintiffs' pleading." Katz v. Donna Karan Co., LLC, 872 F.3d 114, 119 (2d Cir. 2017). When a defendant makes a factual challenge, however, the defendant can "proffer[ ] evidence beyond the plaintiffs' pleading." Id. (cleaned up). Plaintiffs opposing such a motion must "come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on

the allegations in their pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." Id. (cleaned up).

### C. Rule 12(b)(6)

**\*4** A complaint survives a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if "the facts, taken as true and with all reasonable inferences drawn in the plaintiff's favor, state a plausible claim to relief." Sharikov v. Philips Med. Sys. MR, Inc., 103 F.4th 159, 166 (2d Cir. 2024). Although a district court must accept a plaintiff's "well-pleaded factual allegations" as true, this obligation is "inapplicable to legal conclusions, such as threadbare recitals of the elements of a cause of action that are supported by mere conclusory statements." Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 n.3 (2007)).

The Court "construe[s] a pro se complaint liberally," Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), by "reading such submissions 'to raise the strongest arguments they suggest.' " Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Pro se litigants, however, "remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in Twombly and Iqbal." Brickhouse v. City of N.Y., No. 09 Civ. 9353 (NRB), 2010 WL 3341845, at *2 (S.D.N.Y. Aug. 16, 2010).

Although Mr. Williams responded in some form to the Motion, any failure on his part to oppose particular arguments Defendants make in the Motion does not alone merit dismissal of the Complaint. See Goldberg v. Danaher, 599 F.3d 181, 183–84 (2d Cir. 2010); McCall v. Pataki, 232 F.3d 321, 322–23 (2d Cir. 2000). "[T]he sufficiency of a complaint is a matter of law that the [C]ourt is capable of determining based on its own reading of the pleading and knowledge of the law. If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." Goldberg, 599 F.3d at 184 (citing McCall, 232 F.3d at 322–23).

## V. DISCUSSION

To bring some order to the parties' filings, we first discuss Hodge and Daniel's invocation of Eleventh Amendment immunity followed by their arguments that Mr. Williams fails to state a claim. We will then turn to Mr. Williams' allegations concerning BSREP and whether leave to amend the Complaint is appropriate. Finally, we will discuss Mr. Williams' other pending requests for relief.

### A. Eleventh Amendment Immunity

Mr. Williams argues that he brings his claims "against all in their [ ] available capacities." (ECF No. 60 at 17). We interpret that statement to mean Mr. Williams asserts his claims against Hodge and Daniel in both their official and individual capacities. To the extent Mr. Williams seeks monetary relief against them in their official capacities as employees of the State Courts, Hodge and Daniel argue the Eleventh Amendment shields them from Mr. Williams' request for monetary relief. They are correct.

#### 1. Legal Standard

The Eleventh Amendment to the United States Constitution prohibits the "[j]udicial power of the United States" from extending to "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, "as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity" or Congress has "abrogate[d] the states' Eleventh Amendment immunity ... pursuant to its authority under Section 5 of the Fourteenth Amendment." Woods v. Rondout Valley Cent. Sch. Dist. Bd. Of Educ., 466 F.3d 232, 236 (2d Cir. 2006). "The immunity recognized by the Eleventh Amendment

extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." Id. A suit against an individual state official in his or her official capacity "is no different from a suit against the State itself[,]" and is thus barred by the Eleventh Amendment. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).

**\*5**    "The Eleventh Amendment does not bar all claims against officers of the State, even when directed to actions taken in their official capacity and defended by the most senior legal officers in the executive branch of the state government." Fla. Dep't of State v. Treasure Salvors, Inc., 458 U.S. 670, 684 (1982). A suit seeking only prospective injunctive relief against a state official—as opposed to retrospective monetary damages—is permissible notwithstanding the Eleventh Amendment. See Ex parte Young, 209 U.S. 123, 155–56 (1908) (collecting authorities supporting principle that a federal court has equitable jurisdiction to enjoin state officers from engaging in an act that violates the United States Constitution); see also P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (explaining that "Young and its progeny render the [Eleventh] Amendment wholly inapplicable to a certain class of suits"); Henrietta D. v. Bloomberg, 331 F.3d 261, 287 (2d Cir. 2003) (noting that the "Eleventh Amendment ... does not preclude suits against state officers in their official capacity for prospective injunctive relief to prevent a continuing violation of federal law").

In addition, the Eleventh Amendment does not preclude a suit for monetary damages against state officials in their individual capacities. See Alden v. Maine, 527 U.S. 706, 757 (1999) (explaining that "a suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally"); Hafer v. Melo, 502 U.S. 21, 25–31 (1991) (holding that state officers may be held personally liable for damages for actions in their official capacities).

### 2. Application

Because "New York State has not waived its sovereign immunity[,] [n]or has Congress, through § 1983, abrogated the state's immunity," Johnson v. New York, No. 10 Civ. 9532 (DLC), 2012 WL 335683, at \*1 (S.D.N.Y. Feb. 1, 2012) (citing Santiago v. N.Y. State Dep't of Corr. Servs., 945 F.2d 25, 31 (2d Cir. 1991)), the Eleventh Amendment bars Mr. Williams' claims for monetary relief against Hodge and Daniel in their official capacities. See A.G. v. Green, No. 22 Civ. 6146L, 2023 WL 2573324, at \*1 (W.D.N.Y. Mar. 20, 2023) (dismissing claims that sought only monetary relief against state official in his official capacity); Day v. Gallagher, 151 F. Supp. 3d 253, 255 (D. Conn. 2015) (dismissing claims for money damages against all defendants in their official capacities); Clark v. Tosco Corp., No. Civ. A. 300CV1016JCH, 2000 WL 33116539, at \*2 (D. Conn. Oct. 17, 2000) (same).

Accordingly, the Court lacks subject matter jurisdiction over Mr. Williams' claims to the extent that they seek monetary damages against Hodge and Daniel in their official capacities. [7]

### B. Failure to State a Claim

To the extent that Hodge and Daniel might be subject to liability in their individual capacities, the Complaint, liberally construed, asserts only the Access to Courts and Equal Protection Claims against them. (See § II.B., supra; see generally ECF Nos. 1; 18). Mr. Williams has not, however, plausibly alleged all the elements of those claims. In addition, Mr. Williams' Criminal Claims are frivolous or lack merit. (Id.) Because Mr. Williams fails to state a claim under any theory, we respectfully recommend that the Motion be granted, and that the Complaint be dismissed.

### 1. Access to Courts Claim

**\*6**    "In order to establish a violation of the right to access the courts, the plaintiff must demonstrate that the alleged deprivation actually interfered with his access to the courts or prejudiced an existing action. In addition, [a p]laintiff must demonstrate that

an 'actual injury' resulted from the denial of access to the courts." Posr v. Dolan, No. 02 Civ. 659 (LBS), 2003 WL 22203738, at *4 (S.D.N.Y. Sept. 23, 2003). "[I]n order to survive a motion to dismiss, a plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim." Id.

Nothing in the Complaint plausibly alleges that Hodge and Daniel's conduct was deliberate and malicious. After Mr. Williams attempted to initiate an action in the State Courts without the prepayment of fees, Hodge and Daniel each sent a separate notice to Mr. Williams that informed him that the State Courts required him to seek an order to proceed without the prepayment of fees before commencing his action. (ECF No. 1 at 31; 32). Because Mr. Williams did not initiate an action in the State Courts pursuant to the State Courts' rules and practices, Hodge and Daniel merely informed him of the steps he needed to take. (Id.) No reading of the Complaint, even liberally construed, plausibly shows that Hodge and Daniel's conduct was a deliberate and malicious attempt to deny Mr. Williams access to the State Courts. To the contrary, the only plausible inference from Mr. Williams' allegations is that Hodge and Daniel facilitated his access to the State Courts by explaining the requirements for his filings. Accordingly, we respectfully recommend dismissing Mr. Williams' Access to Courts Claim.

### 2. Equal Protection Claim

Mr. Williams also mentions the Equal Protection Clause of the Fourteenth Amendment as it relates to his alleged denial of access to the State Courts. (ECF No. 1 at 2). "To prove an equal protection violation, claimants must prove purposeful discrimination, directed at an identifiable or suspect class." Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995). Assuming for purposes of the Motion that Mr. Williams plausibly alleged membership in a suspect class, the Complaint does not plausibly allege that Mr. Williams was subjected to purposeful discrimination based on race, income, disability, or any other protected characteristic. New York law requires any person who wishes to initiate an action without the prepayment of fees to first ask the State Courts for permission to do so. See N.Y. C.P.L.R. § 1101. Hodge and Daniel simply informed Mr. Williams of that generally applicable requirement. (ECF No. 1 at 31; 32). A fair reading of the Complaint suggests that Mr. Williams would have been allowed to initiate an action in the State Courts without the prepayment of fees if he had followed the instructions for doing so. Mr. Williams has not plausibly alleged that he suffered purposeful discrimination relating to his alleged denial of access to the courts and, therefore, we respectfully recommend dismissing his Equal Protection Claim. Cf. Todd v. Dulce, No. 13 Civ. 5421 (NGG), 2015 WL 4488455, at *8 (E.D.N.Y. July 22, 2015) (rejecting Fourteenth Amendment access to courts argument in the habeas corpus context where the New York State court denied a pro se plaintiff poor person status to pursue his appeal); San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 24 (1973) ("At least where wealth is involved, the Equal Protection Clause does not require absolute equality or precisely equal advantages.").

### 3. Criminal Claims

*7 Mr. Williams references thirteen criminal statutes and purports to bring criminal claims against Hodge and Daniel for violating those statutes. [8] Hodge and Daniel argue that because Mr. Williams' claims alleging violations of those criminal statutes are "based on an indisputably meritless legal theory," they should be dismissed as frivolous. (ECF Nos. 38 at 16–18; 66 at 10). Specifically, they contend that Mr. Williams: (i) improperly directed his claims against them; (ii) lacks a private right of action; and (iii) failed to plead his claims with particularity. (ECF No. 66 at 10).

The Court is required to dismiss claims that are frivolous or malicious. See 28 U.S.C. § 1915(e)(2)(B)(i). A claim is "frivolous" when either: (1) the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy;" or (2) "the claim is 'based on an indisputably meritless legal theory.' " Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998); Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). "A claim is based on an 'indisputably meritless legal theory' when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." Livingston, 141 F.3d at 437.

Mr. Williams' purported criminal claims against Hodge and Daniel both lack an arguable basis in law and raise dispositive defenses. Four of the criminal statutes Mr. Williams identifies—42 U.S.C. § 3631, N.Y. Real Prop. Acts. Law § 768, N.Y. Penal L. § 20.20, N.Y.C. Admin. Code § 26-523—relate to violations of Mr. Williams' housing rights or apply only to corporations. They are facially inapplicable to Hodge and Daniel. As to the two perjury statutes, N.Y. C.P.L.R. § 2106 and N.Y. Penal L. § 210, Hodge and Daniel are correct that "[i]n New York, there is no civil action for perjury." Campaign v. Esterhay, 61 Misc. 3d 662, 667 (N.Y. Sup. Ct. 2018) (citing Verplanck v. Van Buren, 76 N.Y. 247, 261 (1879)).

Moreover, and as to the remaining criminal statutes Mr. Williams cites, "[i]t is well-settled that, unless specifically provided for, federal criminal statutes rarely create private rights of action." Daniel v. Safir, 135 F. Supp. 2d 367, 376 (E.D.N.Y. 2001) (citing Chrysler Corp. v. Brown, 441 U.S. 281, 316 (1979)). Mr. Williams lacks such private rights of action here. See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 511 (2d Cir. 1994) (discussing 18 U.S.C. § 242); Keady v. Nike, Inc., 116 F. Supp. 2d 428, 435 (S.D.N.Y. 2000) (discussing 18 U.S.C. § 241); Greenblatt v. Richard Potasky Jewelers, No. 93 Civ. 3652 (LMM), 1994 WL 9754, at *4 n.4 (S.D.N.Y. Jan. 13, 1994) (discussing 18 U.S.C. § 371); Zietek v. Pinnacle Nursing and Rehab Center, No. 21 Civ. 5488, 2024 WL 243436 (AT) (JLC), at *2, n.4 (S.D.N.Y. Jan. 23, 2024) (discussing 18 U.S.C. §§ 1701 and 1702). Mr. Williams merely references the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, but he has not plausibly advanced a RICO claim by alleging with particularity that he was "injured in his business or property by reason of a RICO violation[,]" Alix v. McKinsey & Co., Inc., 23 F.4th 196, 200 (2d Cir. 2022), so—to the extent he is able to and did attempt to assert a RICO claim—it also fails. [9]

**\*8** Accordingly, we respectfully recommend dismissing the Criminal Claims.

### C. Qualified Immunity

Hodge and Daniel argue that they are shielded from Mr. Williams' claims by qualified immunity. (ECF No. 38 at 14–15). Having determined that Mr. Williams has failed to state any plausible claim, however, we need not address the more difficult question of whether qualified immunity applies here. See Porath v. City of N.Y., No. 22 Civ. 1302 (JPC) (SLC), 2023 WL 9197680, at *14 (S.D.N.Y. Dec. 21, 2023), adopted by, 2024 WL 127025 (S.D.N.Y. Jan. 11, 2024); Steele-Warrick v. Microgenics Corp., No. 19 Civ. 6558 (FB) (VMS), 2023 WL 3081290, at *11 (E.D.N.Y. Apr. 26, 2023) (declining to address qualified immunity argument with respect to claims that were not plausibly alleged); DeMeo v. Koenigsmann, No. 11 Civ. 7099 (HBP), 2015 WL 1283660, at *18 (S.D.N.Y. Mar. 20, 2015) ("Because plaintiff has failed to state claims on which relief can be granted against Dr. Holder, I need not address the defendants' argument that he is entitled to qualified immunity.").

### D. BSREP

Mr. Williams seeks "removal" to this Court of the claims he purportedly made against BSREP in the State Courts, where he lodged a litany of allegations against BSREP concerning housing conditions. (ECF No. 18 at 3–23, 28). BSREP has not been served and has not appeared in this action. Mr. Williams does not claim, however, that BSREP denied him access to the State Courts; rather, he contends that because Hodge and Daniel allegedly denied him access to the State Courts, his underlying claims against BSREP should be heard here. We disagree.

"At any time, on just terms," the Court, on its own motion, may "add or drop a party." Fed. R. Civ. P. 21. "A court has broad discretion in determining whether to add or drop parties, ... which is guided by principles of fundamental fairness and judicial efficiency." BBK Tobacco & Foods, LLP v. 7th St. Vill. Farm Inc., No. 17 Civ. 4079 (GHW), 2017 WL 8723938, at *1 (S.D.N.Y. June 15, 2017); Williams v. Does, No. 24 Civ. 4794 (PAE), 2024 WL 3723052, at *1 (S.D.N.Y. July 16, 2024); (ECF No. 9). When evaluating motions brought under Rule 21, courts have considered "(1) whether severance would serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence." See Golden Goose Deluxe Brand v. Aierbushe, No. 19 Civ. 2518 (VEC), 2019 WL 2162715, at *2 (S.D.N.Y. May 16, 2019) (citing Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A., 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008)); see also In re Merrill

Lynch & Co., Inc. Research Reports Secs. Litig., 214 F.R.D. 152, 154–55 (S.D.N.Y. 2003). Hodge and Daniel were added to this action pursuant to Rule 21 (ECF No. 9 at 2–3), and we recommend dismissing BSREP as a party pursuant to the same rule.

To the extent that any of the claims against Hodge and Daniel were to continue, dismissing BSREP from this case would be in the interest of judicial economy. First, Mr. Williams' allegations against BSREP concerning housing violations do not arise out of the same transaction or occurrence as his claims against Hodge and Daniel. The Complaint is focused entirely on Mr. Williams' claim that the State Courts' requirement for litigants to make an application to proceed without the prepayment of fees before commencing an action amounted to the denial of his right of access. (ECF No. 1 at 5–6). The Complaint merely reasons that because Mr. Williams was allegedly unable to commence an action against BSREP in the State Courts he can bring that action here instead.

 **\*9**  Second, Mr. Williams has not plausibly alleged this Court's subject matter jurisdiction over his claims against BSREP. More specifically, Mr. Williams has not plausibly alleged that BSREP is a state actor that deprived him of his rights under the Constitution or any statute, and the Complaint lacks allegations sufficient to state any other plausible claim against BSREP under this Court's federal question or diversity jurisdiction.

We therefore respectfully recommend that, if the claims against Hodge and Daniel were to continue, BSREP be dismissed from this action pursuant to Rule 21. Cf. McGee v. State Farm Mut. Auto. Ins. Co., 684 F. Supp. 2d 258, 262 (E.D.N.Y. 2009) (sua sponte exercising discretion under Rule 21 to dismiss parties).

### E. Leave to Amend
Mr. Williams has not requested leave to amend and we respectfully submit that no such leave is warranted.

"It is the usual practice upon granting a motion to dismiss to allow leave to replead." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991); see also Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Leave to amend may be denied, however, "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014). "Although district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings, leave to amend need not be granted when amendment would be futile." Terry v. Inc. Vill. of Patchogue, 826 F.3d 631, 633 (2d Cir. 2016). "Where it appears that granting leave to amend is unlikely to be productive ... it is not an abuse of discretion to deny leave to amend." Apotex Inc. v. Acorda Therapeutics, Inc., 823 F.3d 51, 62 (2d Cir. 2016) (quoting Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)).

Mr. Williams made two attempts at pleading viable claims and received the benefit of the Court considering them together as a single Complaint. Mr. Williams also submitted a lengthy response to the Motion. (ECF No. 60). In the hundreds of pages that comprise the Complaint and his opposition, liberally construed, Mr. Williams was not able to allege a single plausible claim and there is no indication he could do so if given the opportunity to replead. Leave to amend would be futile and is therefore not warranted. See Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999) ("[W]here [a] plaintiff is unable to demonstrate he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied.").

### F. Mr. Williams' Other Pending Requests
Mr. Williams filed numerous other requests for relief both before and after Hodge and Daniel filed the Motion. They include, among others: a request for the USMS to serve 106 people and entities (ECF Nos. 24; 26); a temporary restraining order and preliminary injunction enjoining Defendants from (i) "remanding [this] case to state court[,]" and withholding state court records and an induction stove from his home, (ii) ordering "access to [a] judge to sign [Mr. Williams'] criminal complaints" against Defendants, and (iii) consolidating this case with another of Mr. Williams' cases (ECF Nos. 29; 31); a response to Mr. Williams' purported order to show cause why he has not immediately received his requested relief (id.); an order of protection and to show cause based on Mr. Williams' allegations concerning "Project 2025" and several other groups and federal offices (ECF Nos. 33; 43); an application for pro bono counsel (ECF No. 46), which the Court held in abeyance pending a decision

on the Motion (ECF No. 47); a motion for reconsideration under Federal Rule of Civil Procedure 60, "seeking correction of clerical mistakes, relief from dismissal based on inadvertence or neglect, and addressing misconduct by opposing parties in the handling of the CVRA case" (ECF No. 58; see also ECF Nos. 54; 55); and additional requests to proceed in forma pauperis in this Court and on appeal (ECF Nos. 63–65).

**\*10**  If the Court dismisses the Complaint, we respectfully recommend denying all other of Mr. Williams' pending requests as moot in light of the Court's decision on the Motion.

## VI. <u>CONCLUSION</u>

Accordingly, we respectfully recommend that: (i) the Motion (ECF No. 37) be **GRANTED**; (ii) Defendant BSREP UA 3333 Broadway LLC be **DISMISSED** pursuant to Federal Rule of Civil Procedure 21; (iii) the Complaint (ECF Nos. 1; 18) be **DISMISSED WITH PREJUDICE** and **WITHOUT LEAVE TO AMEND**; and (iv) that all other of Mr. Williams' pending requests be **DENIED as moot**.

\* \* \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Engelmayer.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

**All Citations**

Slip Copy, 2025 WL 713295

---

## Footnotes

1      Defendants contend the Amended Complaint alone is the operative pleading under Federal Rule of Civil Procedure 15(d) (ECF No. 66 at 2), while Mr. Williams argues he intended to supplement not replace the Complaint with the Amended Complaint (ECF No. 60 at 2). In deference to Mr. Williams' pro se status, we consider the allegations of the Complaint and Amended Complaint together. See Briggs v. SCO Family of Servs., No. 16 Civ. 3882 (JFB) (SIL), 2019 WL 2359421, at \*1 (E.D.N.Y. Feb. 13, 2019), adopted by, 2019 WL 1253220 (E.D.N.Y. March 18, 2019).

2      It is unclear, but also immaterial, who initiated the first proceeding and in which New York State court. For simplicity, we define the New York State courts collectively.

3    Record citations are to the ECF page numbers and not the paragraph numbers, which are non-consecutive.

4    Mr. Williams filed a request to file a sur-reply. (ECF No. 67). The Court reviewed Mr. Williams' filing and finds that it does not advance any different or additional arguments in opposition to the Motion.

5    Internal citations and quotation marks are omitted from case citations, and alterations are adopted throughout unless otherwise indicated.

6    As discussed below (see § V.B.3., infra), Mr. Williams' references to criminal statutes are improper in this civil action.

7    Although the Eleventh Amendment does not preclude the Court from exercising subject matter jurisdiction over claims against Defendants in their individual capacities and where Mr. Williams seeks equitable relief against them in their official capacities (see § V.A.1., supra), for the reasons set forth in the remainder of this Report and Recommendation, Mr. Williams has not plausibly alleged any such claims. (See § V.B., infra).

8    The referenced criminal statutes include:

- 18 U.S.C. § 241 (Conspiracy Against Rights)

- 18 U.S.C. § 371 (Conspiracy to Defraud the United States)

- 18 U.S.C. § 242 (Deprivation of Rights Under Color of Law)

- 18 U.S.C. § 1961 (Racketeering)

- 18 U.S.C. § 1701 (Obstruction of mails)

- 18 U.S.C. § 1702 (Obstruction of correspondence)

- 42 U.S.C. § 3631 (Criminal Interference with Right to Fair Housing)

- 42 U.S.C. § 7413(c) (Criminal Provisions of the Clean Air Act)

- N.Y. Real Prop. Acts. Law § 768 (Unlawful Eviction)

- N.Y. Penal L. § 210 (Perjury)

- N.Y. Penal L. § 20.20 (Criminal Liability of Corporations)

- N.Y. C.P.L.R. § 2106 (Perjury)

- New York City, N.Y., Code § 26-523 (Criminal Penalties for Unlawful Eviction)

9    To the extent Mr. Williams identified other statutes in his initial form complaint, he has not pursued them further in his subsequent filings. (See ECF No. 1 at 2). The Court thus deems any alternative claims abandoned. See Bravo v. U.S. Marshals Serv., 684 F. Supp. 3d 112, 122 (S.D.N.Y. 2023).

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.